**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 04-CV-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.:  04-CV-10501 (PBS)<br><br>**REQUEST FOR SPECIAL ACTION PURSUANT TO LOCAL RULE 5.1(C)** |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR
<u>EXPEDITED DISCOVERY FROM DEFENDANT DEXIA BANK BELIGIUM</u>**

Pursuant to Federal Rules of Civil Procedure 30 and 34(b) and Local Rule 5.1(C), all Plaintiffs in the above-captioned actions, by their counsel, hereby move for an order granting Plaintiffs limited discovery on an expedited basis relating to defendant Dexia Bank Belgium's ("DBB") announcement on November 11, 2005 that it has commenced the voluntary liquidation its New York Branch, located at 445 Park Avenue, New York, New York.  As set forth below, Plaintiffs are concerned that the liquidation, if allowed to proceed, will preclude Plaintiffs from collecting on any future judgments they obtain in these actions.  The New York Branch constitutes DBB's only presence in the United States, and it appears that DBB is shifting its assets to its sister corporation, Dexia Credit Local, which is also located at 445 Park Avenue, and then closing its doors possibly as soon as early December 2005.  Thus, Plaintiffs believe that DBB may be liquidating in order to make enforcement of a judgment extremely problematic.

Further, the liquidation may well be an effort by Defendant to circumvent personal jurisdiction in the United States, in the event that the United States Court of Appeals for the First Circuit reverses the Court's decision denying Defendant's motion to dismiss, and dismisses the federal securities claims asserted by Plaintiffs. Indeed, recently, counsel for DBB informed Plaintiffs that, should the First Circuit dismiss the federal securities claims, DBB will move to dismiss the common law claims asserted by the Stonington, Baker and Filler Plaintiffs (collectively "Transactional Plaintiffs") for lack of personal jurisdiction. While the Transactional Plaintiffs do not concede that the Court lacks personal jurisdiction over DBB for purposes of the common law claims, should the Court grant such a motion after DBB has liquidated its New York office, DBB is likely to argue that the Transactional Plaintiffs are without any U.S. forum in which to assert their common law claims. Indeed, were such circumstances to occur, we would expect DBB to argue that it is not subject to personal jurisdiction in Massachusetts or New York (or any other State), because it does not maintain a presence in the United States, and is not subject to any state's long-arm jurisdiction.

Accordingly, on November 17, 2005, Plaintiffs served discovery on DBB, seeking documents and testimony pursuant to Rule 30(b)(6) relating to the liquidation and the reasons therefore. Given that the liquidation is already underway, Plaintiffs asked DBB to provide such discovery on an expedited basis. DBB has refused to provide this discovery, necessitating this motion.

## FACTUAL BACKGROUND

As the Court is aware, Plaintiffs in these actions have brought fraud claims arising under the federal securities laws and the common law against DBB, the successor to

3

Artesia Banking Corp., S.A. ("Artesia"), the former chief commercial banker for Lernout & Hauspie Speech Products, N.V. ("L&H").[1]  In broad strokes, Plaintiffs allege that Artesia knowingly participated in a scheme to artificially inflate L&H's stock price.  In June 2003, DBB was indicted in Belgium for its role in the L&H fraud and, on February 9, 2005, the Court denied DBB's motion to dismiss the federal securities claims in its entirety.  DBB did not move to dismiss the common law claims asserted by the Transactional Plaintiffs.

Since that time, the parties have been engaged in active discovery.  To date, the parties have produced several million pages of documents, and Plaintiffs recently deposed a representative of DBB in Belgium pursuant to Rule 30(b)(6) in connection with the scope of DBB's document production.  Plaintiffs have noticed substantive depositions of DBB witnesses to begin early next year; indeed, to that end, on November 4, 2005, Plaintiffs filed a motion to compel DBB to produce certain of its employees for depositions (that motion has been referred to Magistrate Judge Collings).

On November 11, 2005, DBB published a "Notice to Customers and Creditors of Dexia Bank Belgium New York Branch" in The Wall Street Journal (the "Notice").  *See* Exhibit C to the accompanying Declaration of Steven B. Singer, dated November 21, 2005 ("Singer Dec.").  According to the Notice, on or about November 4, 2005, DBB "commence[d] the voluntary liquidation of its New York Branch" pursuant to New York State Banking Law and, upon the completion of the liquidation, "all business related [to Dexia Bank Belgium's New York Branch] shall be conducted from Dexia Bank Belgium's offices located at Boulevard Pacheco 44, B-1000 Brussels Belgium." *Id.*  The Notice further directs that "[a]ll inquiries" concerning the liquidation be made "on or

---

[1]  DBB acquired Artesia in 2001, and succeeded to its liabilities.

4

before December 4, 2005." *Id.* Prior to the liquidation, DBB had maintained its New York Branch since 1996, or for nearly ten years. Singer Dec. at ¶ 2. Further – significantly – DBB's New York Branch is the Defendant's sole presence in the United States. *Id.* and Singer Dec. Ex. A. In sum, with this case in active discovery and depositions imminent, DBB has announced that it is liquidating its only branch located in the United States.

