# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated, | |
| Plaintiffs, | Civil Action No.:  03-11566 (PBS) |
| v. | |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), | |
| Defendants. | |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, | |
| Plaintiffs, | Civil Action No.:  04-10411 (PBS) |
| v. | |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), | |
| Defendants. | |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust, | |
| Plaintiffs, | Civil Action No.:  04-10477 (PBS) |
| v. | |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), | |
| Defendants. | |

JANET BAKER and JAMES BAKER,
JKBAKER LLC and JMBAKER LLC,

      Plaintiffs,

      v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

      Defendants.

Civil Action No.:  04-10501 (PBS)

**MEMORANDUM OF LAW IN SUPPORT OF DEXIA'S MOTION TO STAY
PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
Tel:   (617) 542-6000
Fax:  (617) 542-2241

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:   (212) 878-8000
Fax:  (212) 878-8375

*Counsel for Dexia Bank Belgium*

Table of Contents

Preliminary Statement.................................................................................................1

Background ..................................................................................................................1

     A.     Dexia's Motion to Dismiss and Interlocutory Appeal ............................2

     B.     Current State of Discovery....................................................................3

Argument ....................................................................................................................5

I.       THESE ACTIONS SHOULD BE STAYED PENDING THE OUTCOME OF
       DEXIA'S INTERLOCUTORY APPEAL ...........................................................5

     A.     Dexia's Appeal May Result in the Termination of the Class Action and
               the Individual Actions............................................................................6

     B.     A Temporary Stay Would Avoid the Risk Of Burdensome and
               Unnecessary Discovery..........................................................................8

     C.     A Temporary Stay Would Avoid Unnecessary Adjudication of
               Discovery Disputes ................................................................................9

     D.     A Temporary Stay Would Not Prejudice Any of the Plaintiffs...........11

Conclusion .................................................................................................................12

Table of Authorities

Cases

*Dubai Islamic Bank v. Citibank, N.A.*, No. 99 Civ. 1930, 2002 WL 1159699
    (S.D.N.Y. May 31, 2002) ..................................................................................10

*Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004) ..........................................7

*Intergen N.V. v. Grina*, No. Civ. A. 01-11774-REK, 2003 WL 1562200
    (D. Mass. Feb. 21, 2003) .................................................................................8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................6

*Landis v. North American Co.*, 299 U.S. 248 (1936) ......................................................5

*In re Lernout & Hauspie Sec. Litig.*, No. Civ. A. 00-11589-PBS, 2004 WL 1490435
    (D. Mass. June 28, 2004) .................................................................................7

*Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717 (1st Cir. 1991) ............................6

*Noonan v. Winston Co.*, 902 F. Supp. 298 (D. Mass. 1995),
    *aff'd*, 135 F.3d 85 (1st Cir. 1998) ....................................................................7

*Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330 (D. Mass. 2005) ..........................................9

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231
    (S.D.N.Y. 1999) .................................................................................................8

*Whistler Corp. v. Solar Elecs., Inc.*, 684 F. Supp. 1126 (D. Mass. 1998) ......................6


Other Authorities

FED. R. CIV. P. 12(c) ..............................................................................................7 n.2

Defendant Dexia Bank Belgium ("Dexia") submits this Memorandum of Law in support of its Motion to Stay Proceedings pending the outcome of Dexia's interlocutory appeal. In support of this motion, Dexia also submits the Declaration of Jeff E. Butler dated November 21, 2005 ("Butler Decl.").

## Preliminary Statement

As the Court is aware, the Court of Appeals has decided to hear Dexia's interlocutory appeal of the Court's order denying Dexia's motion to dismiss. If Dexia prevails on appeal, the Section 10(b) claims brought by each of the Plaintiffs would be dismissed. At a minimum, this would result in a significant re-shuffling of the parties and claims at issue in this litigation. There is even reason to believe that a successful appeal by Dexia may ultimately result in the dismissal of all pending claims against Dexia.

