## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 04-CV-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>       Defendants. | No.:  04-CV-10501 (PBS) |

### PLAINTIFFS' OPPOSITION TO DEXIA BANK BELGIUM'S EMERGENCY MOTION FOR A PROTECTIVE ORDER

Defendant Dexia Bank Belgium ("DBB") seeks a protective order to prevent what it describes as irrelevant discovery intended to uncover its assets and determine its ability to satisfy a judgment in these actions.  DBB's motion is premature and lacks any support.  DBB has not yet even objected to Plaintiffs' discovery requests, and fails to demonstrate any harm that DBB will suffer if required to respond to this discovery.  DBB thus fails to meet the standards to justify entry of a protective order under Rule 26 of the Federal Rules of Civil Procedure.

Moreover, DBB misconstrues Plaintiffs' narrow, targeted discovery requests and seeks to avoid producing what is surely a very limited number of documents and a single witness.  Contrary to what DBB contends, Plaintiffs are *not* seeking discovery of DBB's assets – which are publicly disclosed.  Rather, Plaintiffs' pending motion seeks discovery regarding the *reasons* for DBB's imminent liquidation of its New York Branch.[1]  As Plaintiffs set forth in their motion, it appears that DBB is liquidating, in part, to frustrate Plaintiffs' ability to enforce a judgment against DBB.  While DBB claims this is not so, it tellingly has refused to produce a single

document that would confirm its explanation for the liquidation. Given that the decision to liquidate the New York Branch was obviously made at the senior levels of the Company, there clearly exists a limited number of documents – such as documents filed with the New York State Banking Department, minutes of the meetings of DBB's Board of Directors, e-mails or a Board resolution – that specify the reasons for this liquidation. Rather than simply producing this limited information, DBB seeks a Rule 26 order to protect it from having to produce any information at all regarding its liquidation. As set forth below, DBB should be compelled to produce the requested discovery or, at a minimum, to meet and confer regarding the scope of its production.

    **A.**    **DBB FAILS TO DEMONSTRATE ITS NEED FOR A PROTECTIVE ORDER**

A showing of good cause is required to justify any protective order. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."). DBB has failed to make any such showing in this case. Indeed, despite the "emergency" nature of its motion, DBB has not even objected to Plaintiffs' discovery requests, which were served on November 17, 2005 – over two weeks ago.

Rather than make the required showing of good cause, DBB seeks to shift its burden, arguing that "Plaintiffs have the burden of demonstrating that the information they are seeking is relevant" (memo at 3-4) and, in support, cites cases in which *plaintiffs* filed motions to obtain discovery. *See*, *e.g.*, *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005) (plaintiff moved to obtain complete interrogatory responses). This is not the standard for the granting of a protective order. DBB has not made *any* "demonstration of potential harm" that

---

[1] As set forth in Plaintiffs' motion for expedited discovery, DBB published a notice on November 11, 2005 disclosing that it had begun the liquidation of its New York Branch on November 4, 2005. DBB's notice provides

would befall it if it were to provide the limited discovery that Plaintiffs seek. DBB instead bases its motion entirely on the purported irrelevance of the discovery Plaintiffs request. Accordingly, DBB has failed to make the requisite showing of good cause, and there is no basis for entry of a protective order under Rule 26.

### B.  PLAINTIFFS ARE NOT SEEKING DISCOVERY OF DBB'S ASSETS

DBB argues that Plaintiffs' pending discovery requests and related discovery motion improperly seek to uncover information regarding DBB's assets. This is false. Plaintiffs' discovery is focused on DBB's purpose in suddenly liquidating its New York Branch – its only presence in the U.S – and in transferring that Branch's assets to a sister corporation.[2] The documents and deposition requested are directed at discovering why DBB is liquidating, whether the liquidation is intended to hinder the prosecution of these actions or the enforcement of a judgment entered by this Court, and to determine the fate of assets DBB has spirited out of its New York Branch.[3]

Discovery of such information is entirely appropriate under the present circumstances. DBB is in the process of closing its New York Branch yet its counsel, in repeated conferences with Plaintiffs' counsel, has refused to provide any legitimate explanation for this liquidation.[4]

---

that inquiries regarding the liquidation should be submitted by December 4, 2005.

