# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10477 (PBS) |

NYA 776129.1

JANET BAKER and JAMES BAKER,
JKBAKER LLC and JMBAKER LLC,

      Plaintiffs,

      v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

      Defendants.

Civil Action No.:  04-10501 (PBS)

## DECLARATION OF JEFF E. BUTLER

I, Jeff E. Butler, declare and state as follows:

1.      I am an attorney associated with Clifford Chance US LLP and admitted *pro hac vice* to practice before this Court.  I submit this declaration in support of Dexia Bank Belgium's Opposition to Plaintiffs' Motion to Compel the Return of Inadvertently Produced Documents.

2.      In early January 2006, attorneys for Dexia Bank Belgium ("Dexia") discovered what appeared to be an inadvertently produced document among the documents produced by Plaintiffs with the prefix "BRBI."  Dexia promptly notified Plaintiffs of its discovery.

3.      On January 26, 2006, Plaintiffs notified Dexia that the document found by Dexia was actually one of thirteen such documents produced among the "BRBI" documents.  Dexia has been unable to locate the other twelve documents referenced by Plaintiffs.

4.      Attached hereto as Exhibit A is a true and correct copy of the Scheduling Order dated April 27, 2005.

5.      Attached hereto as Exhibit B is a true and correct copy of Stonington Plaintiffs' Responses and Objections to Dexia Bank Belgium's First Set of Interrogatories dated September 20, 2005.

2

6.    Attached hereto as Exhibit C is a true and correct copy of the Order on Dexia

Bank Belgium's Motion to Compel Documents and Interrogatory Responses from Class

Plaintiffs dated December 22, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       March 22, 2006

_____
                Jeff E. Butler

3

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

————————————————————————
                                    )
JANET BAKER AND JAMES BAKER,        )
JKBAKER LLC and JMBAKER LLC,        )
          Plaintiffs,               )
                                    )
     v.                             ) CIVIL ACTION NO. 04-10501-PBS
                                    )
DEXIA, S.A. and DEXIA BANK          )
BELGIUM (formerly known as          )
ARTESIA BANKING CORP., SA),         )
          Defendants.               )
————————————————————————)

## SCHEDULING ORDER

April 27, 2005

Saris, U.S.D.J.

### 1.   Merits Discovery

Merits discovery shall be completed by February 28, 2006.
Subject to the entry of an appropriate protective order,
Plaintiffs shall produce to Defendant no later than June 3, 2005,
copies of the following documents from In re Lernout & Hauspie
Sec. Litig., No. 00-CV-11589-PBS: (1) All documents produced by
any party; (2) all deposition transcripts and exhibits; and (3)
all written discovery requests and written responses.

Discovery taken in one of the coordinated actions will be
treated as having been taken in all of the coordinated actions.

### 2.   Deposition Discovery

Deposition discovery shall not begin until September 1,
2005, with the following exceptions: (1) the parties may seek
discovery through Hague Convention requests or letters rogatory

at any time; (2) the parties may take depositions pursuant to
Fed. R. Civ. P. 30(b)(6) concerning document retention and
production in this case; (3) the parties may agree to depositions
at an earlier date.  Dexia shall inform plaintiffs as soon as an
employee provides notice that he/she is leaving the employment of
Dexia.  Plaintiffs may notice and take a departing employee's
deposition at any time.

### 3.  **Expert Discovery**

Pursuant to Fed. R. Civ. P. 26(a)(2), the parties shall
serve expert reports concerning any matters for which they bear
the burden of proof on or before March 31, 2006.  The parties
shall serve rebuttal expert reports on or before May 5, 2006.
All expert depositions shall be completed on or before June 30,
2006.

### 4.  **Joinder of Additional Parties and Amendment of Pleadings**

Any motion to join additional parties or to amend the
pleadings in this action shall be filed on or before August 1,
2005.

### 5.  **Dispositive Motions/Class Certification**

A motion for class certification shall be filed on or before
March 28, 2006.  Any motion for summary judgment shall be filed
by August 3, 2006.

### 6.  **Settlement/Settlement Conference**

Plaintiffs will present Defendants with a settlement demand

within the next thirty days.

    **7.**   **Final Pretrial Conference**

    The hearing on any dispositive motions and/or the final pretrial conference shall take place on November 8, 2006.

