EXHIBIT A

```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS

        --------------------------------
        IN RE:                      :       Civil Action
                                    :       Nos. 00-11589-PBS,
              LERNOUT & HAUSPIE     :       02-10302, 02-10303
              SECURITIES LITIGATION :       and 02-10304
                    and             :       Courtroom No. 19
              CONSOLIDATED AND      :       1 Courthouse Way
              RELATED CASES         :       Boston, MA 02210-3002
        --------------------------------        4:00 p.m. Tuesday
                                                February 15, 2005


                            CONFERENCE


        Before:        THE HONORABLE PATTI B. SARIS,
                       UNITED STATES DISTRICT JUDGE


        APPEARANCES:

        Berman, DeValerio & Pease, Tobacco, Burt & Pucillo,
          (by Glen DeValerio, Esq, and Jeffrey C. Block, Esq. and
          Patrick Egan, Esq.),
          One Liberty Square, Boston, MA 12109,
          on behalf of the Class Action Plaintiffs.

        Shalov, Stone & Bonner LLP, (by Patrick Rocco, Esq.),
          485 Seventh Avenue, Suite 100, New York, NY 10018,
          on behalf of the Class Action Plaintiffs.

        Gregory P. Joseph Law Offices LLC, (by Susan Davies, Esq.)
          1221 Avenue of the Americas, 24th Fl., New York, NY 10004,
          on behalf of the Filler Plaintiffs.

        Bernstein, Litowitz, Berger & Grossmann LLP,
          (by Javier Bleichmar, Esq.),
          1285 Avenue of the Americas, New York, NY 10019,
          on behalf of the Stonington Plaintiffs.


                         Marie L. Cloonan
                       Federal Court Reporter
                    1 Courthouse Way - Room 5209
                     Boston, MA 02210 - 617-439-7086
                   Mechanical Steno - Transcript by Computer
```

APPEARANCES CONTINUED:

Boies, Schiller & Flexner LLP, (by George R. Coe, Esq.),
  255 South Orange Avenue, Suite 905
  Orlando, FL 32801-3456,
  on behalf of the Baker Plaintiffs.

Willcox, Pirozzolo & McCarthy, (by James Nicklaus, Esq.),
  50 Federal Street, Boston, MA 02110,
  on behalf of the Bamberg and Roth Plaintiffs.

Goodwin Proctor LLP, (by Anthony M. Feeherry Esq. and
  Gus P. Coldebella, Esq.)
  Exchange Place, 53 State Street, Boston, MA 02109,
  on behalf of the Defendant Jozef Lernout.

Morrison Cohen Singer & Weinstein, LLP,
  (by David H. Chase, Esq.),
  750 Lexington Avenue, New York, NY 10022
  on behalf of the Defendants Pol Hauspie and Nico Willaert.

Craig and Macauley, (by William R. Moorman, Jr., Esq.),
  600 Atlantic Avenue, Boston, MA 02210,
  on behalf of the Defendant Gaston Bastiaens.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
  (by Peter M. Saparoff, Esq.)
  One Financial Center, Boston, MA 02111,
  on behalf of the Defendant Dexier.

1                              * * *

2              THE CLERK:  In Re:  Lernout and Hauspie Securities

3      Litigation, Civil Action No. 00-11589, will now be heard

4      before this Court.

5              Will counsel please identify themselves for the

6      record.

7              MR. DeVALERIO:  Good afternoon, your Honor.  Glen

8      DeValerio and Jeffrey Block and Patrick Egan from Berman

9      DeValerio for the plaintiffs.

10             MR. ROCCO:  Good afternoon, your Honor.  Patrick

11     Rocco, Shalov Stone & Bonner, for the plaintiffs.

12             MS. DAVIES:  Susan Davies of the Gregory Joseph Law

13     Offices for the Filler plaintiffs.

14             MR. COE:  George Coe, Boies, Schiller & Flexner for

15     the Baker plaintiffs.

16             MR. BLEICHMAR:  Javier Bleichmar on behalf of the

17     Stonington plaintiffs.

18             MR. NICKLAUS:  Jim Nicklaus, Willcox, Pirozzolo and

19     McCarthy for the Bamberg and Roth plaintiffs.

20             MR. FEEHERRY:  Anthony Feeherry for Mr. Lernout,

21     defendant.

