## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>  -against-<br><br>Dexia, S.A. and Dexia Bank Belgium (Formerly known as Artesia Banking Corp., S.A.)<br><br>    Defendants. | No. 04-CV-10477-PBS |
| Janet Baker and James Baker, JKBaker LLC and JMBaker LLC, et al.,<br><br>    Plaintiffs,<br><br>  -against-<br><br>Dexia, S.A. and Dexia Bank Belgium (Formerly known as Artesia Banking Corp., S.A.)<br><br>    Defendants. | No. 04-CV-10501-PBS |

### DEFENDANT DEXIA BANK BELGIUM'S OPPOSITION TO MOTION FOR A PROTECTIVE ORDER BY NON-PARTIES STEPHEN LUCZO, ELLEN CHAMBERLAIN AND DONALD WAITE

Defendant Dexia Bank Belgium ("Dexia"), through its undersigned counsel, hereby opposes the motion brought by non-parties Stephen Luczo, Ellen Chamberlain, and Donald Waite (the "Non-Parties") seeking to preclude Dexia from deposing them in the above actions.[1]

---

[1] Deposition and document subpoenas were issued for Ms. Chamberlain and Messrs. Luczo and Waite on March 28, 2006, with depositions noticed for May 11, April 18, and May 5, respectively. (Davies Decl. Ex. H, J, L.) Dexia notes that the Non-Parties are obliged to appear in response to these subpoenas unless and until the Court issues a protective order.

**PRELIMINARY STATEMENT**

This motion attempts to rob Dexia of a fundamental right accorded to parties under the discovery rules—the right to defend itself by deposing relevant witnesses.  The argument advanced by the Non-Parties boils down to the assertion that because the Non-Parties have already given testimony in prior actions, it would be too burdensome to permit Dexia to depose them in its defense, even though (1) Dexia had no opportunity to depose them in the prior actions, and (2) they were senior officers at Seagate and Dragon closely involved with the events at issue in these cases.  This position is grossly unfair to Dexia and in any case unsupported by any legal authority.

Counsel for the Non-Parties—also counsel for the Filler Plaintiffs—cites remarks by the Court concerning prior discovery in the previous L&H actions as basis for the unjustifiable demand that Dexia apprise the Non-Parties of the areas in which it will examine them, so that they can decide whether such areas are duplicative of previous testimony and thus burdensome.  Nothing in either the Court's remarks or the discovery rules entitles the Plaintiffs or the Non-Parties to this information, or obliges Dexia to provide it.  To the contrary, the Court explicitly confirmed Dexia's right to do precisely what it intends: take "cleanup" depositions on issues "specifically affecting" Dexia.

Nonetheless, Dexia provided the Non-Parties with three general deposition topics in order to assure them of its intention of avoiding repetition of previous testimony.  The Non-Parties have attempted to twist this cooperative gesture into a premature and irrelevant argument that the depositions are too burdensome to permit, on grounds that Dexia should be satisfied with affidavits on two of these areas, and  may not take testimony on the third area because documents covering the subject are to be produced.  Again, while Dexia has stated its

2

willingness to consider any affidavit drafts submitted by the Non-Parties, nothing in the

discovery rules requires it to accept either affidavits or documents in lieu of deposition

testimony.

The Non-Parties provide no evidence that Dexia will fail to abide by the Court's remarks

concerning the prior deposition testimony. Dexia has stated several times, both in writing and in

discussion with counsel for Plaintiffs, that it does not intend to repeat discovery needlessly.

These explicit assurances mandate denial of Non-Parties' motion.

## ARGUMENT

### Dexia Is Entitled to Depose the Non-Parties

A.    Both the Discovery Rules and the Court's Remarks Entitle Dexia to Depose the
Non-Parties

The Federal Rules of Civil Procedure grant Dexia the right to "obtain discovery regarding

any matter, not privileged, which is relevant to the subject matter involved in the pending

action…." Fed. R. Civ. P. 26(b)(1).[2] This right includes the use of depositions "of <u>any person</u>"

upon oral examination. Fed. R. Civ. P. 30(a)(1) (emphasis added). It scarcely bears repeating

that "the deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman*

*v. Taylor*, 329 U.S. 495, 507 (1947).

---

[2]    The Non-Parties do not and cannot dispute that their testimony is relevant to the actions brought against Dexia. The Filler plaintiffs allege that Dexia participated in the fraud which caused them to sell Dragon to L&H for its stock, which thereafter became worthless as a result of the fraud's discovery. Ellen Chamberlain was the temporary Chief Financial Officer of Dragon during the relevant time period (Chamberlain Dep. 281:12-283:22) and coordinated and instructed the outside advisers Dragon hired to assist in the L&H transaction. (Chamberlain Dep. 21:13-23:15.) Stephen Luczo was the CEO of Seagate (Luczo Dep. 10:16-11:5) and a member of Dragon's Board of Directors (Luczo Dep. 15:23-16:5) at the relevant time, and was responsible for monitoring Seagate's investment in Dragon. (Luczo Dep. 41:22-43:22.) Donald Waite was the interim CEO of Dragon during the negotiations with L&H (Waite Dep. 29:9-30:24) and attended many of the meetings with L&H. (Waite Dep. 48:3-48:22.)

