**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br> Plaintiffs,<br><br>  v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br> Defendants. | Civil Action No.: 04-10501 (PBS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEXIA BANK BELGIUM'S MOTION FOR A PROTECTVE ORDER PREVENTING THE DEPOSITIONS OF AXEL MILLER AND STEFAAN DECRAENE

Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
Tel:   (617) 542-6000
Fax:   (617) 542-2241

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:   (212) 878-8000
Fax:   (212) 878-8375

*Counsel for Dexia Bank Belgium*

Defendant Dexia Bank Belgium ("Dexia") submits this Memorandum of Law in support of its Motion for a Protective Order Preventing the Depositions of Axel Miller and Stefaan Decraene. In support of this motion, Dexia also submits the Declaration of Jeff E. Butler dated June 1, 2006 ("Butler Decl.").

## Preliminary Statement

Plaintiffs have noticed the depositions of Axel Miller and Stefaan Decraene, who are the most senior executives at Dexia S.A. and Dexia Bank Belgium, respectively.[1] These individuals were not involved in the loan transactions that form the basis for Plaintiffs' claims against Dexia, and they are unlikely to have any unique information that is relevant to any claim or defense in this litigation. To the extent these executives have relevant knowledge, Plaintiffs have already had the opportunity to depose other Dexia executives who possess similar knowledge. Given the obvious burden that these depositions would impose on Dexia—and the limited benefit to Plaintiffs of taking these depositions—Dexia respectfully seeks a protective order preventing these depositions from taking place.

## Background

This litigation relates to loan transactions entered by Dexia's predecessor, Artesia Banking Corporation, in 1997, 1998 and 1999. In response to interrogatories, Plaintiffs have identified a discrete set of loan transactions that form the basis for their claims against Dexia. (*See* Butler Decl. Ex. H, Response to Interrogatory No. 11.) Those transactions include loans to Brussels Translation Group ("BTG") in 1997 and 1998, loans to Radial and Language Investment Company ("LIC") in 1998 and a personal loan to Jo Lernout, Pol Hauspie and Nico

---

[1] Dexia Bank Belgium is a wholly-owned subsidiary of Dexia S.A., which is the holding company for the entire Dexia Group.

1

Willaert in 1999. (*Id.*) Plaintiffs allege that funds from these loans were used to inflate revenue at Lernout & Hauspie Speech Products N.V. ("L&H"), thereby misleading L&H investors. (*Id.*)

In addition to these loan-related claims, Class Plaintiffs recently filed a Third Amended Complaint asserting new claims concerning a subsidiary of Artesia called Artesia Securities. According to Plaintiffs, Artesia Securities issued misleading analyst reports concerning L&H in 1999 and 2000, and Artesia (and hence Dexia) was responsible for the content of those analyst reports. These new claims are currently subject to a motion to dismiss filed by Dexia, which is scheduled for hearing on June 23, 2006.

The parties have engaged in extensive discovery concerning the loan transactions at issue in this litigation. For example, Dexia has produced more than 144,000 pages of documents in response to Plaintiffs' document requests, including e-mail and other electronic documents from a variety of sources. In addition, Dexia has made nine employees available for depositions in Belgium, including Claude Piret, who was a member of Artesia's executive committee during the relevant time period. Two additional employees are scheduled to be deposed in June, including Hans Deweirdt, who is the current head of Dexia's internal audit department.

On May 5, 2006, Plaintiffs served a Fourth Omnibus Notice of Depositions, seeking to take the depositions of, among others, Axel Miller and Stefaan Decraene. (*See* Butler Decl. Ex. I.) Messrs. Miller and Decraene are the most senior executives of Dexia S.A. and Dexia Bank Belgium, respectively. In response to this notice, Dexia informed Plaintiffs that Mr. Miller and Mr. Decraene were not involved in any of the relevant loan transactions, and asked Plaintiffs to indicate why they are seeking testimony from these high-level executives. (*See id.* Ex. J.)

Plaintiffs responded with a letter dated May 26, 2006, describing the proposed areas of inquiry for these individuals. (*See id.* Ex. K.) For Mr. Miller, Plaintiffs identified only two

2

areas of inquiry: (1) Dexia's indictment in Belgium, and communications with Belgian banking regulators concerning the indictment, and (2) due diligence conducted by Dexia when it acquired Artesia in 2001. (*See id.*) For Mr. Decraene, Plaintiffs identified four areas of inquiry: (1) loans to Dictation Consortium, (2) direct loans to L&H, (3) negotiations concerning warrants for L&H securities, and (4) matters relating to Artesia Securities. (*See id.*)

