# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>        Plaintiffs,<br>            v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>        Plaintiffs,<br>            v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>        Plaintiffs,<br>            v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>        Plaintiffs,<br>            v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10501 (PBS) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD OR REDACTED BY DEXIA UNDER IMPROPER CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION

In accordance with Fed. R. Civ. P. 37 and Local Rule 37.1, all Plaintiffs in the above-captioned actions (collectively, "Plaintiffs") submit this memorandum in support of their motion to compel the production of documents from Dexia Bank Belgium ("Dexia").

## I.    PRELIMINARY STATEMENT

This motion arises from Dexia's improper assertion of privilege over numerous clearly non-privileged documents and the wholly inadequate privilege log produced by Dexia.  Dexia's privilege log weighs in at 563 pages and lists over 5500 documents that Dexia claims are protected from disclosure by the attorney-client and/or work-product privilege.[1]  Even on its face, the log demonstrates that many of Dexia's privilege assertions are improper.  Nevertheless, Dexia has steadfastly refused to produce what are clearly non-privileged documents, leaving Plaintiffs with no choice but to now bring this motion to compel.

Dexia's *own* descriptions of the documents contained on its log demonstrate that Dexia has improperly withheld:

- at least 331 documents consisting of communications between Dexia and third parties.  To the extent any of these documents were protected, Dexia has waived any privilege or protection by voluntarily disclosing these documents to third parties, including former officers and directors at Lernout & Hauspie Speech Products NV ("L&H");

- at least 78 documents consisting of communications between or among non-attorney employees of Dexia and where Dexia posits – inexplicably – that non-lawyer employees provided *legal* advice; and

- at least 351 documents that Dexia's own descriptions demonstrate were created for business purposes and which cannot reasonably be said to consist of legal advice or legal impressions.

---

[1]  On January 23, 2006, Dexia produced two voluminous privilege logs.  One was 328 pages in length and listed documents that Dexia withheld from production.  The second was 99 pages in length and described documents that Dexia produced, but with redactions.  On May 22 or 23, 2006, Dexia produced a 136 page addendum to its 328 page privilege log.  Copies of these logs are attached to the Declaration of Steven T. Voigt ("Voigt Decl.") at Exhibits "5," "6," and "7."

In addition, for many other entries, Dexia's descriptions are so woefully deficient that Dexia has failed to sustain its burden of establishing that its assertions of privilege and work product protection are valid.  For example, at least 562 of the withheld or redacted documents contain no identification of any author.  Another 243 withheld documents fail to identify any recipient.  It is difficult to conceive how Dexia can maintain a claim that a document for which it cannot identify an author or recipient was in fact authored by an attorney, or involved the communication of legal advice to Dexia.

Dexia's privilege assertions are also insufficient because Dexia failed to identify and define numerous individuals and terms in its privilege logs.[2]  Despite Dexia's assurances that it would identify all of the individuals in Dexia's logs whom Plaintiffs did not recognize by May 31, 2006, Dexia has failed to do so.  In light of that failure, Dexia has failed to carry its burden of demonstrating that the documents authored and received by those persons are privileged.  As a result, those documents should also be produced.[3]

## II.    ARGUMENT

### A.    DEXIA BEARS THE BURDEN OF ESTABLISHING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION

The attorney-client privilege is a narrow exception that allows a party to withhold particular documents from its production to the opposing party.  For the privilege to apply, a

---

[2]  For example, Dexia used many shorthand references and codes in its privilege logs that it refuses to define.  These include references to "audit" and "audit reports" without identifying the audit at issue, and numerous references to the term "Bank Group" without ever identifying the individuals and entities that comprise this group.