The circumstances surrounding the liquidation of DBB's New York Branch raise serious issues regarding the reasons for this liquidation. The 2004 Annual Report of Dexia, S.A., the parent company of DBB, states that, in October 2004, "[f]or the purposes of operational simplification, Dexia Bank decide[d] to sell the activities of its branch in New York to the Dexia Credit Local's subsidiary located in New York. This sale will be completed in 2005." Singer Dec. Ex. B at 5. This disclosure itself raises questions that should be answered. To Plaintiffs' knowledge, neither Dexia, S.A., DBB, nor Dexia Credit Local has publicly disclosed the terms of the "sale" by DBB to its corporate sibling. Nor have they disclosed what "operational simplification" means, or the reason why DBB decided in October 2004 – after ten years of operating its New York Branch side-by-side the Dexia Credit Local's New York subsidiary – that it needed to "simplify" its operations by leaving New York. Moreover, DBB and Dexia Credit Local both have offices at the same address in Dublin Ireland, but DBB has not announced that it is selling the activities of its Dublin branch to Dexia Credit Local. *See* Singer Dec. at ¶4.

For these reasons, Plaintiffs are concerned that DBB may be liquidating its New York Branch and transferring the New York Branch's assets to its corporate sibling, Dexia Credit Local (a separate corporation wholly owned by Dexia, S.A. (Singer Dec. at

5

¶3)), in order to make enforcement of any judgment Plaintiffs obtain against DBB extremely problematic. As this Court has previously acknowledged in *In re L&H Securities Litigation*, there are potentially very significant difficulties associated with enforcing a U.S. judgment against defendants whose assets are located solely in Belgium. *See* Transcript of Transcript of Hearing dated December 11, 2003 at 15 (noting potential problems with enforcing in Belgium any judgment entered by this Court); *id* at 27 (noting the Belgium is not even a party to the Hague Convention). Accordingly, the liquidation of DBB's New York Branch could substantially frustrate and thwart Plaintiffs' efforts to collect any judgments ultimately obtained in these actions.

The Transactional Plaintiffs have an additional concern – that the liquidation will deprive them of a forum in this country to sue DBB, in the event that the First Circuit dismisses the federal securities claims. On October 18, 2005, the First Circuit granted permission for DBB to appeal the District Court's decision denying DBB's motion to dismiss the federal securities claims asserted against it. The First Circuit has not yet issued a briefing schedule for that appeal, and a decision on this appeal will not be rendered until sometime next year – after the liquidation is scheduled to be completed. Counsel for DBB this week informed Transactional Plaintiffs that, in the event the First Circuit dismisses the federal securities claims, DBB intends to move to dismiss the Transactional Plaintiffs' common law claims for lack of personal jurisdiction. Should DBB prevail on such a motion, at a time when DBB no longer maintains its New York Branch, Plaintiffs expect DBB to argue that no court in this country may assert personal jurisdiction over it.

6

In order to discover more information about the reasons for, and timing of, the liquidation, on November 17, 2005, Plaintiffs served discovery on DBB, seeking a narrow range of documents and a deposition pursuant to Rule 30(b)(6) of an individual with knowledge of these events. *See* Singer Dec. Ex. E. In light of the fact that DBB is already liquidating its New York Branch, and apparently intends to complete such liquidation in 2005, Plaintiffs sought expedited discovery. To the extent this discovery shows that DBB is transferring assets in an effort to thwart the prosecution of actions or the collection of judgments by Plaintiffs, Plaintiffs intend to move to enjoin completion of the liquidation.

DBB has refused to provide such discovery. Singer Dec. at ¶ 9. Moreover, DBB's legal counsel has advised Plaintiffs that he does not know when the liquidation is scheduled to be completed. *Id.* Accordingly, Plaintiffs, by this Motion, seek expedited discovery in the form of an accelerated production of documents by DBB and an expedited deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) directed to the issues of why DBB is eliminating its presence in the United States and what assets of DBB are being liquidated.[2]

Notwithstanding the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), District Courts have authority to prevent defendants from disposing of certain assets preadjudication even where the plaintiff seeks only money damages where it is shown that defendants are acting with intent to frustrate any judgment on the merits. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999) (finding injunction issued in action seeking money

---

[2] A copy of the proposed discovery for which Plaintiffs seek expedited treatment is attached as Exhibit E to the Singer Declaration, so that the Court can observe firsthand the narrow and limited nature of the relief sought here.

7

damages did not contravene *Grupo Mexicana* where injunction did not act as a blanket freeze on all defendants' assets but instead prohibited defendants from completing a sales agreement and liquidating one of the defendant's assets); *see also OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (finding that even if *Grupo Mexicana* precluded issuance of injunction in RICO action, an order attaching assets pursuant to Federal Rule of Civil Procedure 64 was appropriate). Moreover, courts in this district have recognized that where, similar to the situation presented here, the viability of defendant "is an important factor in determining whether, or when, injunctive relief might be appropriate, the plaintiffs' request to take expedited discovery is a reasonable one." *In re WebSecure, Inc. Sec. Litig.*, No. 97-10662-GAO, 1997 WL 770414, at *4 (D. Mass. Nov. 26, 1997).