A temporary stay of proceedings pending resolution of Dexia's appeal would be in the interest of efficiency and judicial economy. First, the proposed stay would avoid burdensome and potentially unnecessary discovery that otherwise would take place while the appeal is pending. Second, the proposed stay would avoid the need for adjudication of discovery disputes which, if history is any guide, will arise with increasing frequency as this litigation moves into a deposition phase. Finally, the proposed stay would not cause any undue prejudice to Plaintiffs.

## Background

These related actions each arise out of allegations concerning Dexia's participation in alleged accounting improprieties at Lernout & Hauspie Speech Products NV ("L&H"). Plaintiffs Hans Quaak, Attilio Po and Karl Leibinger (the "Class Plaintiffs") have asserted a single claim under Section 10(b) of the Securities Exchange Action of 1934 (the "1934 Act") on behalf of a putative class of L&H investors (the "Class Action"). Similarly, plaintiffs Stonington Partners,

Inc., Stonington Capital Appreciation 1994 Fund L.P., Stonington Holdings L.L.C., Gary B.

Filler and Lawrence Perlman (as Trustees of the TRA Rights Trust), Janet Baker, James Baker,

JKBaker LLC and JM Baker LLC (the "Individual Plaintiffs") have asserted claims under

Section 10(b) of the 1934 Act in three separate actions (the "Individual Actions"). The

Individual Plaintiffs have also asserted various state-law claims, including claims for common

law fraud, aiding and abetting common law fraud and conspiracy.

A.    **Dexia's Motion to Dismiss and Interlocutory Appeal**

Class Plaintiffs filed a complaint against Dexia S.A., the corporate parent of Dexia, on

August 22, 2003. They filed an Amended Complaint adding Dexia itself as a defendant on

November 21, 2003. On February 25, 2004, Class Plaintiffs filed a Second Amended Complaint

(the "Class Complaint"). On April 2, 2004, Dexia moved to dismiss the Class Complaint.

The Individual Plaintiffs filed three separate complaints against Dexia in March 2004.

Each of the Individual Plaintiffs agreed to extend Dexia's time to answer or move against these

complaints until 30 days after a decision on Dexia's motion to dismiss the Class Complaint. (*See*

Butler Decl. Ex. A.) For this reason, Dexia did not move to dismiss the Individual Actions at the

same time that it moved to dismiss the Class Actions.

On February 9, 2005, the Court issued a Memorandum and Order denying Dexia's

motion to dismiss. Dexia then filed motion to certify the Court's decision for interlocutory

appeal pursuant to 28 U.S.C. § 1292(b), and the Court granted that motion on July 7, 2005. The

Court certified the following questions for appeal:

> (1)    Whether Dexia's alleged conduct was actionable under Section 10(b) of
> the Securities Exchange Act of 1934 under the theory that it constituted
> substantial participation in a deceptive scheme intended to mislead
> investors, or whether the alleged conduct constituted aiding and abetting
> of misrepresentations by L&H, and was therefore not actionable under the

> Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994);

(2)    Whether the current action is a new "proceeding" under section 804 of the Sarbanes-Oxley Act; and

(3)    Whether the period of repose was triggered by Dexia's alleged acts rather than by L&H's financial disclosures.

The Court found that each of these issues presented a "controlling question of law" with respect to the Section 10(b) claim against Dexia.  (7/7/05 Mem. and Order at 4.)

Dexia filed a timely Petition for Permission to Appeal in the Court of Appeals and, on October 18, 2005, the First Circuit approved that petition.  The schedule for briefing the appeal has not been fixed, but Dexia currently anticipates that its opening brief likely will be filed in December 2005, and that all briefing will be completed in February 2006.

**B.    Current State of Discovery**

After the Court denied Dexia's motion to dismiss, Dexia answered the Class Complaint as well as the three complaints filed by the Individual Plaintiffs.[1]  The Court entered a Scheduling Order on April 27, 2005, which called for the completion of fact discovery on February 28, 2006, and for a final pretrial conference on November 8, 2006.  (*See* Butler Decl. Ex. B.)