[2] While DBB's memo at least implies there is no basis for concluding that DBB intends to completely liquidate its New York office and remove all assets from that jurisdiction, DBB's memo is replete with references to DBB's closure of the New York Branch (e.g., memo at p. 1 ("closure and liquidation of a Dexia branch office located in New York"), p. 3 ("Dexia's business plans to close its New York branch"), p. 4 ("Dexia's closure of a branch office")). Moreover, The Wall Street Journal notice uses the word "liquidation," defined as a "dismantling of a business, paying off debts in order of priority, and distributing remaining assets in cash to the owners." *See* Barron's Dictionary of Finance and Investment Terms, 5th ed. 1998. Thus, DBB's argument fails on this basis as well.

[3] The suggestion that Plaintiffs would conduct discovery to determine whether DBB has sufficient assets to satisfy a judgment is belied by the extensive public information regarding DBB's assets.

[4] DBB asserts that its publication of its liquidation in The Wall Street Journal somehow proves that it is not acting surreptitiously. This assertion ignores the fact that the notice, which states that the business previously conducted at its New York Branch will, in the future, be conducted by DBB from Belgium, contradicts DBB's statements in its 2004 Annual Report, which disclosed that DBB was transferring the assets of its New York Branch to Dexia Credit Local, a sister corporation at the same address as DBB's New York Branch.

Indeed, the only public explanation yet provided – that DBB seeks to "simplify" operations by selling DBB's assets to Dexia Credit Local – is contradicted by the fact that the only jurisdiction in which such "simplification" is being undertaken is the United States, where DBB, coincidentally, is in the middle of litigating civil claims seeking billions of dollars in damages. *See* Declaration of Steven B. Singer in Support of Plaintiffs' Joint Motion to Compel Defendant Dexia Bank Belgium to Produce Documents and a Rule 30(b)(6) Witness on an Expedited Bases, executed November 21, 2005 ("Singer Decl.") at 4.

This liquidation threatens to: (1) impede Plaintiffs' ability to assert personal jurisdiction over DBB; and (2) deprive Plaintiffs of any meaningful remedy in these actions. In light of the suspicious circumstances in which this liquidation is being conducted, the dubious explanation DBB has offered to date, and defense counsel's refusal to provide any further explanation or to produce the documents DBB has already filed with banking regulators in New York, Plaintiffs are entitled to explore, through the limited discovery requested, whether the purpose of the liquidation is to impede the prosecution of Plaintiffs' claims.

If the requested discovery confirms Plaintiffs' suspicions that DBB is liquidating its New York Branch in an attempt to impede this litigation, Plaintiffs will have the right to seek injunctive relieve under Federal Rule of Civil Procedure 65. DBB's argument, memo at n. 2, that the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), precludes the Court from granting the ultimate injunctive relief which underlies Plaintiffs' request for expedited discovery ignores cases such as *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999) which, following *Grupo Mexicano*, have granted injunctive relief in circumstances strikingly similar to those presented here. In *Walczak*, the Ninth Circuit found the injunction issued by the district court in that action solely for money

5

damages did not contravene *Grupo Mexicano* because the injunction did not act as a blanket freeze on all defendants' assets but instead only prohibited defendants from completing a sales agreement and liquidating one of the defendant's assets.  That the district court's "motivation for granting the preliminary injunction was its concern that dissolution of [defendant] would preclude [plaintiff] from collecting on a future judgment" did not, in the Ninth Circuit's opinion, render the injunction invalid.  *Walczak,* 198 F.3d at 729.  Indeed, the Ninth Circuit cited approvingly the district court's conclusion that "[e]ven where the ultimate relief sought is money damages, federal courts have found equitable injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring assets."  *Id.*  Any injunctive relief requested by Plaintiffs here following expedited discovery similarly would not seek a blanket freeze on all of DBB's assets, but would be narrowly directed to postponing the transaction(s) whereby DBB will transfer its remaining New York assets to its sister entity – Dexia Credit Local – and withdraw its New York presence.  Thus, as made clear by *Walczak*, Plaintiffs' request for expedited discovery does not run afoul of *Grupo Mexicano*.[5]

Further, Plaintiffs are clearly entitled to the requested discovery as it relates to DBB's presence and business activities in the United States.  This Court has already recognized that it has the discretion to permit Plaintiffs to seek discovery related to personal jurisdiction.  *In re Lernout & Hauspie Sec. Litig.*, No. 00-CV-11589, 2003 WL 23341429, at * 1 (D. Mass. July 24, 2003) ("[I]t is well established that courts have broad discretion in determining 'whether to grant jurisdictional discovery'"), quoting *U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 625 (1st