                                       **S/PATTI B. SARIS**
                                       United States District Judge

3

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, | : : : : : : | Civil Action No. 04-10411 (PBS) |
|  Plaintiffs, | : : : |  |
|  v. | : : : |  |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.), | : : : |  |
|  Defendants. | : : : |  |

**STONINGTON PLAINTIFFS' RESPONSES AND OBJECTIONS TO
DEXIA BANK BELGIUM'S FIRST SET OF INTERROGATORIES**

Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and

Stonington Holdings, L.L.C. (collectively, "Stonington Plaintiffs," or "Plaintiffs") hereby

respond and object to Defendant Dexia Bank Belgium's First Interrogatories to the Stonington

Plaintiffs (the "Interrogatories") as follows:

**GENERAL OBJECTIONS**

These General Objections are incorporated into each specific response and objection

hereinafter set forth, whether generally or as to each or any specific Interrogatory, Definition or

Instruction, as if fully set forth therein, and will not be repeated in each specific response or

objection. The provision of any information in response to an Interrogatory is not, and shall not

be construed as, an admission of the propriety of such Interrogatory. Plaintiffs reserve the right

1

to amend these responses and objections. All information provided in response to an Interrogatory will be subject to the objections contained herein.

1.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to impose upon Plaintiffs any obligations different from, or greater than, those established or required by the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

2.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information protected by the attorney client privilege, the attorney work product doctrine, or any other applicable privileges or doctrines, and reserve the right not to provide such information. The inadvertent provision of any privileged information shall not constitute, or be deemed a waiver of, any applicable statutory, regulatory, common-law or other privilege with respect to such information (or the subject matter thereof) or with respect to any other information or discovery now or hereafter requested or produced. Plaintiffs reserve the right not to provide information that is in part protected by any such privilege, except on a redacted basis.

3.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not within the possession, custody or control of Plaintiffs.

4.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they fail to include any temporal limit. Plaintiffs' responses to the Interrogatories will be limited to events that occurred during the period January 1, 1996 through late June 2003.

5.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not maintained by Plaintiffs in the usual course of business.

6.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information in the possession of Plaintiffs that was obtained from a third party under an express agreement of confidentiality.

7.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions.  In providing these responses and objections to the Interrogatories, Plaintiffs do not admit the factual or legal premise of any of the Interrogatories.

8.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are vague, ambiguous or would unreasonably require Plaintiffs to speculate as to the nature and/or scope of the information sought.

9.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are duplicative, cumulative, or otherwise seek to impose undue burden or expense.

10.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they call for information that relates to matters not raised by the pleadings, that is not material and necessary to the prosecution or defense of this action, or that is not reasonably calculated to lead to the discovery of admissible evidence.

11.      Plaintiffs do not in any way waive or intend to waive, but rather intend to preserve and are preserving their rights to: supplement or amend these responses and objections; object on any ground to any Interrogatory seeking further information, or any other discovery requests in,

3

or relating to, this action; or move for an appropriate protective order pursuant to Rule 26(c) of

the Federal Rules of Civil Procedure

      12.     Plaintiffs object to the Definition of "Artesia" as vague in so far as it refers to

"Paribas" as a predecessor entity to Artesia.  Plaintiffs will construe the reference to Paribas to

mean Paribas Banque Belgium.

      13.     Plaintiffs object to the definition of "L&H Litigation" as overbroad to the extent it

includes actions that have not been or were not brought by Plaintiffs.

      14.     Plaintiffs object to the Definition of "You" and "Your" as overly broad, vague,

ambiguous, exceeding the scope of permissible discovery, and not reasonably calculated to lead

to the discovery of admissible evidence.  Plaintiffs will construe references to "you" to mean

Plaintiffs.

**SPECIFIC OBJECTIONS AND RESPONSES**

**Interrogatory No. 1**:

**Identify each act or omission of Artesia that you claim violated Section 10(b) of the
Securities Exchange Act of 1934 and, for each such act or omission, describe how such act
or omission caused the loss for which you seek to recover damages.**

**Response to Interrogatory No. 1**:

      Plaintiffs object to this Interrogatory as premature because their investigation of Dexia

Bank Belgium's (hereinafter "Dexia, which term includes "Artesia") actions and omissions is

ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or

third parties, completely analyzed such documents, taken deposition testimony from the persons

who created the documents and/or were familiar with them and/or the activities they describe, or

engaged expert witnesses, to the extent required to formulate opinions based upon the factual

record developed in this case.  Until this process has been concluded, Plaintiffs cannot provide a

4

fully complete response to this Interrogatory.  Plaintiffs further object to this Interrogatory to the

extent it seeks information protected by the attorney-client privilege or attorney work-product

doctrine and as calling for legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs incorporate by

reference, as if set forth fully herein, paragraphs 1-15 and 39-139 of the Complaint filed in this

case. Plaintiffs further state that Dexia substantially participated in a fraudulent, manipulative

and/or deceptive scheme to artificially inflate L&H's publicly reported revenues and profits, to

show growing revenues and profits, as well as to artificially inflate the value of L&H stock.