22             MR. COLDEBELLA:  Gus Coldebella also for Mr.

23     Lernout.

24             MR. CHASE:  Don Chase for the defendants Hauspie

25     and Willaert.

4

1           MR. MOORMAN:  William Moorman for Gaston Bastiaens.

2           THE COURT:  Well, here's the issue.  You don't want

3    to go to trial, basically, next month, as I understand it,

4    unanimously?  Is that it?

5           MR. DeVALERIO:  Yes, your Honor.  We don't want to,

6    but --

7           THE COURT:  I'm not willing to wait years.

8           You see, here's my issue.  These five cases have

9    shown up on my old case report now twice in a row.  They

10   were triggered as ancient at this point.  And, I have no

11   immediate sense of when they can go to trial.  So, we have

12   some solutions.

13          If you don't want to go to trial, one possibility

14   is I can stay this case, administratively close them until

15   the criminal case in Belgium is resolved.  And, then, you

16   can reopen it at that point.

17          Another issue is you could just dismiss the case

18   without prejudice, subject to an agreement that no statute

19   of limitations issues will be raised.

20          Or, thirdly, we can try it.

21          But, I can't infinitely put this off.  I don't

22   think we can tag it to Dexier because Dexier -- there's so

23   many issues between now and when we get to Dexier, that it

24   could be two years down the road.

25          MR. DEVALERIO:  Well, your Honor, let me respond to

1    that.

2            First of all, I don't think that that's accurate.

3    A very substantial amount of the discovery with regard to

4    Dexier is completed.  Because, we have all the discovery

5    with regard to the LDCs which is the role that Dexier played

6    --

7            THE COURT:  Well, how far down the road -- is

8    anyone here from Dexier?

9            MR. DeVALERIO:  Yes, they are here.

10           THE COURT:  How long do you see it?  What other

11   motions are up your sleeve, shall we say?

12           MR. SAPAROFF:  Well, my client --

13           THE COURT REPORTER:  Could I have your name,

14   please?

15           MR. SAPAROFF:  Peter Saparoff from Mintz Levin.

16           THE COURT:  Yeah.

17           MR. SAPAROFF:  The client just got the opinion,

18   your Honor.  So, I don't have much in the way of direction.

19   But, I could see a substantial amount of time before Dexier

20   is ready for trial.  There's been obviously no discovery

21   conducted by Dexier yet.

22           THE COURT:  Yes.  I mean, that's just it.

23           So let me ask you this.  I was trying to think of

24   the dilemma from your point of view.

25           Why don't we just close the case, pending whatever

6

1    happens in Belgium and, then, you just kick it into action

2    when that case is resolved.

3            MR. DeVALERIO:  Well, that part of it is the simple

4    part of it.  The complex part is the question of whether or

5    not we can try the Dexier action with the individual

6    defendants.

7            The problem with -- and my guess is, if your

8    Honor's position is that we're going to have to do this

9    twice, that our position is we'll just do it twice.

10           THE COURT:  You may have to.

11           MR. DeVALERIO:  Well, the problem is -- and the

12    complications that would arise from that are enormous.  For

13    example, not only are we going to have to put in all that

14    testimony two times, we're going to have the damage expert,

15    we're going to have the accounting expert, we're going to

16    have to have juries decide a portion of the fault.

17           THE COURT:  I understand this isn't perfect.

18           You chose to do Dexier separately.  You got a

19    benefit from that because it's a separate proceeding.  But,

20    it also comes with a cost.

21           I am simply not willing to carry five cases on the

22    geriatric list, the only five that I have, infinitely.  I am

23    willing to take other steps.  I understand at least --

24    actually, I just got another opinion -- I haven't had a

25    chance to see -- so, I'm not sure I totally understand what

1    the issue is yet and I'll read it over.  I understand that

2    there is some problem here, logistically and strategically.

3    I also understand that from the individual's point of view

4    -- has that Fifth Amendment issue been raised and resolved?

5              MR. CHASE:  It's been raised, not resolved.

6              THE COURT:  All right.

7              We could just do what I generally do in these

8    matters when there are pending criminal matters in a United

9    States case.  Just stay it.  Just stay it until the Belgium

10    thing is over.  It preserves your -- it takes it off my

11    active list.  It stays it, so you haven't lost your statute

12    of limitations.  As soon as that case which you, at least

13    last time, told me it was supposed to be tried in Belgium in

14    the fall, is that still a realistic shoot?  Someone?