Further, the Court's remarks concerning the use of prior deposition testimony explicitly recognize Dexia's right to use depositions to defend itself. The Court stated that while prior depositions should be incorporated into the present actions, "that isn't to say that [Dexia] doesn't have the right to clean it up…. [Dexia] can do cleanup depositions. You know, how it specifically affects [Dexia.]" *In re L&H Sec. Litig.*, Nos. 00-11589-PBS, 02-10302, 02-10303, and 02-10304, Tr. 16, Feb. 15, 2005.

The Non-Parties have not and cannot contradict these fundamental principles, which entitle Dexia to depose the Non-Parties within the guidelines set by the Court.

B.    The Non-Parties' Assertions of Undue Burden Are Baseless

Because they cannot seriously contest Dexia's right to depose them, the Non-Parties resort to a premature assertion of undue burden. It is premature because they have no basis whatever for supposing that Dexia will not abide by the Court's remarks concerning prior depositions in exercising its right to take its own depositions in these actions. Actually, Dexia has demonstrated on several occasions precisely the opposite intention. First, contrary to the Non-Parties' assertion (Mot. for Protective Order ¶ 2), it was Dexia—not Plaintiffs—that first proposed the stipulation concerning use of the prior depositions. (*See* Carroll Decl. Ex. A, at 2.)

Likewise, Dexia has on several occasions stated in writing and at a meet and confer that it would avoid needless repetition of discovery. (*Id.*; *see also* Davies Decl. Ex. O, at 1.) Further, Dexia gave Plaintiffs no grounds to object on grounds of needless repetition at the recent examination conducted by Dexia of Mr. Attilio Po on April 4, 2006, even though he was also deposed in the prior actions on January 22, 2004. (*See generally* Carroll Decl. Ex. B.)

With no reason to think that Dexia will unduly burden them with repetitive questioning, the Non-Parties instead seize on topics provided to them by Dexia in the interest of cooperation on the issue of avoiding needless repetition of prior testimony. These areas were (1) Plaintiffs'

4

investigation of claims against Dexia; (2) Plaintiffs' awareness of Dexia during the due diligence process; and (3) Non-Parties' ownership interests in Dragon.[3]  (Davies Decl. Ex. O, at 1.)  The Non-Parties assert that "Dexia does not need to depose any of the Non-Parties" concerning these areas.  (Mot. for Protective Order ¶ 8.)

This assertion is irrelevant to the question of burden.  Dexia's right to depose the Non-Parties by no means depends on counsel's premature and self-serving conclusions regarding those topics.  As to the first, the Non-Parties claim that they lack personal knowledge and therefore an affidavit should suffice.  It is a fundamental precept of our adversarial system that a party is entitled to explore this claim in deposition rather than accepting at face value such a blanket assertion made by affidavit.  Fed. R. Civ. P. 26(a)(5).  Moreover, courts frequently note that deposition testimony is preferable to written answers to discovery questions.  *See, e.g., In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, n.2 (2d Cir. 2003) ("District courts have also typically treated oral depositions as a means of obtaining discoverable information that is preferable to written interrogatories.") (collecting cases).

As to the second topic, the Non-Parties claim that it is "so unlikely to result in discovery of relevant information that it amounts to a fishing expedition" (Mot. for Protective Order ¶ 10) and again offer an affidavit as substitute.  The Non-Parties, formerly senior officers of Dragon and Seagate, were intimately involved in the due diligence leading to the sale of Dragon, which resulted in the alleged injury for which Plaintiffs have sued Dexia.  *See supra* n.2.  This is plainly more than sufficient basis for permitting Dexia to inquire into the subject from its perspective, especially given the fact that Dexia had no opportunity to depose the Non-Parties in the prior action, and in light of the broad right of discovery generally afforded to parties.  *Hickman*, 329

---

[3]    These are of course not the only topics on which Dexia will examine the Non-Parties, but as explained herein, Dexia need not disclose any topics at all.

U.S. at 507 ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Finally, the Non-Parties claim that Dexia may not depose them with regard to their ownership interests in Seagate and Dragon because they "have agreed to provide documents reflecting their ownership interests in Seagate…." (Mot. for Protective Order ¶ 11.) The production of documents is no substitute for the taking of depositions. *E.g., Wright v. Patrolmen's Benev. Ass'n*, 72 F.R.D. 161, 164 (S.D.N.Y. 1976) (motion for protective order denied where basis for motion was that information sought was discoverable from other sources.)

**CONCLUSION**

For the foregoing reasons, Dexia requests that the Non-Parties' motion for a protective

order be denied.

Dated: April 28, 2006

                         Respectfully submitted,

                         MINTZ LEVIN COHEN FERRIS GLOVSKY &
POPEO

                         /s/  Breton Leone-Quick
                           Peter M. Saparoff, Esq. (BBO#441740)
                           Breton Leone-Quick, Esq. (BBO#655571)

                         One Financial Center
                         Boston, MA 02111
                         Tel:  (617) 542-6000
                         Fax:  (617) 542-2241

                           James W. Weidner, Esq.
                           Joel M. Cohen, Esq.
                           Thomas Teige Carroll. Esq.
                           Jeff E. Butler, Esq.
                         CLIFFORD CHANCE US LLP
                         31 West 52nd Street
                         New York, NY 10019-6131
                         Tel:  (212) 878-8000
                         Fax:  (212) 878-8375

                         *Counsel for Dexia Bank Belgium*

**Certificate of Service**

I, Breton Leone-Quick, hereby certify that this document, and the declaration with exhibits filed herewith, all filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 28, 2006.

  /s/  Breton Leone-Quick                                Dated:  April 28, 2006