## Argument

I.  **PLAINTIFFS DO NOT HAVE A SUFFICIENT BASIS TO TAKE THE DEPOSITIONS OF DEXIA'S MOST SENIOR EXECUTIVES.**

Under Rule 26 of the Federal Rules of Civil Procedure, the Court may limit or prevent discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2). Courts have invoked this provision to prevent depositions of high-level executives where the executives had no "unique personal knowledge" of the relevant matters and where other means of obtaining the discovery sought were available to the party seeking the deposition. *See Baine v. GM Corp.*, 141 F.R.D. 332, 334-35 (M.D. Ala. 1991); *Comm. Fed. Sav. and Loans Assoc. v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621-22 (D.D.C. 1983); *M.A. Porazzi Co. v. Mormaclark*, 16 F.R.D. 383, 383-84 (S.D.N.Y. 1951). Such a result is particularly appropriate in cases where other employees with knowledge of the same information have already been deposed. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (finding no error in vacating the deposition notice of Upjohn's president where plaintiff was "scheduled to take the deposition of those employees who Upjohn indicated had the most direct knowledge of the relevant facts").

Applying these principles to the facts of this case, a protective order preventing the depositions of Mr. Miller and Mr. Decraene is fully justified.

3

### A.  Axel Miller

Mr. Miller is the highest-ranking executive of Dexia S.A., the holding company that owns Dexia. Dexia S.A. was initially named as a defendant in this action, but Plaintiffs have each dropped their claims against this entity. Mr. Miller joined Dexia in 2001, long after the loan transactions at issue in this litigation took place. (*See* Butler Decl. Ex. D.) Before that time, he was a corporate partner at Clifford Chance in Brussels. (*Id.*)

Plaintiffs seek Mr. Miller's testimony on only two subjects, neither of which justifies the burden that would be associated with his deposition. *First*, Plaintiffs seek testimony from Mr. Miller on the Belgian criminal investigation, including communications with Belgian banking regulators—known as the "CBF"—concerning the investigation. Plaintiffs' interest in this subject arises from a letter that Mr. Miller wrote to the CBF in 2003. (*See* Butler Decl. Ex. E.) The letter indicates that Dexia would be conducting an internal investigation, as described in an attached note from Hans Deweirdt, the head of internal audit at Dexia, concerning Artesia's relationship with L&H. (*Id.*) The mere fact that Mr. Miller sent a letter to the CBF, however, does not mean that he has extensive knowledge of the investigation described in the letter. In fact, the investigation described in the letter was conducted by Hans Deweirdt, who is scheduled to have his deposition taken in mid-June. Given that Mr. Deweirdt will be deposed on this investigation, Plaintiffs have no basis for seeking a cumulative deposition from Mr. Miller on the same subject. At a bare minimum, Plaintiffs should wait to hear what Mr. Deweirdt has to say before insisting on a deposition of Mr. Miller.

*Second*, Plaintiffs seek testimony from Mr. Miller on due diligence conducted by Clifford Chance in connection with the merger between Dexia and Artesia Banking Corporation in 2001. Plaintiffs appear to be interested in Dexia's due diligence process solely for the purpose of

countering Dexia's statute of limitations defense. Plaintiffs have cited an article from the Belgian Press dated April 30, 2001, stating that the merger between Dexia and Artesia was "pending the conclusions of an external audit" and that Dexia has chosen to continue its due diligence into "the business customers of ABC [Artesia], following the discovery in ABC's books of loans to troubled Belgian company L&H." (*See* Butler Decl. Ex. G, first attachment.) Based on this piece of information, Plaintiffs hope to argue that Dexia, even after conducting due diligence of Artesia, did not discover any wrongdoing at Artesia, and therefore a reasonably diligent investor could not have discovered any wrongdoing either. Regardless of whether this argument has any merit, Plaintiffs have no reason to believe that Mr. Miller had significant involvement in the "external audit" cited in this article. Moreover, Plaintiffs have no reason to believe that this external audit included review of the loans at issue in this litigation, as opposed to loans that were still outstanding at the time of the merger.[2]

In any event, Plaintiffs have requested—and Dexia has not opposed—a Rule 30(b)(6) deposition of Dexia concerning this due diligence. There is no unique information concerning the due diligence possessed by Mr. Miller that could not be conveyed through a Rule 30(b)(6) deposition on this subject. Moreover, the fact that Mr. Miller's involvement in the due diligence took place while he was serving as outside counsel for Dexia makes the proposed deposition particularly problematic, as Mr. Miller's testimony may raise difficult issues relating to attorney client privilege. For all of these reasons, a deposition of Mr. Miller on this subject would be inappropriate.

---

[2] By April 2001, all of the loans that form the basis for Plaintiffs' claims against Dexia had been repaid. Therefore, there was no reason for Dexia to conduct due diligence concerning those loans.