[3]  The parties have met and conferred concerning this issue but were unable to resolve their disputes.  Descriptions of the parties' negotiations and copies of correspondence reflecting this process are attached to the Voigt Decl. at ¶¶12-26 and Exhibits "8" and "9."  Plaintiffs in all of the above-captioned actions rely and incorporate by reference the Declaration of Steven T. Voigt, but because of the voluminous nature of the exhibits to that Declaration, those exhibits are only being filed in *Baker v. Dexia*, 04-CV-10501.

document must be: 1) a communication by a client, 2) where legal advice is sought, 3) from a professional legal adviser in his capacity as such, 4) where the communication relates to the legal advice, 5) is made in confidence, and 6) is not otherwise waived. Fromson v. Anitec Printing Plates, Inc., 152 F.R.D. 2, 3 (D. Mass. 1993) *citing* 8 J. Wigmore Evidence §2292 (1961). The party asserting the attorney-client privilege bears the burden of demonstrating its applicability.[4]

To fall within the scope of the work product doctrine, the "material in question must: 1) be a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for its representative." Amica Mutual Ins. Co. v. W.C. Bradley Co., 217 F.R.D. 79, 83 (D. Mass. 2003)(internal citations omitted); see also Pasteris v. Robillard, 121 F.R.D. 18, 20 (D. Mass. 1988). As with the attorney-client privilege, the party asserting the work product doctrine bears the burden of demonstrating its applicability. Pasteris, 121 F.R.D. at 20.

Federal Rule of Civil Procedure 26(b)(5) requires a party who withholds a document under a claim of privilege to describe the nature of the document in a manner that will "enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991). The specific minimum elements required in a privilege log include a list of the individual documents accompanied by the date of each document, its author, the recipient, a description of its contents sufficient to describe its character as privileged, and the particular privilege asserted. Decelle, Inc. v. B & M

---

[4] See, e.g., Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1457 (1st Cir. 1992) ("person asserting the attorney-client privilege with respect to a document . . . has the burden of showing" the elements of privilege apply); United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (1st Cir. 1989) (party asserting document protected by privilege must show document "relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding") (quoting United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986)); Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 351 (D. Mass. 1998) (noting party asserting privilege must demonstrate its applicability); Borase v. M/A Com. Inc., 171 F.R.D. 10, 14 (D. Mass. 1997) (same).

<u>Realty Nominee Trust</u>, 12 Mass. L. Rep. 201, 2000 Mass. Super. Lexis 376 at *8 (Mass. Super.

Sept. 19, 2000) (relying on federal court cases); <u>Colonial Gas Co. v. Aetna Casualty & Surety

Co.</u>, 144 F.R.D. 600, 610 (D. Mass. 1992) (listing elements); <u>Moloney v. United States</u>, 204

F.R.D. 16, 20 (D. Mass. 2001) (Collings, M.J.) ("enough information must be supplied so that

court can determine whether the asserted privilege is applicable") (citation omitted). Thus, a

party who seeks protection under the attorney-client privilege or work-product doctrine must

provide sufficient specificity in its privilege log to enable the court and the parties requesting the

discovery to determine whether the documents are truly privileged.

### B. DEXIA HAS IMPROPERLY WITHHELD DOCUMENTS THAT ARE NOT SUBJECT TO ANY PRIVILEGE OR PROTECTIONS

#### 1. Dexia Waived Any Claim Of Privilege Over Documents Voluntarily Disclosed To Third Parties

Dexia's privilege log is riddled with instances where Dexia asserts the attorney-client

privilege over communications that were distributed to third parties, as demonstrated in Exhibit

"A."[5] In fact, Dexia has gone so far as to assert the privilege over communications with such

obvious third parties as individuals at L&H, including principals, officers and directors Jo

Lernout, Pol Hauspie, Nico Willaert, Gaston Bastiaens and Francis Vanderhoydonck (L&H

director). Dexia also logs communications with K. Lemmens, an attorney from Loeff Claeys

Verbeke, *L&H's* outside counsel. Additionally, Dexia further asserts the privilege over

communications with several third parties including Lernout & Hauspie Investment Company

("LHIC") and Flanders Language Valley Fund ("FLV"), related parties to L&H and customers of

Artesia, and their officers, including William Hardemann and Tom Denys. Further, Dexia logs

---

[5] For the Court's convenience, Plaintiffs have prepared a series of Exhibits that break down the challenged privilege log entries by category.

several communications to other banks, including Fortis Bank, KBC Bank, Duetsche Bank, and Dresdner Bank.