## ARGUMENT

In deciding whether to expedite discovery in advance of preliminary relief, courts have rejected stringent tests akin to those needed to justify the preliminary relief itself, in favor of a more flexible "good cause" approach:

> [E]mploying a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing. Rather, in deciding on a matter merely of regulating the timing of discovery, "it makes sense to examine the discovery request … on the entirety of the record to date and the *reasonableness* of the request in light of all surrounding circumstances."

*Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2005 WL 1668527, at *1 (S.D.N.Y. July 12, 2005) (quoting *Merrill Lynch, Pierce, Fener & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623-24 (N.D. Ill. 2000)) (ellipses and italics in original); *accord Special Situations Cayman Fund, L.P. v. Dot Com Entm't Group, Inc.,* No. 03-CV-0811E(F),

8

2003 WL 23350128, at *1 (W.D.N.Y. Dec. 5, 2003); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419-20 (D. Colo. 2003); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002).

The above approach to deciding whether expedited discovery should be ordered fully comports with cases from within this District finding expedited discovery is appropriate to determine whether the transfer of assets is improper (*i.e.*, for the purpose of avoiding paying a potential judgment obtained by plaintiffs) and warrants injunctive relief, even if at the time plaintiffs seek expedited discovery they lack sufficient evidence to satisfy the standards for injunctive relief. *In re WebSecure*, 1997 WL 770414 at *3. As the court in *In re WebSecure* explained:

> Because the viability of WebSecure as an operating business is an important factor in determining whether, or when, injunctive relief might be appropriate, the plaintiffs' request to take expedited discovery is a reasonable one. They seek discovery concerning how the proceeds of the IPO have been, and are being, spent and what WebSecure's business plans and prospects are. That request for discovery is both "particularized" and "necessary … to prevent undue prejudice" to the plaintiffs, and it is therefore permissible, notwithstanding the statutory restriction added by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(3)(B).[3]

*Id*. at *4.

In *WebSecure*, the court ordered expedited discovery even though the stay of discovery accorded by the PSLRA pending a ruling on motions to dismiss the complaint apparently was still in place. The court further found that even though plaintiffs could not presently make a showing sufficient to satisfy the standards for a preliminary

---

[3] In *WebSecure*, the court ordered the expedited discovery even though the stay of discovery accorded by the PSLRA pending a ruling on motions to dismiss the complaint apparently was still in place. Here, there are no such limits on discovery and Plaintiffs are asking merely that the 30-day response time normally provided by Federal Rule of Civil Procedure 34 be shortened and that DBB not be permitted to delay the deposition of its corporate representative, but be required to appear for deposition as noticed.

9

injunction, this only served to highlight the need for expedited discovery so that an appropriate determination could be made on the record regarding whether a preliminary injunction was warranted. *Id.* at *2, 3.

The instant case presents none of the issues raised by the PSLRA discovery stay. Plaintiffs are asking merely that the 30-day response time normally provided by Federal Rule of Civil Procedure 34 be abbreviated and that DBB be prohibited from delaying the deposition of its corporate representative. Like those of plaintiffs in *WebSecure,* Plaintiffs' expedited requests are particularized and directed to the issue of whether DBB is liquidating its New York Branch in order to prejudice Plaintiffs.

Accordingly, good cause exists for expediting DBB's response to Plaintiffs' discovery requests.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the instant motion for expedited discovery be GRANTED.

Dated:   November 21, 2005

                Respectfully submitted,

                BERMAN DEVALERIO PEASE
                  TABACCO BURT & PUCILLO
                    /s/ Patrick T. Egan
                Glen DeValerio, BBO # 122010
                Jeffrey C. Block, BBO #600747
                Patrick T. Egan, BBO # 637477
                (pegan@bermanesq.com)
                One Liberty Square
                Boston, MA 02109
                Telephone:  (617) 542-8300

SHALOV STONE & BONNER LLP
Lee S. Shalov
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
P.O. Box 25438
Little Rock, Arkansas 722125438
Telephone: (501) 312-8500

**CO-LEAD COUNSEL TO LEAD CLASS PLAINTIFFS HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER**


LOONEY & GROSSMAN LLP
         /s/ Richard J. Grahn
Richard J. Grahn, BBO #206620
(rgrahn@lgllp.com)
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Max W. Berger
Steven B. Singer
Avi Josefson
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400

**COUNSEL TO PLAINTIFFS STONINGTON PARTNERS, INC., STONINGTON CAPITAL APPRECIATION 1994 FUND L.P. AND STONINGTON HOLDINGS L.L.C.**

11

GREGORY P. JOSEPH LAW OFFICES LLC
      /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
Third Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 407-1200

KOTIN, CRABTREE & STRONG
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone: (617) 227-7031

**COUNSEL TO PLAINTIFFS GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust**


PARTRIDGE, ANKNER & HORSTMAN LLP
      /s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

BOIES SCHILLER & FLEXNER
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

**COUNSEL TO PLAINTIFFS JANET BAKER, JAMES BAKER, JKBAKER LLC and JMBAKER LLC,**

12