In response to Plaintiffs' document requests, Dexia has produced more than 140,000 pages of documents to plaintiffs, all of which had to be collected in Belgium and the vast majority of which are written in Flemish or French.  Some of the documents produced by Dexia had to be produced from backup tapes of e-mail created more than six years ago.  Dexia has now substantially completed its document production to Plaintiffs.  (*Id.* ¶ 6.)  Although the parties

---

[1] Dexia did not move to dismiss the state-law claims in the Individual Actions because, after the Court denied Dexia's motion to dismiss the Class Complaint, it was clear that the Section 10(b) claims in those actions would survive in any event.

3

have engaged in negotiations concerning the possible production of additional documents from backup tapes, Dexia has not yet agreed to any such production.  (*Id.* ¶ 7.)  Plaintiffs have also served two sets of interrogatories on Dexia.  Dexia has provided answers to all outstanding interrogatories.  (*Id.* ¶ 8.)

In response to an agreement to produce documents and deposition transcripts from the closely-related *Lernout & Hauspie Securities Litigation*, Plaintiffs produced well over a million pages of documents in June 2005.  In response to document requests served by Dexia on April 22, 2005, Plaintiffs produced approximately 400,000 additional pages of documents in September 2005.  On September 9, 2005, Dexia moved to compel the production of additional documents from Class Plaintiffs concerning their alleged investigation of potential claims against Dexia.  In response to a preliminary order by Judge Collings, Plaintiffs produced nearly 4,000 additional pages of documents in October 2005.  Judge Collings heard argument on that motion on October 20, 2005, and has taken the motion under advisement.  (*See id.* ¶ 9.)

Dexia has served two sets of interrogatories on the Class Plaintiffs, and one set of interrogatories on each of the Individual Plaintiffs.  Dexia received inadequate responses to certain interrogatories from the Class Plaintiffs, and moved to compel more complete and substantive responses at the same time that it moved to compel the production of additional documents from Class Plaintiffs.  Judge Collings has also taken that motion under advisement. (*See id.* ¶ 10.)

Apart from a single Rule 30(b)(6) deposition of Dexia on the subject of document collection, there have been no depositions taken in any of these actions.  In September 2005, Plaintiffs served a notice seeking the depositions of five Dexia employees to be taken in Belgium in January 2006.  Dexia objected to this notice on the ground that three of those employees are

not officers, directors or managing agents of Dexia.  On November 4, 2005, Plaintiffs served a

motion to compel deposition testimony from these three employees.  Dexia served its opposition

to that motion on November 18, 2005.  (*See id.* ¶ 11.)

On November 17, 2005—one day after a telephonic meet and confer concerning Dexia's

proposed stay of proceedings—Plaintiffs served a second Rule 30(b)(6) deposition notice,

seeking testimony concerning the closing of Dexia's branch bank in New York City.  As part of

the deposition notice, Plaintiffs included a Rule 34 request for documents on the same topic and

demanded expedited treatment of those requests.  Dexia has taken the position that Plaintiffs are

not entitled to this discovery because the New York branch has nothing to do with the claims and

defenses in this litigation.  On November 21, 2005, Plaintiffs filed an expedited motion to

compel this discovery and Dexia moved for a protective order to prevent the discovery.  (*See id.*

¶ 14.)

At a status conference before Judge Collings on October 20, 2005, both sides expressed

concern that the discovery schedule in the current Scheduling Order would need to be extended.

(*Id.* ¶ 12 .)  There have been discussions among the parties concerning a revised schedule, but no

agreement has been reached.  (*Id.*)

<u>**Argument**</u>

**I.    THESE ACTIONS SHOULD BE STAYED PENDING THE OUTCOME OF
       DEXIA'S INTERLOCUTORY APPEAL.**

There is no set standard that governs the ability of a court to grant or deny a motion for a

stay.  In *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936), Justice Cardozo wrote:

> the power to stay proceedings is incidental to the power inherent in every court to
> control the disposition of the causes on its docket with economy of time and effort
> for itself, for counsel, and for litigants.  How this can best be done calls for the
> exercise of judgment, which must weigh competing interests and maintain an
> even balance.