---

[5]   DBB's reliance on *In re WebSecure, Inc. Sec. Litig.*, No. 97-10662-GAO, 1997 WL 770414, at *4 (D. Mass. Nov. 26, 1997) is wholly misplaced since there, the Massachusetts District Court granted precisely the relief requested here – expedited discovery.  And, while the court found that the bare record in advance of such discovery could not support a preliminary injunction, it recognized that the factual record developed through expedited discovery might be sufficient to support such injunctive relief.  *Id.* at *4  ("Because the viability of WebSecure as an operating business is an important factor in determining whether, or when, injunctive relief might be appropriate, the plaintiffs' request to take expedited discovery is a reasonable one.").

Cir. 2001). In the Stonington, Filler and Baker actions, DBB has asserted lack of personal jurisdiction as an affirmative defense. Plaintiffs have asserted a colorable claim that DBB is liquidating its New York Branch to further that affirmative defense by terminating its only U.S. office. Having asserted the affirmative defense of lack of personal jurisdiction, DBB cannot argue that such discovery does not relate to the claims and defenses in these actions.

DBB's claims that it cannot comply with Plaintiffs' narrow discovery requests on a timely basis are not credible. While DBB suggests that such response requires the collection and review of documents in Belgium and the deposition in New York of an unidentified witness who must be brought from Belgium to testify, the discovery requests are all directed at the pending liquidation of DBB's New York Branch. In connection with this liquidation, DBB was required to provide relevant documentation to New York State banking regulators, which information is not publicly available. *See* Singer Decl. at ¶ 7. It is inconceivable that relevant documents, including but not limited to the documents provided to local regulators, are not available at DBB's New York Branch office. It is equally implausible that there is no witness in New York who is sufficiently familiar with the liquidation as to be able to testify pursuant to Rule 30(b)(6).

## CONCLUSION

For the reasons set forth herein and for the reasons set forth in Plaintiffs' motion for expedited discovery, DBB's emergency motion for a protective order should be denied.

Dated: December 5, 2005

Respectfully submitted,

BERMAN DEVALERIO PEASE
 TABACCO BURT & PUCILLO

     /s/ Patrick T. Egan
Glen DeValerio, BBO # 122010
Jeffrey C. Block, BBO #600747
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Nicole R. Starr, BBO #654848
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

SHALOV STONE & BONNER LLP
Lee S. Shalov
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
P.O. Box 25438
Little Rock, Arkansas 722125438
Telephone: (501) 312-8500

**CO-LEAD COUNSEL TO LEAD CLASS PLAINTIFFS
HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER**

        BERNSTEIN LITOWITZ BERGER
         & GROSSMANN LLP

           /s/ Avi Josefson
        Max W. Berger
        Steven B. Singer
        Victoria Wilheim
        Avi Josefson
        (avi@blbglaw.com)
        1285 Avenue of the Americas
        New York, New York 10019
        Telephone:  (212) 554-1400

        LOONEY & GROSSMAN LLP
        Richard J. Grahn, BBO #206620
        Charles P. Kindregan, BBO #554947
        101 Arch Street
        Boston, MA 02110
        Telephone:  (617) 951-2800

        **COUNSEL TO PLAINTIFFS STONINGTON PARTNERS, INC., STONINGTON CAPITAL APPRECIATION 1994 FUND L.P. AND STONINGTON HOLDINGS L.L.C.**


        GREGORY P. JOSEPH LAW OFFICES LLC

           /s/ Susan M. Davies
        Gregory P. Joseph, N.Y. Atty Reg. #1645852
        Susan M. Davies, N.Y. Atty Reg. #2413508
        (sdavies@josephnyc.com)
        Third Avenue, 31st Floor
        New York, NY  10022
        Telephone:  (212) 407-1200

        KOTIN, CRABTREE & STRONG
        Amy C. Mainelli, BBO #657201
        One Bowdoin Square
        Boston, MA 02114
        Telephone:  (617) 227-7031

        **COUNSEL TO PLAINTIFFS GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust**

PARTRIDGE, ANKNER & HORSTMAN LLP

    /s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

BOIES SCHILLER & FLEXNER
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

**COUNSEL TO PLAINTIFFS JANET BAKER, JAMES BAKER, JKBAKER LLC and JMBAKER LLC,**