Dexia's acts, practices, course of business and conduct to structure, implement and further this

fraudulent, manipulative and/or deceptive scheme include:  (1) Dexia's loans to shell

corporations created by L&H and controlled by L&H and/or its principals, which shell

corporations, in turn, funded (with the monies loaned by Dexia) Language Development

Corporations ("LDCs") that had no legitimate business operations.  Dexia knew that the funds it

loaned were being paid to L&H by the LDCs in the form of sham licensing fees and that L&H

improperly recognized these amounts as revenue.  These transactions include, but are not

necessarily limited to:  (a) Dexia's loan of approximately $6 million dollars to Radial Belgium

N.V. ("Radial") with knowledge that Radial would, in turn, fund three LDCs, that these LDCs

would pay the $6 million to L&H as fraudulent licensing fees (and royalties); Dexia agreed to

this loan because it was guaranteed by credit swap transactions whereby L&H's senior officers

guaranteed the funds Dexia loaned to Radial; the guarantees were structured to avoid disclosure

of the guarantees to anyone, including the SEC and/or the investing public; (b) Dexia's loan of

approximately $6 million to Language Investment Co. ("LIC"), which established and funded a

separate group of LDCs to pay fraudulent licensing fees to L&H, and the fees from those LDCs

5

were also fraudulently reported as revenue; Dexia's loan to LIC was also guaranteed by credit

swaps so that, L&H could avoid disclosing the guarantees to the SEC or the investing public; and

(c) Dexia's funding to the Language Development Fund ("LDF") to establish and fund six LDCs

(different from the LDCs established and funded by either Radial or LIC), with knowledge that

these LDCs funded by LDF were used to funnel the funds provided by Dexia back to L&H

through sham license agreements; Dexia provided these funds via a personal line of credit to

Lernout, Hauspie and Willaert, which was designed to permit L&H to record the funds it

received from the LDCs as revenue without reporting that the funds were guaranteed by L&H's

senior officers.

 (2) as addressed above, Dexia further participated in the scheme to permit the fraudulent

revenue recognition by L&H by structuring the security for its loans to Radial and LIC as credit

swaps with L&H's Senior Officers and by structuring its loan for LDF as a personal line of credit

to L&H Senior Officers with the intention that such guarantees would not be disclosed to the

SEC and investors;

 (3) Dexia's funding of BTG, lending BTG a total of $22.9 million, including its initial

funding, with the intent that L&H would find external investors to repay the loan and in a

manner that permitted L&H to hide the identity of the investors in BTG; Dexia knew that L&H

entered into license and research and development agreements with BTG and also L&H reported

as revenue from those agreements what should have been disclosed as research and development

expenses; when L&H subsequently purchased BTG at far more than the fair value of its assets,

L&H was able to capitalize the purchase price, once again turning what should have been

reported as an expense into an asset; and

(4) Dexia also participated in the above referenced scheme by participating in L&H's agreements with Vasco Data Security International ("Vasco"). L&H entered into a license agreement with Vasco although the "license fee" was no more than a fee for a $3 million loan from L&H. L&H subsequently entered into a second, backdated license agreement with Vasco for a second "license fee" under threat that it would call the loan if Vasco did not agree to backdate the license agreement; L&H fraudulently recognized the revenue from the alleged license fees in 1998. Dexia managed and organized the private placement of Vasco stock, the proceeds of which Vasco used, in part, to repay L&H and which permitted L&H, through its related and affiliated parties, to obtain an ownership interest in Vasco and place Pol Hauspie on Vasco's Board of Directors.

(5) Dexia also concealed its participation in the scheme from the investigators retained by the Audit Committee, as set forth in paragraph 115 of the Complaint.

As a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to materially and falsely inflate L&H's revenues, profits and stock prices, L&H improperly and fraudulently booked and publicly reported millions of dollars of revenue and profits and publicly reported a pattern of growing earnings. Further, as a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme L&H publicly issued a series of announcements and/or press releases touting the validity of the LDC concept and its effect on L&H's growth of revenue and profits, including organic growth of revenue. Dexia's participation in these schemes was directly responsible for the artificial inflation of the value of L&H's stock, causing Plaintiffs damages when the fraudulent, manipulative and/or deceptive scheme, and the consequences thereof were disclosed. Once L&H's true condition became public knowledge, L&H's stock became worthless. Dexia's actions are also, in part, responsible

for the civil and criminal investigations of L&H, L&H's Senior Officers, L&H's related

companies and Dexia itself in either the United States, Belgium or both. Public disclosure of

those investigations also reduced the value of L&H stock.