15              MR. CHASE:  No idea, your Honor.

16              THE COURT:  Anyone know?

17              MR. COLDEBELLA:  That's our current understanding.

18              THE COURT:  And, then, when that's over, you seek

19    to put it back in and, then, we'll see where it exactly is.

20    If we're just a few months separate, that's one thing.  If

21    we're still years down the road, that's another thing.

22              MR. DeVALERIO:  Well, clearly, from our point of

23    view, if your Honor is willing to entertain at the

24    appropriate time the notion that it is not advantageous to

25    try these things twice, we'd be talking about several months

8

1     of trial done two times, with all the res judicata and

2     collateral estoppel issues that would come from one trial

3     and whether they're applied to another, and potentially

4     different jury verdicts with regard to percentage fault, one

5     to another.  That would be, I think, a logistical and legal

6     nightmare.

7            THE COURT:  I'm --

8            MR. DeVALERIO:  But, if --

9            THE COURT:  I'm never willing -- I'm never going to

10    say never.  I'm just simply saying I understand the

11    argument.  We're now so close to when the criminal case is

12    supposed to be tried, I'd be willing, if it goes that route

13    -- I don't know whether there are res judicata that stems

14    from that.  But, my guess is that there'd be a serious

15    chance of settlement if the defendants either won or lost on

16    that.  It would just facilitate settlement.

17            Is that right?

18            MR. DeVALERIO:  I'm sorry.  What ould be?

19            THE COURT:  Whatever happens in that criminal

20    proceeding may facilitate settlement.

21            MR. DeVALERIO:  It's really not a settlement

22    issue, your Honor.  The problem is what the PSLRA has put us

23    all in a bind now.

24            If we -- if we are able to establish -- and this is

25    what Judge Cote ruled on in the Worldcom case -- if we are

9

1    able to establish knowing conduct by Dexier and that

2    establishment in that trial is done in the context in which

3    the individuals remain as defendants and are tried at the

4    same, or, tried and go to a verdict, as opposed to

5    settlement, then, the claim against Dexier, they do not get

6    a setoff for the portion fault of the individual defendants,

7    which could easily be half or more of a verdict.

8           If we settle with them, even though in this

9    context, which we all recognize collectability is slim to

10   zero, and we know that -- but, if we settle, they get --

11   Dexier, even if we're able to establish known conduct, gets

12   a free pass with regard to the settlement with the

13   individuals and they get proportionate fault.  And so, half

14   or more of a judgment against Dexier could be lost by

15   settlement.

16          THE COURT:  That may be.

17          Let me tell you what my restraints are.  I'm not

18   willing to wait forever.  I've made that position clear.

19   They are sitting -- they've been sitting here since when,

20   1999?  It's an old case.  It's a really old case, which I've

21   spent enormous amounts of time on, as I know all of you

22   have.  I think I've written half a dozen or more opinions

23   and that doesn't even include the ones Judge Collings has

24   put into it.

25          So, I am willing, because I understand we're so

10

1    close now to the trial in Belgium, to stay the case pending

2    that.  That makes sense.  We'll move along the Dexier case.

3    We'll see how close they are.  But, I'm not willing to put

4    this case -- I understand that -- I'm not willing to put it

5    off three years.  I'm just not.  Maybe you'll settle with

6    Dexier.  Maybe it will create a good incentive to do that.

7         So, let me hear -- does anyone have a problem with

8    staying this, pending the criminal proceeding in Belgium?

9         MR. DeVALERIO:  Well, let me just say, for the

10   plaintiffs, that we could -- if we were to see that -- it

11   would be a stay pending either the earlier of a resolution

12   with the criminal action, or, the Dexier case is now ready

13   for trial and we're there and thus able to make the argument

14   --

15        THE COURT:  Well, you could move to reopen it

16   whenever you want, but -- because, actually, from my point

17   of view, you go off my radar screen as soon as I

18   administratively close it.  You can move to reopen it.  I'll

19   do it on the grounds of the criminal proceeding and you can

20   move to reopen it whenever.

21        MR. COLDEBELLA:  We have no problem with that, your

22   Honor.

23        THE COURT:  Preserve -- my concern, just so that I

24   speak outloud, is I don't think you're right.  I think that

25   Dexier is at least they have to master the materials, I'm

11

1    going to get the inevitable motion for summary judgment.