### B. Stefaan Decraene

Mr. Decraene is the highest-ranking executive at Dexia Bank Belgium. In 1996 and 1997, he worked in the corporate banking department of Bacob Bank, a predecessor of Artesia, where he reported to Claude Piret. After 1997, he became the head of investment banking at Artesia and, later, served as the head of Artesia Securities. He was not directly involved in any of the loans that form the basis for Plaintiffs' claims.[3]

Plaintiffs seek testimony from Mr. Decraene on four subjects, none of which justifies his deposition. *First*, Plaintiffs seek testimony concerning loans to Dictation Consortium in 1996 and 1997. Although Mr. Decraene is copied on certain documents relating to these loans, Claude Piret is the main recipient of the documents in most cases. (*See, e.g.*, Butler Decl. Exs. A, B & C.) Mr. Piret has already been deposed in this litigation, and he was questioned extensively about Dictation Consortium. Plaintiffs have no reason to think that Mr. Decraene would have any unique knowledge of that transaction.[4] Moreover, the Dictation Consortium loans are *not* among the loans that Plaintiffs have indicated form the basis for their claims against Dexia. (*See* Butler Decl. Ex. H, Response to Interrogatory No. 11.) Therefore, based on Plaintiffs' own interrogatory responses, the Dictation Consortium transaction appears to be relevant only as background.

*Second*, Plaintiffs seek testimony from Mr. Decraene on "direct loans" to L&H. (*Id.* Ex. K.) It is not clear what loans Plaintiffs are referring to here. There are no direct loans to L&H described in the Third Amended Complaint, or in Plaintiffs' interrogatory responses

---

[3] Plaintiffs note that Mr. Decraene was identified by Dexia in its Rule 26(a) disclosures as a person with relevant knowledge. (*See* Butler Decl. Ex. K.) This is a red herring. Dexia identified Mr. Decraene as having knowledge of a private placement for Vasco Data Security managed by Artesia in 1999. Plaintiffs do not indicate in their letter that they wish to examine Mr. Decraene on this subject, and indeed have not asked any Dexia witness about it.

[4] Mr. Decraene was interviewed by the Belgian Federal Police concerning Dictation Consortium, and his answers make it clear that his involvement was minimal. (*See* Butler Decl. Ex. F.)

describing the conduct at issue in this litigation.  (*See id.* Ex. H, Response to Interrogatory 11.)  This ambiguous topic certainly does not justify taking the deposition of such a high-level executive.

*Third*, Plaintiffs seek testimony concerning "Artesia Bank's negotiations concerning (and receipt of) warrants for L&H securities."  (*Id.* Ex. K.)  Once again, it is not clear what Plaintiffs are referring to.  Given that Plaintiffs have not made any allegation in the operative complaint or in their interrogatory responses concerning the negotiation or receipt of L&H warrants, this topic does not justify a deposition of Mr. Decraene.

*Fourth*, Plaintiffs seek testimony from Mr. Decraene on "matters involving Artesia Securities, including the formation of Artesia Securities and the control exercised by Artesia Bank over the affairs of Artesia Securities relating to its research analyst statements."  (*Id.*)  This testimony is plainly sought by Plaintiffs to support the new claims relating to Artesia Securities in the Third Amended Complaint.  Because those claims are subject to a motion to dismiss by Dexia, questioning Mr. Decraene on this topic at this time would not be consistent with the automatic stay of discovery under the PSLRA.[5]  If the claims relating to Artesia Securities are sustained by the Court, then this may be an appropriate subject for a short deposition of Mr. Decraene.  Until then, this subject does not justify his deposition.

---

[5] The validity of Dexia's position that the PSLRA should stay discovery relating specifically to Artesia Securities is the subject of a separate motion pending before the Court.  Dexia will not re-argue its position here.

**Conclusion**

For all the foregoing reasons, the Court should issue a protective order quashing the deposition notices of Axel Miller and Stefaan Decraene.

Dated: June 1, 2006

                                          Respectfully submitted,

                                          MINTZ LEVIN COHN FERRIS
                                          GLOVSKY & POPEO

                                          By:  /s/  Breton Leone-Quick
                                              Peter M. Saparoff (BBO#441740)
                                              Breton Leone-Quick (BBO#65571)

                                          One Financial Center
                                          Boston, MA 02111
                                          Tel:    (617) 542-6000
                                          Fax:   (617) 542-2241

                                          James B. Weidner
                                          Jeff E. Butler
                                          CLIFFORD CHANCE US LLP
                                          31 West 52nd Street
                                          New York, NY 10019-6131
                                          Tel:    (212) 878-8000
                                          Fax:   (212) 878-8375

                                          *Counsel for Dexia Bank Belgium*

**Certificate of Service**

    I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 1, 2006.

  /s/  Breton Leone-Quick                                                      Dated:  June 1, 2006