Among the third party communications in Exhibit "A" are a November 2, 2000 facsimile from Banque Artesia Nederland to L&H "providing legal advice re loan settlement" (DEXPRIV0001049); a November 2, 2000 facsimile from Artesia Nederland and Artesia Banking Corporation to L&H "providing legal advice re loan settlement" (DEXPRIV001050); a letter drafted by L&H directed to Paribas regarding "stock market listing" (DEXPRIV001825-26); and an executed agreement among Artesia, SAIL, FLV Campus, and FLV Education (DEXPRIV006003).  Dexia also listed dozens of communications to and from entities it characterized as "Bank Group."  Dexia did not define the term Bank Group in its logs and when asked about this term during the meet-and-confer, Dexia's counsel provided no explanation for it.[6]

It is well settled that the voluntary disclosure of privileged documents to third parties destroys the communication's confidentiality and all claims of privilege.  See, e.g., Cavallaro v. United States, 284 F.3d 236, 246-47 (1st Cir. 2002) ("disclosing attorney-client communications to a third party undermines the privilege"); Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984) (voluntary disclosure of privileged information to third party destroys privilege); In re Grand Jury Subpoena, 925 F. Supp. 849, 855 (D. Mass. 1995) (Saris, J.) ("a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege") (citation omitted); Colonial Gas Co. v. Aetna Casualty & Surety Co., 144 F.R.D. 600, 604 (D. Mass. 1992) ("Voluntary disclosure to an outside party

---

[6]  See Voigt Decl. at ¶17.

generally waives the privilege.")  As a result, the numerous documents that Dexia shared with outsiders are not privileged and should immediately be produced to Plaintiffs.

> ### 2.    Dexia Improperly Withheld Internal Communications Between Non-Attorney Employees

Dexia's privilege logs are laden with internal communications exclusively between Dexia employees who are not attorneys.  The work product doctrine protects against "disclosure of the mental impressions, conclusions, opinions, or legal theories of *an attorney or other representative of a party concerning the litigation*."  Fed. R. Civ. P. 26 (b)(3)(emphasis added).  Similarly, attorney-client "privilege applies only if the person to whom the communication was made *is a member of the bar of a court, or his subordinate, and in connection with this communication is acting as a lawyer*."  Pasteris, 121 F.R.D. at 21 (emphasis added).  For all of the entries in Exhibit "B," Dexia failed to explain how these non-lawyer to non-lawyer communications could possibly consist of legal advice, legal theory, or legal impressions that would fall within privilege or work product protection.

Similarly, all documents prepared by non-attorneys and addressed to non-attorneys are not privileged.  Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 511 (D. N. H. 1996).  Indeed, such documents are not privileged even if copies are routed to attorneys.  Pacamor, 918 F. Supp. at 511; see also Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 5 (N. D. Ill. 1980) (noting documents prepared by non-attorneys and addressed to non-attorneys not protected even if copies sent to attorneys).

Among the non-lawyer employees involved in the communications reflected in the documents listed in Exhibit "B" are Francoise Saverys ("Saverys"), Claude Piret ("Piret"),

Jacques Janssens ("Janssens")[7], Peter Rabaey ("Rabaey"), and Bart Ferrand ("Ferrand"). All of these individuals held senior roles at the Bank and worked directly on several of the key transactions at issue in this case. None of those individuals functioned as a lawyer at the bank.[8] As such, Dexia's attempt to turn their standard business communications into "legal advice" is baseless.

For example, Dexia withheld many documents under the pretext that Janssens provided legal advice, including: a January 24, 2001 email from Janssens to T. Cloes where Janssens was purportedly "providing and requesting legal advice re: L&H shareholders' litigation in Belgium" (DEXPRIV000726); a December 8, 2000 email from Janssens to P. Vanwing where Janssens was purportedly "providing legal advice re: L&H shareholders' litigation" (DEXPRIV000732-34); an undated email from Janssens to D. Sioen and P. Peeters where Janssens was again purportedly "providing legal advice" (DEXPRIV000746-47); and a facsimile with no author identified which was directed to Janssens and where the author "request[ed] legal advice." (DEXPRIV000267).