Thus, an application for a stay must be considered in the context of the individualized circumstances of a particular case. In making its decision, the Court may consider any factors relevant to the disposition of a case.

A.    **Dexia's Appeal May Result in the Termination of the Class Action and the Individual Actions.**

A successful appeal by Dexia would result in the termination of the Class Action in its entirety. The Class Action asserts a single claim against Dexia for violations of Section 10(b) of the 1934 Act. In certifying Dexia's three issues for appeal, the Court observed:

> A ruling for Dexia on any of the three issues listed above would lead to the dismissal of the complaint in this case, which alleges a violation of section 10(b) of the Securities Exchange Act of 1934. The proposed certification therefore clearly involves a "controlling question of law."

(7/7/05 Mem. and Order at 4 (citation omitted).) Accordingly, a successful appeal by Dexia would eliminate any potential claim against Dexia under Section 10(b), and would require dismissal of the Class Action.

A ruling in favor of Dexia would also call into question whether the Individual Actions could continue before this Court. At a minimum, Dexia would be able to secure dismissal of the Section 10(b) claims in each of those actions. Without the Section 10(b) claims, there would be both procedural and substantive reasons for dismissing the state-law claims in the Individual Actions as well. For example, there would be a substantial question as to whether the Court could continue to exercise personal jurisdiction over Dexia. As long as the Section 10(b) claim is in the case, personal jurisdiction is determined with reference to Dexia's contacts with the United States as a whole. *See generally Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991); *Whistler Corp. v. Solar Elecs., Inc.*, 684 F. Supp. 1126, 1128 (D. Mass. 1998). In the absence of a federal claim, however, personal jurisdiction must be evaluated based on Dexia's contacts with

Massachusetts alone. *Noonan v. Winston Co.*, 902 F. Supp. 298, 302 (D. Mass. 1995), *aff'd*, 135 F.3d 85 (1st Cir. 1998) (citing *Gray v. O'Brien*, 777 F.2d 864, 866 (1st Cir. 1985)). The Court has already dismissed one Belgian defendant for lack of personal jurisdiction in the *Lernout & Hauspie Securities Litigation*. *In re Lernout & Hauspie Sec. Litig.*, No. Civ. A. 00-11589-PBS, 2004 WL 1490435, at *3 (D. Mass. June 28, 2004) (dismissing Mercator & Noordstar for lack of personal jurisdiction). A similar outcome is certainly possible for Dexia.

There is also reason to doubt that the state-law claims properly state a claim for which relief can be granted. For example, in 2001, several of the Individual Plaintiffs brought an action in New York federal court against certain Korean banks, asserting state-law claims for aiding and abetting fraud and conspiracy to commit fraud based on allegations that the banks had participated in the alleged accounting fraud at L&H. The New York court dismissed that action. *See Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 560 (S.D.N.Y. 2004) (dismissing state law claims in part because the alleged harm was not foreseeable to the defendants). Similarly, arguments could be advanced by Dexia for dismissal of the state-law claims asserted by the Individual Plaintiffs.[2]

Based on these types of issues, a ruling by the First Circuit in favor of Dexia ultimately could result in dismissal of *all* claims in the Individual Actions. Moreover, even if some claims remained in the Individual Actions, there can be no doubt that "an appellate finding for Dexia . . . would significantly alter the scope of the litigation before this Court." (7/7/05 Mem. and Order at 5.)

---

[2] Although Dexia has already filed answers in the Individual Actions, Dexia would be entitled to raise these issues following a successful appeal on a motion for judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

B.    **A Temporary Stay Would Avoid the Risk Of Burdensome and Unnecessary Discovery.**

Absent a stay, there is a significant risk that the parties will engage in expensive, time-consuming and potentially unnecessary deposition discovery while Dexia's appeal is pending. The possibility of burdensome and wasteful discovery has been cited by courts as a valid ground for entering a stay pending the outcome of an interlocutory appeal.  *See Intergen N.V. v. Grina*, No. Civ. A. 01-11774-REK, 2003 WL 1562200, at *4 (D. Mass. Feb. 21, 2003) (granting stay of discovery pending appeal of denied motion to compel arbitration); *see also Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231, 236-237 (S.D.N.Y. 1999) (noting that a stay pending interlocutory appeal of an order compelling arbitration is "entirely in keeping with the principle of judicial economy").