**Interrogatory No. 2:**

**State each date on which alleged conduct by Artesia caused the price of L&H common stock to decline and, for each such date, identify any Disclosure which led to that decline.**

**Response to Interrogatory No. 2:**

Plaintiffs object to this Interrogatory on the ground that the information sought is not

relevant to any claim or defense of any party in so far as this Interrogatory misapprehends the

law governing Plaintiffs' claims. Plaintiffs further object to this Interrogatory as premature and

harassing because it calls for expert testimony prior to the time when such testimony must be

provided pursuant to the Court's June 2, 2005 Scheduling Order, and because Plaintiffs'

investigation of Dexia's actions and omissions is ongoing, and Plaintiffs have not received all

relevant documents in the control of Dexia and/or third parties, completely analyzed such

documents, taken deposition testimony from the persons who created the documents and/or were

familiar with them and the activities they describe, or engaged expert witnesses, to the extent

required to formulate opinions based upon the factual record developed in this case. Until this

process has been concluded, Plaintiffs cannot provide a fully complete response to this

Interrogatory. Subject to and without waiving these objections and based on the current state of

the discovery and information gathering, Plaintiffs state that the price of L&H's stock declined

from July 2000 to December 2000 (included) as a result of a series of revelations,

announcements and releases of information by L&H and others that the revenues and profits

L&H had previously publicly reported were fraudulently inflated as a result of the scheme in

which Dexia substantially participated. Plaintiffs will provide expert testimony responsive to

8

this Interrogatory at the time required by Fed. R. Civ. P. 26(a)(2). Moreover, the issue as to

whether this Interrogatory is proper at this time is currently *sub judice* on Dexia's Motion to

Compel Documents and Interrogatory Responses from Class Plaintiffs. If a decision of the Court

requires amending this response, Plaintiffs will do so at the appropriate time.

**Interrogatory No. 3:**

**For each relevant quarter, state separately the amount of publicly reported L&H revenue that was attributable to each of (a) the Radial Loan; (b) the LIC Loan, (c) the Personal Loan, and (d) the Vasco Private Placement.**

**Response to Interrogatory No. 3:**

Plaintiffs object to this Interrogatory, (i) on the ground that the information sought is not

relevant to any claim or defense of any party in so far as this Interrogatory misapprehends the

law governing Plaintiffs' claims, (ii) as vague and ambiguous, (iii) to the extent it assumes the

fraudulently inflated revenues, profits and stock price of L&H and the publicly reported growth

of L&H's revenues and profits resulting from the fraudulent, manipulative and/or deceptive

scheme described in the Complaint and in which Dexia substantially participated are somehow

limited to "revenue that was attributable" to a particular loan or transaction, (iv) as premature,

because it calls for expert testimony prior to the time when such testimony must be completed

pursuant to the Court's June 2, 2005 Scheduling Order, (v) and because Plaintiffs' investigation

of Dexia's actions and omissions is ongoing, and Plaintiffs have not received all relevant

documents in the control of Dexia and/or third parties, completely analyzed such documents,

taken deposition testimony from the persons who created the documents and/or were familiar

with them and the activities they describe, or engaged expert witnesses, to the extent required to

formulate opinions based upon the factual record developed in this case. Until this process has

been concluded, Plaintiffs cannot provide a fully complete response to this interrogatory.

9

Plaintiffs further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. Subject to and without waiving these objections, Plaintiffs state that all of the revenue L&H fraudulently recognized and publicly reported from the LDCs owned or controlled by Radial, LIC, and LDF and all of the revenue L&H recognized from Vasco, like other L&H fraudulently recognized and publicly reported revenues, is "attributable" to Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to vastly and fraudulently inflate L&H's revenues, profits and stock price and refer to and incorporate the information from the Complaint. Moreover, the issue as to whether this Interrogatory is proper at this time is currently *sub judice* on Dexia Bank Belgiums's Motion to Compel Documents and Interrogatory Responses From Class Plaintiffs. If necessary and appropriate, Plaintiffs will amend this response at the appropriate time.

**Interrogatory No. 4:**

**State whether you conducted a reasonably diligent investigation of potential claims against Artesia and, if so, state the time period of that investigation, describe all actions taken as part of that investigation and identify any print or electronic media and any computer databases that you reviewed in connection with that investigation.**

**Response to Interrogatory No. 4:**

Plaintiffs specifically object to this Interrogatory on the grounds that it seeks a legal conclusion; that the information sought is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines; and that it is unduly burdensome in so far as it seeks descriptions of "all" actions taken, and identification of "all" print, electronic media and computer databases consulted, during the course of an investigation that began in or about November 2000. Subject to, and without waiving the foregoing specific and general objections, and subject to Dexia's prior agreement that Plaintiffs' response to this Interrogatory does not constitute a waiver of attorney-client privilege or attorney work-product

protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows:

1.    Plaintiffs and their legal counsel have conducted a reasonably diligent factual

investigation of all of Plaintiffs' potential claims arising out of Plaintiffs' sale of Dictaphone

Corporation ("Dictaphone") for artificially inflated, and ultimately worthless, L&H stock,

including potential claims against Dexia, among others.