2              If it looks anything like that monster that I

3    started to read before it settled -- I mean, I'm not

4    kidding.  We had a dolly bring in -- well, you probably had

5    one in your office.  What was it, eight crates of documents?

6    If it looks anything like that and it doesn't settle, it

7    will take me another three years to get through Dexier.

8              MR. DeVALERIO:  Your Honor, the only other point I

9    want to make is that -- we still have the settlement pending

10   against the outside directors and FLV.  So, I don't know

11   what your Honor has to do to keep it open at least for

12   purposes of our conclusion of settlement.

13             THE COURT:  When is that all resolved?  You

14   probably know.

15             MR. DeVALERIO:  Well, we're just about to finish

16   now with the FVL papers.  So, we're at a point where we'll

17   be able to file that, get a preliminary approval, and, then,

18   send a notice out.  So, it will be May, June, something like

19   that.

20             THE COURT:  Do we have a date for that?

21             MR. DeVALERIO:  We did, but we then continued it

22   because we settled with FLV.

23             THE COURT:  So, should we put that on now?

24             MR. DeVALERIO:  What are we, Patrick?

25             MR. EGAN:  We probably will get the FLV papers,

12

1    preliminary approval, within the next, I would say, week,

2    week and a half or two weeks.

3          MR. DeVALERIO:  Then, we have the notice hearing

4    and the final approval hearing.

5          I don't know if your Honor wants -- really needs to

6    have a hearing for preliminary approval of the FLV --

7          THE COURT:  No, no, no.

8          But, don't we need a hearing date?  Maybe I'll just

9    give -- you think this will happen sometime in May?

10         MR. EGAN:  Well, there's the preliminary approval

11   papers.  We'll have a proposed order and you can set a final

12   order at that time.

13         THE COURT:  Okay.

14         MR. DeVALERIO:  We'll propose a date.

15         THE COURT:  Of course.  That needs to be done.

16         So, does anyone have a problem with this solution?

17         MR. ROCCO:  Judge, I just want to clarify, because

18   I may be the one to craft the order.  This is without

19   prejudice to anybody's right to seek your Honor to reopen

20   the case?  I mean, it's stayed, but if events change and

21   either the Dexier case, is where we think it's going to be,

22   where something happened in the criminal proceeding, or

23   there's some issue with respect to discovery?

24         THE COURT:  Right.

25         But, anybody could move to reopen it.

13

```
1              Let me just say the one uncertainty in my mind.
2      Let's say there's a criminal trial and something happens,
3      charges are dismissed, they're acquitted, they're convicted,
4      whatever.  And, let's assume at that point, I think you need
5      to give me a status.
6              Maybe what I should do is set a status as to where
7      it's at.  What I think is bad lawyering -- well, that's
8      actually wrong.  I don't want to -- there's been excellent
9      lawyering in this case -- bad judgment on my part.  If you
10     go too far down the line, people's memories fade.  It just
11     -- as it is right now, I don't know how anyone can remember
12     anything.
13             And so, I'm not willing to wait until 2008 or some
14     -- I mean, I'm not willing to wait forever.  There is an
15     interest.  And, even though I understand, I've never seen
16     this play out before.  I understand how it interests you.
17     It's just I can't have it play out forever.
18             MR. ROCCO:  Your Honor, we share that same concern.
19     That's why I want to make sure we have the right to go back
20     in after years go by and, then, nothing's happened in
21     Belgium, or, that we may -- we may say, at that point:
22     Let's just have a trial.
23             THE COURT:  Yeah.  I don't know how you, candidly,
24     how you're going to try this case here.  Isn't it all going
25     to be by way of depositions?
```

14

1          MR. DeVALERIO:  Largely.

2          THE COURT:  That's horrible.  I mean, just in terms

3     of pressing the matter, I'm sure.

4          How are you all planning on defending the case?  By

5     way of deposition?

6          MR. CHASE:  It depends on whether -- your Honor, it

7     depends on whether it will be on the Fifth Amendment issue

8     or not.

9          THE COURT:  Well, once that trial is over, is there

10    going to be some -- let's say, for example, is there any

11    serious possibility of a criminal prosecution here?

12         MR. COLDEBELLA:  Well, the way that we've thought

13    about it, your Honor, is that the statute of limitations

14    probably runs around fall of 2005, in the United States and,

15    at that point --

16         THE COURT:  The winds were howling and they should

17    have known in the SEC Office?