Dexia also improperly claimed that emails exchanged *exclusively among* Rabaey - a non-attorney who has been indicted in Belgium in connection with Dexia's role in the L&H fraud - Ferrand, and Piret were both attorney work product and privileged. Dexia described a July 26, 2001 email from Rabaey as one where he "provide[d] legal advice and transmit[ed] request

---

[7] There are several entries that refer to an "I. Janssens," which is presumably a typographical error and actually refers to Jacques Janssens. Dexia did not identify an "I. Janssens" in any of its disclosures or interrogatory responses nor did it provide any definition for this name (or any other) in its privilege logs.

[8] With the exception of Saverys, none of these individuals is an attorney. *See* Voigt Decl. at ¶¶30-36. Piret was not an attorney. *See* Piret Dep. at Vol. I p. 31-32 (Exh. "12" to Voigt Decl.); Dexia's Responses to First Interrogatories at p.6, 8 (Exh. "11" to Voigt Decl.). Moreover, while Saverys was a lawyer, he did not function as an attorney at the Bank. *See* Saverys Dep. at Vol. I p. 8 (Exh. "10" to Voigt Decl.). He was never a lawyer for Dexia or its predecessors. *Id.* at p. 16 ("Q. You are not a lawyer for Dexia or its predecessors? A. I am not a lawyer, no.").

thereof re: loan security." (DEXPRIV003725). It claimed a July 14, 2001 email from Rabaey and Ferrand to Piret was attorney work product and privileged, but it described this purportedly privileged exchange among three non-lawyers as "Email with attachment, transmitting information re loan security." (DEXPRIV003742). Further, it characterized a July 14, 2000 email from Ferrand and Rabaey to Piret as "Email providing information for the purpose of legal advice re loan settlement" and withheld this email under claims of both privilege and work product protection. (DEXPRIV004769). Again, these communications between and among non-lawyers are not protected and must be produced.

In its privilege logs, Dexia also claimed that the attorney-client privilege applied to Bernard Mommens' communications even when he no longer served as counsel to Dexia. At his deposition, Mommens testified that while he continued to work for Dexia in the year 2000, he ceased serving as Dexia's counsel as of January 1, 2000 (*See* Mommens Dep. 300 ("Q. You would have, at least at this point, have been out of the legal department in January 2001, is that correct? A. Yes, since more than one year. I was out of the legal in 1 January 2000.") (Exh. "13" to Voigt Decl.). Dexia's privilege logs include numerous Mommens' emails from the year 2000, such as a November 10, 2000 email from Mommens to D. Sioen where Dexia posited that Mommens "provid[ed] legal advice re L&H shareholders' litigation in Belgium." (DEXPRIV000238-39).

These are but a few examples from Exhibit "B," which reflects the numerous instances in which Dexia disingenuously averred that non-attorneys acted as lawyers. The Court should therefore enter an order compelling Dexia to produce the documents listed in Exhibit "B."

3.    **Many Of The Documents That Dexia Withheld Have A Non-Legal, Business Purpose, And All Of These Documents Must Be Produced**

Dexia's descriptions also demonstrate that many of the documents that it withheld reflect work by Dexia's in-house counsel where the lawyer acted in a business capacity.  Similarly, many other documents reflect business-oriented work performed by authors who Dexia has not shown to be lawyers.  Examples of these documents include, among other documents, corporate meeting minutes, wire orders, and routine drafts of transactional documents.

An in-house attorney may wear several hats, including that of a business advisor or financial consultant.  See City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 9 (D. Mass. 2000).  When a corporate attorney transacts the general business of a company or otherwise acts in a non-legal capacity, his communications are non-privileged and discoverable.  Id; Borase, 171 F.R.D. at 14; United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 359 (D. Mass. 1950).  Moreover, documents that have a business purpose "do not attain privileged status solely because in-house or outside counsel is 'copied in' on" them.  City of Springfield, 196 F.R.D. at 9 (quoting F.C. Cycles, Int'l Inc. v. Fila Sport, S.P.A., 184 F.R.D. 64, 71 (D. Md. 1998)).  Thus, a company cannot shield its business communications from future discovery by simply copying an attorney or having an attorney attend its business meetings.  Id. (quoting United States Postal Service v. Phelps Dodge Ref. Corp., 852 F.Supp. 156, 163-34 (E. D. N.Y. 1994)).