Plaintiffs clearly contemplate obtaining additional discovery from Dexia, including additional depositions of Dexia employees in Belgium.  Each such deposition would result in substantial burden and expense for all parties involved, with the bulk of the burden and expense falling on Dexia.  If Dexia prevails on appeal, at least some of those depositions will most likely prove unnecessary.  Although counsel for the Individual Plaintiffs may insist that deposition discovery will be "exactly the same" regardless of whether the Class Plaintiffs remain in the case, there is good reason to think that discovery by the Individual Plaintiffs will in fact be narrower than discovery by the Class Plaintiffs.  That is because the claims of the Individual Plaintiffs are based on specific merger transactions in the first half of 2000, whereas the Class Action is based on purchases of L&H shares over the course of a broad class period extending from August 1998 to November 2000.  Moreover, as described above, there is a possibility that dismissal of the Section 10(b) claims will also result in dismissal of the state-law claims brought

8

by the Individual Plaintiffs. In that scenario, of course, all deposition discovery during the pendency of the appeal will prove to have been completely unnecessary.

Even if it could be said that the scope of discovery by the *Plaintiffs* will be the same with or without the Section 10(b) claims, the scope of discovery by *Dexia* clearly depends on whether the Section 10(b) claims remain in the case. As the Court is well-aware, one of Dexia's defenses to the Section 10(b) claims rests on inquiry notice and whether the Plaintiffs conducted a diligent investigation in response to relevant "storm warnings." *See Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330, 341 (D. Mass. 2005) (denying Dexia's motion to dismiss "until a more ample record is developed" on Plaintiffs' alleged investigation). In response to interrogatories, Plaintiffs have identified dozens of individuals who were involved in an alleged diligent investigation of Dexia, including all of the lawyers currently representing the Class Plaintiffs and the Individual Plaintiffs in this litigation. (*See* Butler Decl. ¶ 10.) Absent a stay, it will be necessary for Dexia to take the depositions of at least some of those individuals for purposes of developing its inquiry notice defense. Such depositions may be unnecessary if Dexia succeeds in having the Section 10(b) claims dismissed.

## C.    A Temporary Stay Would Avoid Unnecessary Adjudication of Discovery Disputes.

A stay would also conserve judicial resources by avoiding the adjudication of discovery disputes as this action moves into the deposition phase. Plaintiffs have already filed a motion to compel for purposes of determining whether three Dexia employees are "managing agents" of Dexia who may be noticed for deposition under Rule 30(b). In support of that single motion, Plaintiffs have submitted a 20-page brief, a 12-page declaration and roughly *500 pages* of exhibits. Merely reviewing that evidence is likely to keep a law clerk busy for several days.

Similar motions by Plaintiffs concerning the "managing agent" status of Dexia employees are all but inevitable. Plaintiffs' interrogatories to Dexia indicate that Plaintiffs are considering taking the depositions of numerous Dexia employees, most of whom Dexia believes are not "managing agents." Of course, Plaintiffs are unlikely to accept Dexia's word for this, so they will need to file motions to adjudicate the "managing agent" status of those witnesses. The determination of whether an employee is a "managing agent" subject to deposition on notice is a "pragmatic" inquiry that must be decided on a "fact-specific" basis. *See Dubai Islamic Bank v. Citibank*, N.A., No. 99 Civ. 1930, 2002 WL 1159699 (S.D.N.Y. May 31, 2002). Thus, it is likely that the Court will need to consider additional 500-page bundles of exhibits in connection with future motions of this nature.