2.    Plaintiffs initially contacted legal counsel in or about November 2000 to

commence an investigation into possible claims arising out of the sale of Dictaphone to L&H.

3.    Thereafter, Plaintiffs primarily relied upon their legal counsel to investigate all of

Plaintiffs' potential claims arising out of the sale of Dictaphone to L&H.

4.    Commencing in or about November 2000, and continuing through late June 2003

(see General Objection 4, above), Plaintiffs' legal counsel conducted a reasonably diligent

factual investigation of Plaintiffs' potential claims arising out of the sale of Dictaphone to L&H.

In connection with that investigation, Plaintiffs and their legal counsel took the following

actions:

a.    On an on-going basis, counsel for Plaintiffs researched, reviewed and analyzed

publicly available information concerning, *inter alia*, L&H, L&H Korea and L&H Singapore

(collectively "L&H Entities"), the officers, directors, auditors, and legal advisors of L&H

Entities, entities owned by officers and directors of L&H Entities, Brussels Translation Group,

Velstra Ptd Ltd., Radial NV, the Language Development Companies and Cross-Language

Development Companies, and Mercator & Noordstar, N.V., including but not limited to publicly

available information appearing in or available from The Wall Street Journal, The New York Times, Bloomberg, Dow Jones, Lexis-Nexis, Westlaw, Edgar, and Pacer.

     b.    Prior to the time when Plaintiffs were permitted to serve merits discovery in the L&H Litigation, the diligent investigation of potential claims by counsel for Plaintiffs included that counsel:

     i.    Plaintiffs counsel consulted with a forensic accounting firm to analyze L&H's financial results;

     ii.    coordinated with plaintiffs' counsel in the L&H related actions the procurement of information from the SEC (through the Freedom of Information Act) concerning its investigation of L&H;

     iii.    obtained, reviewed, and analyzed an English translation of the Report of KPMG Auditors as Ordered by the Court of Commerce of Ieper by Judgment on January 5, 2001, dated April 12, 2001;

     iv.    obtained, reviewed, and analyzed an English translation of the Report of the Statutory Auditor on the Statutory Accounts Submitted to the General Shareholders' Meeting of L&H, dated June 14, 2001;

     v.    obtained, reviewed, and analyzed 32 boxes of documents produced to the SEC by L&H, which were not publicly available;

     vi.    obtained, reviewed, and analyzed the Report of Findings and Recommendations to the Audit Committee of L&H by Bryan Cave LLP and Loeff Claeys Verbeke, dated November 20, 2000, which was not publicly available;

     vii.    coordinated with other plaintiffs' counsel in the L&H related actions to serve subpoenas on Arthur Andersen LLP, KPMG LLP and PricewaterhouseCoopers LLP

12

seeking documents concerning their audits and investigations of L&H Entities;

        viii.   obtained, reviewed and analyzed (jointly with other law firms representing plaintiffs in the L&H Litigation) 23 CDs of documents produced to the SEC by L&H, which were not publicly available; and

        ix.   coordinated with other plaintiffs' counsel in the L&H related actions to obtain (by motion in the L&H Litigation) an order from the U.S. District Court for the District of Massachusetts directing Arthur Andersen LLP to preserve documents relevant to the L&H Litigation and deliver same to the Court, and served a subpoena on Arthur Andersen LLP pursuant to that order;

    c.   The diligent investigation of potential claims by counsel for Plaintiffs also included that counsel:

        i.   through discovery in the L&H Litigation, commencing in or about September 2002 and continuing through late June 2003, obtained, reviewed, and analyzed documents and deposition testimony, including documents of L&H, and documents of legal advisors, financial advisors, and customers of the L&H Entities. The discovery materials obtained in the L&H Litigation are identified with specificity in Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) dated April 15, 2005, and copies thereof have been made available to Dexia Bank Belgium in discovery. The ability of counsel for Plaintiffs to obtain discovery in the L&H Litigation was delayed by, among other things: (A) the automatic stay under the Private Securities Litigation Reform Act; (B) the bankruptcy of L&H, which among other things necessitated that counsel travel to Belgium to review L&H documents, after obtaining relief from the automatic stay in the United States Bankruptcy Court for the District of Delaware; and (C) the fact that Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG

Belgium") strenuously resisted providing discovery, based on its assertion of an auditor-client

privilege, with the result that Plaintiffs first obtained KPMG-Belgium's workpapers of L&H

audits beginning only in or about June 2004, more than a year after Plaintiffs filed suit against

Dexia.

    ii.  in or about June 2003, obtained, reviewed, and analyzed an English

translation of the report dated May 28, 2001, and titled "Onderzoek Naar de Omzet

Generealiseerd op de Language Development Companies Revenue Recognition Consolidatie –

en Related Party Problematiek, Deel II" (the "LDC Report") prepared for the Belgian

Investigating Magistrate, which was not publicly available or previously available to plaintiffs or

their counsel.