18         (Laughter.)

19         MR. COLDEBELLA:  Exactly.

20         And, at that point, we may choose to defend the

21    case in a different way than we were defending that.

22         THE COURT:  Have you all been taking video

23    depositions over there

24         MR. DeVALERIO:  Yes.

25         THE COURT:  So, it won't be quite so boring for a

15

1    jury.

2         I don't know if any of you remember this case.  I
3    don't think any of you were involved.  But, I had a case
4    involving an alleged fraudulent fish farm, a situation in
5    Canada, and everyone was beyond the power of the subpoena.
6    It was the deadliest trial anyone's ever sat on.  It was a
7    hundred percent trial by depositions.

8         And, I have to tell you that the plaintiff lost,
9    although I thought he had a decent case, because all the key
10   witnesses were on transcripts.

11        Now, it's a little different now because of video.
12   Yeah, I'm not even sure the jury listened.  I mean, at some
13   point, it just gets boring.  So, I'm hoping that we can do
14   something else.

15        But, I am going to -- I can't do anything as far as
16   staying the cases now.

17        I take it the private plaintiffs are satisfied with
18   this solution, too?

19        MR. BLEICHMAR:  Yes, your Honor.

20        THE COURT:  And, I will just stay it until someone
21   moves to reopen it and gets it off my list and it's not just
22   sitting there every six months.

23        Are there five cases?  Are there five altogether?
24   It's my only five cases pending for six years or whatever it
25   is.  So, I think that is a helpful way to get beyond it.

1          Now, let me ask you.  If you're here for Dexier,

2     can I do a scheduling conference now?

3          MR. DeVALERIO:  I'm sorry, your Honor?

4          THE COURT:  Can I do a scheduling conference for

5     Dexier so you don't have to come back?

6          MR. DeVALERIO:  Well, we -- Mr. Saparoff and I were

7     talking before the hearing and what we discussed was that we

8     would try to come up with a schedule for your Honor of --

9     answer, discovery and, you know, all the way through.  And,

10    we'd like to have an opportunity to meet and discuss that

11    and see if we can work that out, only come back here with

12    whatever we may have in dispute.

13         THE COURT:  I'm not even sure you need to come

14    back, just if it's agreed upon --

15         MR. DeVALERIO:  Only if there is a dispute.

16         THE COURT:  But, it's got to be within reason

17    because there -- I can't imagine there's a deposition that

18    hasn't been taken.  And, that isn't to say that Dexier

19    doesn't have the right to clean it up.  But, you can

20    incorporate all those depositions into the case between the

21    two of you.  And, then, you can do cleanup depositions.  You

22    know, how it specifically affects Dexier.

23         You see, we've got to give them enough chance to

24    master the material.  It's huge, huge.

25         So, why don't you --

17

1            MR. DeVALERIO:  Well, remember, your Honor, this --

2     there is a distinction.  As long as you run it to the LDC

3     portion --

4            THE COURT:  That's huge.

5            MR. DeVALERIO:  Well, it's significant, but it's

6     not overwhelming.

7            THE COURT:  It's not the guy disappearing into

8     China.  Has anyone found him?

9            MR. DeVALERIO:  No.

10           MR. CHASE:  Korea?

11           MR. DeVALERIO:  No.

12           THE COURT:  But, wasn't he -- He's Korean?

13           MR. DeVALERIO:  They think he went to China, your

14    Honor.

15           THE COURT:  What?

16           MR. DeVALERIO:  They think he went to China.

17           THE COURT:  I keep thinking, with all these tours

18    of China, someone is going to say "There he is," on the

19    wall.  But, in any event -- or, one of those new

20    skyscrapers, one of those cities I've never heard of.  You

21    know.

22           (Laughter.)

23           THE COURT:  But, let's do this.  You two work it

24    out.  I'll probably just agree on two trials in the future.

25    If I can possibly try them together, I will.  But, I'm very

18

1    wary of waiting too long.

2         MR. DeVALERIO:  We are, too.

3         THE COURT:  You know, one possibility was let's say

4    you were tried in the fall and we could get you up to speed,

5    within a year, that might be a doable scenario than close to

6    three years.

7         Are there any personal jurisdiction issues with

8    Dexier?

9         MR. DeVALERIO:  No.  The bank is found here in the

10   United States.

11        THE COURT:  So that we won't have that whole round

12   of communications?