(a).    **Corporate Meeting Minutes**

Exhibits "C" and "D" reflect the documents that Dexia improperly withheld although they reflect ordinary business functions, not privileged communications.  These include numerous minutes of meetings where bankers discussed business issues such as "L&H financing," "loan security," and "L&H restructuring."  For the Court's convenience, Plaintiffs have bold-faced these and other business phrases in Exhibits "C" and "D."  While Dexia

appended the words "legal advice" or "mental impression of an attorney" onto what are

otherwise descriptions of documents with a business purpose, this does not transform a business

document into a privileged one.  As the District Court of Puerto Rico in Oil Chemical and

Atomic Workers International Union v. American Home Products succinctly stated:

> [T]here is a distinction between a conference with counsel, and a business
> conference at which counsel was present.  Documents which do not ordinarily
> qualify for privilege are:   business correspondence; inter-office reports; file
> memoranda; and minutes of business meetings.

790 F.Supp. 39, 41 (D. Puerto Rico 1992); see also United States v. Massachusetts Institute of

Technology, 957 F. Supp. 301, 305 (D. Mass. 1997), aff'd in relevant part, 129 F.3d 681 (1st

Cir. 1997) (finding that minutes of corporation's regular meetings and committee meetings

reflecting reports on pending legal issues were not subject to protection under the attorney-client

privilege or work-product doctrine because they were not confidential communications between

attorney and client for purpose of securing legal advice and were not prepared in anticipation of

litigation or for trial, but rather in the ordinary course of business).

    For example, DEXPRIV006473 is a set of meeting minutes that Dexia vaguely describes

as "Minutes of bankers dated 10/31/2000 reflecting the mental impression of an attorney re loan

security and restructuring of L&H financing."  The date of the document is well before L&H

filed for bankruptcy and any litigation was brought against Dexia.  Dexia has failed to articulate

any circumstances that would show this document as having anything other than a commonplace

business purpose.  Simply, documents reflecting "bankers," discussion of "loan security," and

the "restructuring of L&H financing" are ordinary business documents, not communications

reflecting legal advice or documents prepared in anticipation of litigation.  Merely having an

attorney attend a bankers' meeting does not transform it into a privileged session.  Moreover,

even to the extent that Dexia believes it can pinpoint a particular statement within these minutes

that somehow falls within the definition of privilege, this does not transform the entire document into a privileged document. Dexia refused to identify any such statements in its privilege logs, nor did it produce such documents in redacted form. Having failed to identify any viable privilege that would protect these documents, the minutes should be produced in their entirety.

### (b).    Drafts Of Contracts And Transactional Documents

Privilege does not apply to drafts of contracts or negotiations of transactions unless there are circumstances that evidence the work was legal in nature and that the client intended for the work to remain confidential. Winchester Capital Mgmt. Co., Inc. v. Manufacturers Hanover Trust Co., 144 F.R.D. 170, 175 (D. Mass. 1992). "Where the attorney serves merely as a scrivener, communications concerning the drafting of the instrument or the instrument itself are not privileged and must be admitted." Cranston v. Stewart, 334 P.2d 337, 340 (Kan. 1959). In analyzing the nature of a series of corporate meetings where lawyers structured a deal, the Winchester court held:

> [I]t is not at all clear that any of the other communications were made for the purpose of obtaining legal as opposed to business advice. *If what was occurring during the relevant time periods was that Winchester and Manufacturers were intending to enter into a joint business venture, communications respecting the structure of a guaranteed investment contract (GIC) business, [and] . . . the parties' positions on the acceptability of the provisions of a draft investment advisory agreement . . . would all seem related to obtaining business as opposed to legal advice.*

Winchester, 144 F.R.D. at 175 (emphasis added).

Among the many draft transactional documents withheld by Dexia is DEXPRIV003228-43, which Dexia vaguely describes as a "draft agreement reflecting the mental impression of an attorney re security agreement" authored by "Artesia Banking Corporation N.V." on November 10, 2000. This document – like the other drafts of agreements and transactional documents that Dexia withheld – is dated before this litigation commenced and relates to a straightforward

structuring of a security agreement. Moreover, given that Dexia cannot even identify the author of this document, it is difficult to fathom any legitimate basis for Dexia to withhold it from production.