It is difficult to predict in advance what other discovery disputes may need to be adjudicated absent a stay. It is altogether possible, for example, that the Court will need to resolve potential conflicts between the Belgian criminal proceeding and this civil proceeding. In correspondence with Dexia, the Examining Magistrate in Belgium, Henri Heimans, has observed that "indicted" persons should not give testimony under oath while the criminal investigation is pending. (*See* Butler Decl. Ex. D.) Although the position taken by Mr. Heimans has not affected discovery taken to date, it may well present the Court with difficult issues of comity in the near future. Indeed, the Court has ordered an indefinite stay of related proceedings against various former senior executives of L&H pending the outcome of the criminal investigation in Belgium. (*See* Butler Decl. Ex. C, at 10.) Thus, a collateral benefit of a temporary stay in this litigation would be to give the Belgium criminal proceedings more time to reach their natural conclusion, thus potentially avoiding any risk of conflicts between the two proceedings.

D.    **A Temporary Stay Would Not Prejudice Any of the Plaintiffs.**

A stay pending the outcome of Dexia's interlocutory appeal would delay proceedings in this litigation by approximately six to nine months.  There is no reason to believe that such a delay would prejudice any of the Plaintiffs.  The action by the Class Plaintiffs has already been pending for more than two years and, even in the absence of a stay, it is unlikely to be ready for trial until sometime in 2007.[3]  Even then, trial may be further delayed due to the pending criminal proceedings in Belgium.  (*See id.*)  Moreover, the Class Plaintiffs face the possibility of having their claim against Dexia extinguished—completely and irrevocably—by the pending appeal.  They certainly cannot complain of prejudice from a temporary stay while that appeal is resolved.

Although a successful appeal by Dexia would not immediately extinguish the state-law claims by the Individual Defendants, there is no reason to believe that the Individual Plaintiffs will suffer prejudice from a stay of six to nine months.  Unlike the Class Plaintiffs, who filed a lawsuit against Dexia S.A. soon after public revelations that Dexia was under indictment in Belgium, the Individual Plaintiffs waited almost nine months even to commence their actions against Dexia.[4]  Moreover, the Individual Plaintiffs were willing to delay proceedings in their actions while Dexia's motion to dismiss was pending against the Class Plaintiffs.  Each of the Individual Plaintiffs entered a stipulation to delay Dexia's time to move or answer until 30 days after the motion to dismiss the Class Complaint was decided, which had the effect of staying the Individual Actions for approximately one year.  (*See* Butler Decl. Ex. A.)  The proposed stay

---

[3] The current scheduling order contemplates a final pretrial conference on November 8, 2006. The parties agree, however, that the discovery schedule will need to be extended by a number of months, which will naturally push the date for a final pretrial conference back.

[4] Dexia announced that it was under "indictment" (*i.e.*, placed under suspicion) in Belgium in June 2003.  The Individual Plaintiffs filed their actions against Dexia in March 2004.

pending interlocutory appeal is really just an extension of the same principle that the Individual Actions should be placed on hold while Dexia's motion to dismiss the Class Complaint is undergoing further adjudication.

Finally, the Individual Plaintiffs have always agreed to coordinate discovery in their actions with discovery in the Class Action. Such coordination was endorsed by the Court in the operative Scheduling Order, which states: "Discovery in one of the coordinated actions will be treated as having been taken in all of the coordinated actions." (Butler Decl. Ex. B.) Given this level of previous (and continuing) coordination, it would make no sense under any circumstances to allow discovery to proceed in the Individual Actions while discovery is stayed in the Class Action.

## <u>Conclusion</u>

For all the foregoing reasons, Dexia's Motion to Stay Proceedings should be granted and all proceedings in the above-captioned actions should be stayed pending a decision by the Court of Appeals on Dexia's pending interlocutory appeal.

Dated: November 21, 2005

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO

By:   /s/   Breton Leone-Quick
   Peter M. Saparoff (BBO#441740)
   Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241

12

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:     (212) 878-8000
Fax:     (212) 878-8375

*Counsel for Dexia Bank Belgium*