**Interrogatory No. 5:**

**Identify each person who conducted any investigation leading to the allegations in the Complaint, and state, for each such person, the time period of his or her involvement in that investigation.**

**Response to Interrogatory No. 5:**

   Plaintiffs specifically object to this Interrogatory on the grounds that the information

sought is not relevant to any claim or defense of any party, and is protected by the attorney client

privilege, the attorney work product doctrine, and other applicable privileges and doctrines.

Plaintiffs further specifically object to this Interrogatory to the extent that it seeks information

that is not available to Plaintiffs in so far as certain allegations in the Complaint are based upon

investigations conducted by persons who were not employees or agents of Plaintiffs or their legal

counsel, including but not limited to the authors of the *Report of Findings and Recommendations

to the Audit Committee of L&H* by Bryan Cave LLP and Loeff Claeys Verbeke, dated November

20, 2000, the *L&H Korea Report* prepared by PricewaterhouseCoopers LLP, the LDC Report,

and numerous press reports. Plaintiffs further object to this Interrogatory on the grounds that it is overly broad and unduly burdensome in light of the fact that counsel for Plaintiffs commenced investigating potential claims arising out of the sale of Dictaphone to L&H in or about November 2000, and that investigation involved numerous persons whose functions were primarily administrative or who acted primarily as translators. Plaintiffs also object to the requests that Plaintiffs provide the "time period" of the involvement of each individual person in the investigation on the grounds that it is burdensome and not relevant.

Subject to and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to this Interrogatory does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond that the following attorneys were primarily responsible for conducting the factual investigations leading to the allegations in the Complaint:

(a) Max W. Berger, Steven B. Singer, J. Erik Sandstedt, Jerry Silk, Javier Bleichmar, Avi Josefson, Deborah Sturman and Steve Mellen, each of whom is or was an attorney at Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). BLB&G has been involved in the investigation of Stonington's claims from approximately April 2001 to date;

(b) Alan S. Goudis, H. Miriam Farber and Thomas Childs at Shearman & Sterling, located at 599 Lexington Avenue, New York, New York 10022, which was involved in the investigation from about November 2000 through approximately April 2001; and

(c) David C. McBride, Josy W. Ingersoll, John Shaw, and John J. Paschetto at Young

Conaway Stargatt & Taylor LLP, located at Rodney Square North, P.O. Box 391, Wilmington,

Delaware 19899, which was involved in the investigation from about November 2000 through

approximately April 2001.

**Interrogatory No. 6 (a):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 6(a):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(a) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected

in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is

annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel first discovered

information showing a scheme to defraud L&H investors that involved improper revenue

recognition from transactions with Dictation Consortium and Brussels Translation Group; and

(3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show the

fraudulent scheme, acts, practices, course of business, statements and omissions of material facts

to artificially inflate the revenue and stock price of L&H from transactions with Dictation

Consortium and Brussels Translation Group in or about December 2000.

**Interrogatory No. 6 (b):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Language Development Companies.**

**Response to Interrogatory No. 6(b):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(b) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal

counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H;

(2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which

counsel first discovered information tending to show a scheme to defraud L&H investors that

involved improper revenue recognition from transactions involving Language Development

Companies; and (3) Plaintiffs, or their legal counsel, may have first learned of information that

tended to show the fraudulent scheme, acts, practices, course of business, statements and

omissions of material facts to artificially inflate the revenue and stock price of L&H from

transactions with the Language Development Companies beginning in or about the summer of

2000.

**Interrogatory No. 6 (c):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Vasco.**

**Response to Interrogatory No. 6(c):**

  Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

  Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(c)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel first discovered

18

information tending to show a scheme to defraud L&H investors that involved improper revenue recognition from transactions involving Vasco; and (3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show that L&H may have used revenue from transactions involving Vasco as a part of the fraudulent scheme, acts, practices, course of business, statements and omissions of material facts to artificially inflate the revenue and stock price of L&H as it relates to transactions regarding Vasco beginning in or about October 2001.

**Interrogatory No. 6 (d):**

**State the date on which you first discovered information showing that Artesia loaned money to Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 6(d):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(d) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered

information tending to show that Dexia had loaned money to Dictation Consortium and/or

Brussels Translation Group; (3) Plaintiffs, or their legal counsel, may have first obtained

information that tended to show that Dexia loaned money to Brussels Translation Group in or

about June or July 2003; and (4) Plaintiffs, or their legal counsel, first obtained information

tending to show that Dexia may have loaned money to Dictation Consortium in or about October

2001.