13        MR. DeVALERIO:  Well, it doesn't mean that it won't

14   be emotional, your Honor.

15        FROM THE FLOOR:  If we dismiss against Dexier USA,

16   then, there is a personal jurisdictional --

17        THE COURT:  All right.

18        FROM THE FLOOR:  -- then -- I don't think there is

19   on Dexier.

20        THE COURT:  All right.  Because that held up the

21   other -- a few of the other cases for a while.  So, it's

22   really going to be merits, discovery and then likely motions

23   for summary judgment, my guess is.  Is that right?

24        FROM THE FLOOR:  That's correct.

25        THE COURT:  All right.  So, you're going to get me

1  two things.  One is the FLV papers and then I'll set a date.

2  One is the schedule and set a date.  And, then, maybe an

3  agreed-upon motion for administrative leave to close this

4  pending the criminal action, without prejudice to either

5  side's right to move to reopen it.

6         MR. DeVALERIO:  We'll circulate a proposed order.

7         THE COURT:  Everybody else is happy?

8         MR. COLDEBELLA:  Yes.

9         THE COURT:  I don't really understand in my heart

10  what this is all about.  You say the Worldcom people have

11  done it pretty well, explained the whole ...

12         MR. DeVALERIO:  Well, Judge Cote wrote an

13  exhaustive opinion on the scope of these problems.  And,

14  you'll see it there.

15         The fundamental problem is that while -- when --

16  Congress had in the statute a section that said when there's

17  knowing conduct found against the defendant, then, you will

18  not have proportion of fault.  There would be joint and

19  several liability.

20         But, then, another section says that in the event

21  there's a settlement, then, the settling defendants -- the

22  nonsettling defendants are entitled to a setoff for the

23  proportionate fault of the settling defendant.

24         And, where the ambiguity lies is the Court -- the

25  statute never said anything about: well, what happens if you

1    go forward with a trial against the nonsettling defendant

2    and you find that -- the jury finds or the Court finds

3    knowing conduct by the nonsettling defendant?

4         And, that's been a battle going on and has been a

5    real impediment to settlement discussions in many cases for

6    several years now because no one knows the answer.

7         And, Judge Cote seems to be saying -- this is his

8    opinion -- but it has to do with Section 11 as opposed to

9    Section 10(b), the 33 Act -- that, yes, if you have -- if

10   you settle and even if you have knowing conduct later found

11   against the nonsettling defendant, that nonsettling

12   defendant gets the benefit of the proportion fault for the

13   settling defendant, which means, as you see here, she denies

14   approval of the settlement.

15        The plaintiffs say:  In that case, we're

16   withdrawing the settlement with the individuals because

17   we're not going to jeopardize the recovery against the

18   nonsettling defendants.

19        That would be the same situation --

20        THE COURT:  And, here, it would be worth it to you

21   because it's likely that the individuals don't have very

22   much money, whereas the bank would?

23        MR. DeVALERIO:  And, that's exactly what happened

24   before Judge Cote.  It was just $50 million as opposed to

25   potentially billions of dollars in liability by the inside

1    defendants.

2         THE COURT:  In the meantime, I rushed my -- not

3    rushed, but I made sure I got out Dexier before this because

4    it might -- is it worth trying to settle everything globally

5    at this point, people have a sense of the risks of it?

6         MR. DeVALERIO:  Well, we -- Mr. Saparoff and I -- I

7    spoke to him.  Obviously, they just got the opinion.  And, I

8    suggested to him the question of did they want to sit down

9    and talk, and I think it's part of our discussions on the

10   schedule.  We will broach that subject as well.

11        THE COURT:  I used to be able to offer the world's

12   most wonderful Judge Mazzone, but obviously he's not here

13   anymore.  And, I -- some of the magistrate judges -- and

14   Judge Skinner is not doing well.  So, I don't -- our ADR

15   program we're rethinking at the moment.  But, some of the

16   magistrate judges are pretty good and you can go privately.

17   So, I don't know whether that's something you --

18        MR. DeVALERIO:  Well, Professor Green knows a lot

19   about this --

20        THE COURT:  I know he does.

21        MR. DeVALERIO:  -- as well as Judge Pollitan who

22   settled the --

23        THE COURT:  I didn't want to -- Judge Green -- I

24   feel like it's Judge Green sometimes -- he's been very

25   involved in a bunch of my cases as he is in this one.  He'd

22

1    be great.  I don't know if Dexier feels comfortable with

2    him.  But, if not, we can try some other solution.