DEXPRIV006003-6009 is another example of a transactional document that Dexia should have produced, but withheld in its entirety instead. It is an agreement dated December 28, 1999 among Artesia, SAIL, and FLV. Dexia describes it as "Executed agreement with marginalia reflecting the mental impressions of an attorney re loan security." Again, this is a straightforward agreement with third parties, which, in and of itself is not privileged. Moreover, the attorney comments in the margins relate to what appears to be a routine loan document executed with entities related to L&H. As a result, the marginalia is not protected from disclosure by the attorney-client privilege.

### (c).    Wire Orders.

DEXPRIV005563 is an example of a wire order that Dexia should have included in its production. Dexia describes the document as "wire order, with marginalia reflecting the mental impressions of an attorney, re loan settlement." The wire order is clearly a document with a business purpose, *i.e.*, transferring money. Again, Dexia provides no indication that the notes in the margin are anything other than business-related musings. Regardless, assuming *arguendo* that this or any other document includes notes of an attorney that properly fall within the scope of privilege, Dexia should have produced the document in redacted form instead of withholding it in its entirety.

### 4.     Dexia Improperly Withheld Witness Affidavits

Dexia has also invoked the attorney-client privilege and work-product protection to withhold what it has vaguely described as "declarations" and "affidavits."[9]

For a document to merit protection under the attorney-client privilege, the document must contain - at a minimum - a communication made between a client and his attorney for the purpose of obtaining legal advice.  See Fromson, 152 F.R.D. at 3.  The privilege does *not* protect, however, against the disclosure of *underlying facts* by those who communicated with the attorney.  Savoy, 178 F.R.D. at 349; Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36, 41 (D. Mass. 1987).  To fall under the protection of the work-product doctrine, a document must have been prepared by or for a party or the party's attorney in anticipation of some specific litigation.  When a party is involved in an act or event that could potentially lead to or does lead to litigation, however, all documents subsequently prepared with regard to that event are not necessarily immune from discovery.  In re: Atlantic Fin. Mgmt. Sec. Litig. v. Strong, 121 F.R.D. 141, 144 (D. Mass. 1988).  The essential question is what was the primary motivating purpose behind the creation of the document.  Id.  In Atlantic Financial, the court held that an unsigned affidavit prepared for a party by his attorney was not entitled to work-product protection because the party withholding the document did not provide sufficient evidence showing that the primary motivating purpose underlying its preparation was to aid in current or future litigation.  Id.

Applying these standards to Dexia's privilege logs, Dexia has failed to meet its burden to show why the documents listed on Exhibit "E" merit the protection of the attorney-client privilege or work-product doctrine.  With respect to the draft affidavits and declarations that Dexia has listed, Dexia has provided absolutely no information about their subject matter, much

---

[9]  See Exhibit "E," which reflects the entries on Dexia's privilege logs that describe documents as "statements," "declarations," and "affidavits."

less explained how the primary motivating purpose underlying their preparation was to aid in

current or future specific litigation.  See id.  Nor has Dexia demonstrated how the affidavits or

declarations constitute communications made between a client and his attorney for the purpose

of obtaining legal advice.  See Savoy, 178 F.R.D. at 349; Amarin Plastics, 116 F.R.D. at 41.

Indeed, of the 30 draft declarations, affidavits, or statements that Dexia has wrongfully withheld,

only five contain any reference to any attorney-client communications whatsoever.  For these

five documents, Dexia has not produced these documents in redacted form but has withheld the

entire document, despite the fact that, as addressed above, Dexia has not established that these

documents were prepared for current or future specific litigation.

Accordingly, Plaintiffs respectfully request that the Court enter an order compelling

Dexia to produce the documents listed in Exhibit "E."

### 5.    Dexia Improperly Withheld Deposition Transcripts And Communications With Courts And Court Officials

Dexia has asserted that the attorney-client privilege and work-product doctrine apply to

transcripts of court depositions of unnamed parties, a letter to a bailiff, and an excerpt of a

mortgage register.[10]  Because these documents are of public record or have been delivered to a

third-party, they are not subject to the protection of any privilege.