**Interrogatory No. 6 (e):**

**State the date on which you first discovered information showing that Artesia loaned
money to one or more Language Development Companies doing business with L&H.**

**Response to Interrogatory No. 6(e):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(e)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel "first

discovered information tending to show a scheme to defraud L&H investors that involved loans from Dexia to the Language Development Companies; and (3) Plaintiffs do not allege that Dexia directly loaned money to one or more of the Language Development Companies.

**Interrogatory No. 6 (f):**

**State the date on which you first discovered information showing that Artesia loaned money to one or more L&H Senior Officers.**

**Response to Interrogatory No. 6(f):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(f) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered information tending to show that Dexia loaned money to one or more L&H Senior Officers; and (3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show that Dexia had extended a personal loan to a Senior Officer in or about August 2000.

21

**Interrogatory No. 6 (g):**

**State the date on which you first discovered information showing that Artesia managed a $11.5 million private placement of common stock for Vasco.**

**Response to Interrogatory No. 6(g):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise date of discovery as that is unduly burdensome and not feasible, and on the ground that the interrogatory incorrectly implies that Artesia was the sole manager of a $11.5 million private placement of common stock for Vasco.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(g) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered that Artesia and Bank Degroof jointly managed a $11.5 million private placement of Vasco common stock; and (3) Plaintiffs, or their legal counsel, may have first learned of information that reflected the joint roles of Artesia and Bank Degroof in the Vasco private placement in or about June 2003.

Dated: September 20, 2005

                              **BERNSTEIN LITOWITZ BERGER
                              & GROSSMANN LLP**

                              Steven B. Singer
                              Javier Bleichmar
                              Victoria Wilheim
                              1285 Avenue of the Americas
                              New York, NY 10019
                              (212) 554-1400 (phone)
                              (212) 554-1444 (fax)

                              - and -

                              **LOONEY & GROSSMAN, LLP**

                              Richard J. Grahn (BBO #206620)
                              Charles P. Kindregan (BBO # 554947
                              101 Arch Street
                              Boston, Massachusetts 02110
                              (617) 951-2800 (phone)
                              (617) 951-2819 (fax)

                              Attorneys for the Stonington Plaintiffs.

## VERIFICATION OF COUNSEL

I verify that the foregoing responses to Interrogatories 4, 5 and 6 and the

objections to all Interrogatories are true and correct.

Executed on September 20, 2005.

Javier Bleichmar
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, New York 10019
212-554-1400

24

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served to counsel in the attached service list by electronic mail on September 20, 2005.

### *STONINGTON PARTNERS, INC. v. DEXIA BANK BELGIUM*

### SERVICE LIST

**1.    Counsel for Stonington Partners, et al.**

Steven B. Singer, Esq.
Erik Sandstedt, Esq.
Javier Bleichmar, Esq.
Avi Josefson, Esq.
**BERNSTEIN LITOWITZ, BERGER & GROSSMAN LLP**
1285 Avenue of the Americas
New York, NY 10019
*(212) 554-1400*

**2.    Co-Lead Counsel for the Lead Plaintiffs**

Glen DeValerio
Jeffrey C. Block, Esq.
Patrick T. Egan, Esq.
**BERMAN, DEVALERIO PEASE
      TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
(617) 542-8300

J. Allen Carney, Esq.
Causley Bowman Carney & Williams, PLLC
11001 Executive Center Drive, Suite 200
PO Box 25438
Little Rock, AR 72221-5438
(501) 312-8505

James P. Bonner, Esq.
Patrick L. Rocco, Esq.
**SHALOV STONE & BONNER**
485 7th Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

**3.    Counsel for Filler, et al.**

Gregory P. Joseph, Esq.
Susan M. Davies, Esq.
**GREGORY P. JOSEPH LAW OFFICES, LLC**
805 Third Avenue

31st Floor
New York, NY 10022
(212) 407-1210

4.      **Counsel for Baker, et al**

Karen C. Dyer, Esq.
George C. Coe, Esq.
**BOIES, SCHILLER & FLEXNER LLP**
255 S. Orange Avenue
Suite 905
Orlando, FL 32801-3456
(407) 425-7118

Alan K. Cotler, Esq.
Joan Yue, Esq.
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 10103-4301
(215) 851-8100

Terence K. Anker, Esq.
**Law Offices of Patridge, Akner
& Horstmann LLP**
200 Berkely St., 16th Floor
Boston, MA 02116
(617) 859-9999

5.      **Counsel for Defendant Dexia Bank Belgium**

James B. Weidner, Esq.
Jeff E. Butler, Esq.
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Tel: 212-878-8205
Fax: 212-878-8375
Jeff.Butler@CliffordChance.com

Peter M. Saparoff, Esq.
**MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, PC**
One Financial Center
Boston, MA 02111