3            It may be worth you trying to do that and we can

4    wrap it all up in the FLV thing.  But ...

5            MR. DeVALERIO:  That, I think, is --

6            THE COURT:  That's too rosy?

7            MR. DeVALERIO:  Yeah.

8            THE COURT:  Fair enough.  Okay.

9            ALL ATTORNEYS:  Thank you, your Honor.

10           THE CLERK:  The Court is in recess.

11           (Whereupon the hearing was concluded.)

12

13                        CERTIFICATE

14           I, Marie L. Cloonan, Official Reporter of the

15   United States District Court, do hereby certify that

16   the foregoing transcript, from Page 1 to Page 22,

17   constitutes to the best of my skill and ability a true

18   and accurate transcription of my stenotype notes taken

19   in the matter of Civil Action Nos. 00-11589-PBS,

20   02-10302-PBS, 02-10303-PBS and 02-10304-PBS, In re:

21   Lernout & Hauspie Securities Litigation and

22   Consolidated and  Related cases.

23

24                        --------------------------------

25

Exhibit B

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

### NEW YORK • CALIFORNIA • NEW JERSEY • LOUISIANA

Avi Josefson
avi@blbglaw.com
212-554-1493

March 30, 2006

**Via Electronic Mail**

Thomas Teige Carroll, Esq. (thomas.carroll@cliffordchance.com)
Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019-6131

> **Re:**   ***Stonington Partners, Inc. v. Dexia, S.A.,* No. 04-CV-10411-PBS**

Dear Mr. Carroll:

I write in response to your March 29, 2006 letter regarding the depositions of Albert J. Fitzgibbons and Scott Shaw. In your letter, you provided no reason why the deposition of Mr. Shaw cannot be conducted on May 25 as proposed in my letter of March 27. As you know, we have accommodated the schedules of Dexia's witnesses throughout this litigation, including sudden, unexplained schedule changes such as that recently requested on behalf of Mr. Mommens. Accordingly, we would appreciate it if Dexia would show the same courtesy with regard to our clients. Mr. Shaw is available from May 23-26. If Clifford Chance is unable to conduct his deposition on one of those dates, we will seek to provide alternate dates on which Mr. Shaw is available. However, in light of Mr. Shaw's schedule, it will be difficult to find alternate dates around the time you have proposed.

With regard to you proposal that the parties stipulate that Dexia can use the transcripts of prior depositions in this Action, Judge Saris already stated at the February 15, 2005 hearing that all depositions previously taken in the L&H-related litigations are to be incorporated in this Action. *See* February 15, 2005 Hearing Transcript at 16. Accordingly, we believe that a stipulation is unnecessary. However, to the extent that Dexia wishes to enter into a stipulation, such a stipulation must reflect that all parties are able to use all transcripts of depositions taken in the prior L&H related litigations – not simply that Dexia may use prior depositions of plaintiffs, as suggested in your letter. If you wish to prepare such a stipulation we would be willing to review and discuss it.

Finally, with regard to the scope of the depositions of Messrs. Shaw and Fitzgibbons, we are not willing to so cavalierly dismiss Judge Saris' statements at the February 15 hearing.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Thomas Teige Carroll, Esq.
March 30, 2006
Page 2


Dexia, which was represented by counsel at that hearing, did not voice any disagreement with Judge Saris' instruction that any deposition of a witness who was previously deposed be limited to a "clean-up" deposition, nor did Dexia request to brief the issue. There is no basis for your assertion that Dexia "had no opportunity" to be heard on the issue at that hearing. While we do not contest your assertion that Dexia is entitled to "discover" facts necessary to defend itself, it can do so by reviewing the transcripts of Mr. Fitzgibbons' and Mr. Shaw's prior testimony – not by plowing over that same ground a second time. However, in light of your representation that Dexia intends to avoid repetition in these depositions, we will not seek a protective order at this time.

Sincerely,

Avi Josefson

cc:    Patrick T. Egan (pegan@bermanesq.com)
       Karen C. Dyer (kdyer@bsfllp.com)
       Susan M. Davies (sdavies@josephnyc.com)
       Patrick L. Rocco (procco@lawssb.com)