To merit protection under the attorney-client privilege, a document must contain a

confidential communication made between a client and his attorney for the purpose of obtaining

legal advice.  It is more than obvious that a transcript of a court deposition – which is a record of

questions and answers between two different parties – cannot be a communication between a

client and his attorney.  It also may be of public record, which waives any confidentiality, even

_____

[10]  *See* Exhibit "F," which reflects these entries on Dexia's privilege logs.

assuming it ever existed.  Nor can a letter to a court bailiff be a confidential communication

between a party and his attorney because the bailiff is a third party (unless the bailiff is the party,

which he obviously is not in this case).  Similarly, an excerpt of a mortgage register cannot

constitute a communication between a party and his lawyer.  Therefore, none of these documents

are attorney-client privileged.

Nor are these documents subject to protection as attorney work-product.  Neither a party

nor his lawyer creates or prepares a deposition transcript.  Such a document simply reflects the

words exchanged during a proceeding.  In addition, a letter to a bailiff, once sent, can no longer

be considered work product because such protection is waived once a document is submitted to a

third party.  See In re: Atlantic Financial, 121 F.R.D. at 145.  Finally, a mortgage registry cannot

be considered work product, as it is not a document created by a party or attorney.

Therefore, because transcripts of court depositions of unnamed parties, a letter to a bailiff

and an excerpt of a mortgage registry do not constitute privileged material, Plaintiffs respectfully

request that the Court enter an order compelling Dexia to produce the documents listed in

Exhibit "F."[11]

### C.   DEXIA'S FAILURE TO DESCRIBE ADEQUATELY MANY DOCUMENTS IN THE PRIVILEGE LOGS COMPELS THE PRODUCTION OF THOSE DOCUMENTS.

Of the more than 5,500 documents that Dexia has withheld under the guise of attorney-

client and/or work-product privilege, Dexia failed to identify an author for at least 562

---

[11]    In addition to the documents listed above, Exhibit "L" lists documents that Dexia
withheld in their entirety while claiming that only portions contained privileged information.
When a discoverable document consists of both privileged and non-privileged material, the
document should be produced with the privileged information redacted instead of entirely
withheld.  See generally Barr Marine Products Co., Inc. v. Borg-Warner Corp., 84 F.R.D. 631,
640 (E.D. Pa. 1979).  Dexia withheld numerous documents that, at very least, it should have
produced with redactions.  Dexia described these documents as agreements, correspondence, and
other documents with only "marginalia" that is privileged.

documents and failed to identify a recipient for at least 243 documents.[12]  As noted above, the law governing the assertion of the attorney-client and work-product privileges demonstrates that Dexia's inability to identify the author or recipients of these documents forecloses any suggestion that Dexia has adequately supported its privilege assertions.

The law clearly requires that a party invoking a privilege must, *at a minimum*, provide the author, recipient, and date of each document purportedly covered.  Colonial Gas, 144 F.R.D. at 610.  In the case of the attorney-client privilege, without knowing the author or recipient of the documents, Dexia cannot assert in good faith that the documents reflect communications between an attorney and his client, much less for purposes of giving legal advice.  Similarly, with respect to the work-product doctrine, a privilege log that fails to provide an author, recipient, date, or reference to the specific litigation for which the documents were purportedly prepared fails to meet the asserting party's burden to show that those documents fall within the scope of that protection.

One of the hundreds of documents for which Dexia identified neither an author nor a recipient is DEXPRIV001874, which Dexia describes as "notes reflecting the mental impressions of an attorney re: stock market listing."  For this document to be subject to the attorney-client privilege, it would have to have been authored by an attorney for the purpose of giving legal advice to his client, or authored by a client who was receiving legal advice when he wrote it. Dexia does not appear to know, however, the author or recipient of the document.  Without knowing the author or recipient of the document, Dexia cannot sustain its burden of

---

[12]  *See* Exhibits "G" and "H," which reflects the documents that Dexia has withheld on the basis of a purported attorney-client and/or work-product privilege for which it has failed to list an author; *see* Exhibit "I," which reflects the documents that Dexia has withheld on the basis of a purported attorney-client and/or work-product privilege for which it has failed to list a recipient.

demonstrating that these "notes" reflect the "mental impressions of an attorney," much less for purposes of giving legal advice.