# EXHIBIT A

08/19/2005 15:26 FAX                CLIFFORD CHANCE US LLP                            ☒002/003

**C L I F F O R D**

**C H A N C E**

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019 6131

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com


**Jeff E. Butler**

DIRECT TEL 212-878-8205
DIRECT FAX 212-878-8375
jeff.butler@cliffordchance.com

August 19, 2005

VIA FACSIMILE

To:     Counsel on attached list

Re:     *Quaak v. Dexia Bank Belgium*
        *Stonington v. Dexia Bank Belgium*
        *Filler v. Dexia Bank Belgium*
        *Baker v. Dexia Bank Belgium*

Dear Counsel:

     This letter confirms my telephone conversation yesterday with Susan Davies and George Coe.

     *First*, as Plaintiffs have requested, Dexia and its counsel hereby agree that responses to Dexia Bank Belgium's Second Set of Interrogatories to Class Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the Stonington Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the TRA Rights Trust and Dexia Bank Belgium's First Set of Interrogatories to the Baker Plaintiffs shall not constitute a waiver of any privilege or other immunity from disclosure, including, but not limited to, the attorney-client privilege and the attorney work-product protection, that may apply to such responses. Dexia and its counsel further agree that they will not argue before any Court that the aforementioned responses constitute a waiver of any privilege or other immunity from disclosure.

     *Second*, as Plaintiffs have requested, Dexia agrees that the deadline for serving responses to the interrogatories referenced above shall be extended to September 20, 2005.

     *Third*, we have previously informed you that Dexia was working to complete its document production (with the exception of documents from backup tapes) by the beginning of September. It is now clear that we will not be able to meet that target. We now expect our document production (with the possible exception of documents from backup tapes) to be substantially complete in late September or early October.

Sincerely,

Jeff E. Butler

NYB 1508617.1

EXHIBIT C

# United States District Court
# District of Massachusetts

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly
situated,
      Plaintiffs,

    v.

DEXIA, S.A. and DEXIA BANK
BELGIUM (formerly known as
ARTESIA BANKING CORP., SA),
      Defendants.

CIVIL ACTION NO. 03-11566-PBS

## *ORDER ON DEXIA BANK BELGIUM'S MOTION TO COMPEL DOCUMENTS AND INTERROGATORY RESPONSES FROM CLASS PLAINTIFFS (#80)*

COLLINGS, U.S.M.J.

    The Court rules on Dexia's motion to compel as follows:

    *Request #10*: The plaintiff shall produce, **on or before the close of business on Tuesday, January 31, 2006,** all documents in the following categories within

its custody, possession, and/or control  which were dated, created, sent or

received before August 19, 2001:

(1)  Documents concerning any investigation by plaintiffs which were directed in any way to the activities of Dexia or Artesia specifically;

(2)  Documents concerning any investigation by plaintiffs which were directed in any way to the activities of a bank, banks, banking corporation(s) or banking institution(s) in connecting with the L & H fraud.

(3)  Documents concerning any investigation by plaintiff which mention Dexia or Artesia or which refer to Dexia or Artesia either by specific name or otherwise.

(4)  Documents upon which plaintiffs intend to rely to demonstrate Plaintiffs' counsel exercised reasonable diligence in investigating potential claims against Dexia or Arestia.

The defendants' request, to the extent that it seeks all documents in

connection with the entire L & H investigation, is vastly overbroad.  On the

other hand, the plaintiffs' view that because they bear the burden of proof on

the issue of whether a reasonably diligent investigation was conducted of Dexia

and Arestia somehow acts as a limitation on discovery is incorrect.  Subsection

(2), *supra,* is designed to strike a balance - plaintiffs do not have to reveal all

documents relating to the L & H investigation but must reveal documents

relative to their investigation of institutions which were in a similar position to

2

Dexia and Artesia, i.e., banks, banking corporations or banking institutions. In my judgment, the defendants are entitled to documents relating to the plaintiffs' investigations of not only Dexia and Artesia but also to documents relating to their investigations of entities like Dexia and Artesia.

*Privilege Log:* The Court rules that the plaintiffs may not withhold documents which come within the categories specified, *supra,* which otherwise would be protected as non-opinion work product. However, as to any documents within the categories specified, *supra,* which the plaintiffs contend are protected as opinion work product, the plaintiffs shall file and serve, ***on or before the close of business on Tuesday, January 31, 2006,*** a privilege log.

*Loss Causation:* The Court rules that the interrogatories be fully and completely answered on the same date on which plaintiff is required to serve its expert reports.

To the extent indicated, *supra,* it is ORDERED that the motion to compel (#80) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that the motion to compel be, and the same hereby is, otherwise DENIED.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
December 22, 2005    United States Magistrate Judge

3