Likewise, in DEXPRIV001945, which is described as "notes taken during a meeting or telephone conference reflecting the mental impressions of an attorney re: the exercise of warrants," no author or recipient (or date) is listed. Again, without the identity of the author and recipient, there is no way Dexia can satisfy its burden of demonstrating that this document was in fact authored by an attorney.

Similarly, there is no author, recipient, date, or specific litigation referenced in DEXPRIV006662, 006665, 006714, 006741, 006744, 006746, 006755, 006758, and 006760. Dexia describes each of these documents merely as "Undated handwritten notes reflecting the mental impressions of an attorney re: delivery of shares." Likewise, DEXPRIV000609, described as "Undated handwritten notes reflecting the mental impressions of an attorney re: restructuring of L&H financing," not only lacks an author, recipient, date, or reference to the specific litigation for which the notes were purportedly prepared, but also appears to be a non-legal, business document.

Accordingly, the hundreds of documents listed in Dexia's privilege logs for Dexia cannot identify an author or recipient should be produced because Dexia has failed to satisfy its burden of demonstrating that those documents are immunized from production.

Dexia has also employed numerous ambiguous terms in its privilege logs that it refuses to define. These terms are set forth in Exhibit "J" and several examples from the Exhibit follow.

One phrase that appears time and again on Dexia's privilege logs is "Bank Group." Without knowing the individuals or entities that were part of this bank group, Plaintiffs cannot evaluate Dexia's claims of privilege as to those documents. For example, to the extent that the

"Bank Group" includes persons or entities outside of Dexia, then any privilege would be waived. Additionally, the composition of the group by its very nature indicates that their purpose is business-related.

Likewise, Dexia uses the words "audit" and "audit report litigation" in several entries. By definition, of course, an audit is a business, not a litigation function. Dexia's refusal to specify what it means by these terms therefore lead to the conclusion that all of the documents concerning the purported audit are business-related documents that are not properly listed on Dexia's privilege log. All of the "audit" documents should therefore be produced.

### D. DEXIA'S REFUSAL TO IDENTIFY UNKNOWN PERSONS LISTED IN ITS LOG

During the meet and confer process, Plaintiffs provided Dexia with a list of dozens of persons listed on the privilege log whom Plaintiffs had not been able to identify. Because Dexia carries the burden on these issues, Plaintiffs requested that Dexia identify whether each such individual is (or was) an attorney, whether each is (or was) an employee of Dexia, and if not an employee of Dexia, then each individual's employer, to the best of Dexia's knowledge. While Dexia agreed to provide this information by May 31, it failed to do so.

As already outlined, Dexia cannot sustain its obligation to establish the privileged nature of the documents listed on its log without providing detailed information about the authors and recipients of the withheld documents. For all of the names listed in Exhibit "K," this Court should order Dexia to identify the individuals' employers and whether each individual is an attorney.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted in full.

Dated:  June 16, 2006                              Respectfully submitted,


**PARTRIDGE, ANKNER & HORSTMANN, LLP**


_____/s/ Terrence K. Ankner_____
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA  02116
(617) 859-9999

**BOIES, SCHILLER & FLEXNER, LLP**
Karen C. Dyer, Esquire
George R. Coe, Esquire
255 South Orange Avenue, Suite 905
Orlando, FL  32801-3456
(407) 425-7118

**REED SMITH LLP**
Alan L. Cotler, Esquire
Joan A. Yue, Esquire
Steven T. Voigt, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215) 851-8100

**COUNSEL TO PLAINTIFFS JANET BAKER,
JAMES BAKER, JKBAKER LLC and
JMBAKER LLC**

**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**

_____/s/ Patrick T. Egan_____
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300

**SHALOV STONE & BONNER LLP**
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

**CAULEY BOWMAN CARNEY & WILLIAMS PLLC**
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

***Counsel to Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings L.L.C.***

**GREGORY P. JOSEPH LAW OFFICES LLC**

/s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

***Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust***