**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10501 (PBS) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL DEXIA BANK BELGIUM TO RESPOND TO
PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS AND SUPPLEMENTAL
INTERROGATORIES OR IN THE ALTERNATIVE FOR LEAVE PURSUANT TO
<u>LOCAL RULE 26.1(C)</u>**

Plaintiffs in the above-captioned actions submit this memorandum of law in support of their Motion to Compel Dexia Bank Belgium To Respond To Plaintiffs' First Request For Admissions And Supplemental Interrogatories Or In The Alternative For Leave Pursuant To Local Rule 26.1(C).

## PRELIMINARY STATEMENT

On May 17, 2006, Plaintiffs in the four above-captioned complex securities fraud actions jointly served their First Request For Admissions and Supplemental Interrogatories on Dexia.[1] Plaintiffs together served a total of sixty-two (62) Requests for Admission ("Requests") and four (4) Supplemental Interrogatories.

On June 16, 2006, Dexia Bank Belgium ("Dexia") served its Response And Objections To Plaintiffs' First Request For Admissions And Supplemental Interrogatories ("Dexia's Response"), refusing to answer the vast majority of Requests for Admission.[2] In fact, Dexia only answered up to Request No. 16(d), refusing to answer the remaining Requests on the sole basis that the total number of Requests exceed the twenty-five (25) limit imposed by Local Rule 26.1(C).

There are four separate actions involved here. Although discovery has been coordinated among these actions, they have never been consolidated. Nothing in the language of Local Rule 26.1 states that the Rule's limitation on "parties with common interests" applies to parties in *separate* lawsuits. Nor has Dexia identified any case that holds as much. Thus, Dexia's objection based upon the 25 request limit of Local Rule 26.1 should be rejected.

Alternatively, even if this Court were to determine that Local Rule 26.1's limitation applies to these four separate lawsuits, as demonstrated below, good causes exists for granting

---

[1] See Declaration of Patrick L. Rocco ("Rocco Decl.") at **Exhibit A**.
[2] See Rocco Decl. at **Exhibit B**.

1

leave for relief from Local Rule 26.1(C) and compelling Dexia to answer the remaining thirty-seven (37) propounded Requests. Plaintiffs in these four separate actions have coordinated discovery efforts and served a modest number of Requests designed to streamline the issues for trial. Certain requests are designed to eliminate uncontroverted issues (*e.g.* the fact that Dexia acquired and sold Lernout & Hauspie ("L&H") securities for its own account at the same time that Artesia Securities issued buy recommendations for L&H stock [*See* Request No. 61]), while others seek to crystallize the core issues in disputes (*e.g.* whether Dexia knew, at the time it loaned the money, that L&H was prohibited from recognizing revenue on the LDC fees paid with the proceeds of the Artesia loans if L&H had a direct or indirect role in structuring the loans [*See* Request Nos. 30, 32, 41, 44, 58 and 59]). Each Request will either eliminate or distill triable issues and, as such, would benefit all parties, the Court and the future jury.

Further, the number of Requests served – 62 – is entirely reasonable, given the complexity of these actions involving allegations of a widespread securities fraud involving numerous transactions and spanning several years. Despite the complexity of the action, Plaintiffs have focused and grouped their Requests around the major loans, claims and defenses at issue in these litigations and drafted precise, particularized Requests. Under these circumstances, the Requests are not unduly burdensome, but rather aim to fulfill the underlying purpose of Rule 36: to reduce trial time. In its Response, Dexia also impermissibly counts the subparts to five Requests as distinct requests. Because those subparts are logical extensions of the initial questions, the subparts are entirely proper.

Finally, Dexia has no legitimate basis for refusing to answer the accompanying Supplemental Interrogatories because Plaintiffs are well under the limitations on the number of Interrogatories that may be served under Fed. R. Civ. P. 33.

At bottom, Dexia only seems interested in delaying this legitimate discovery, which, with only seven months until the pre-trial conference, is unacceptable. As such, this Court should order Dexia to answer the remaining 37 Requests and the 4 Supplemental Interrogatories.[3]

**ARGUMENT**

I.   **FED. R. CIV. P. 36 AND LOCAL RULE 26.1(C)**

Requests for Admission are governed by Fed. R. Civ. P. 36 and Local Rule 26.1(C). Rule 36 is designed to facilitate proof with respected to the central issues in a case and thereby conserve judicial resources by narrowing the range of issues for trial.[4]

While Fed. R. Civ. P. 36 does not limit the number of Requests for Admission, Local Rule 26.1(C) provides, in part, that "[u]nless the judicial officer orders otherwise, the number of discovery events shall be limited for each side (or group of parties with a common interest) to . . . twenty-five (25) requests for admissions . . . ." Local Rule 26.1(C).

Here, a threshold question exists as to whether Plaintiffs, collectively, are deemed a "group of parties with a common interest" under this rule. Plaintiffs have brought four distinct actions against Dexia with different claims for relief. Granted, many of the same evidentiary facts underlie these actions, however, this Court has not consolidated these separate cases, but has only ordered that discovery be coordinated among them. Dexia has identified no decision defining a

---

[3] On June 21, 2006, counsel for Plaintiffs and Dexia held a meet and confer teleconference concerning, *inter alia*, Dexia's objections pursuant to Local Rule 26.1(C) to responding to Plaintiffs' Requests For Admissions. *See* Rocco Decl. at ¶ 5. The parties were not able to resolve this dispute, necessitating this motion. The parties did not meet and confer concerning Dexia's response and objections to Requests 1 – 16(d). As such, Plaintiffs reserve their rights to challenge those responses and objections, if warranted, after further consultations with Dexia.

[4] *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (noting Rule 36 "allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters."); *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499-500 (D. Me. 1985) ("The principle use of admissions of fact is to serve the purpose of expediting the trial and to relieve the parties of the burdens and expense of proving at trial facts which are undisputed. The achievement of such purposes serves the interests of the Court, the parties, and the public in the administration of justice. For this reason, Rule 36 is to be liberally construed in its application.") (citation omitted).

"common interest" for purposes of Local Rule 26.1 to cover parties in separate lawsuits; nor have plaintiffs found such a case. Thus, Dexia's argument that Plaintiffs have exceed the limit imposed by Rule 26.1 should be rejected, as each of the four sets of plaintiffs should have the right to ask twenty-five requests of their own. Nevertheless, as shown below, assuming for the sake of argument that the twenty-five limit applies to all Plaintiffs, good cause exists for exceeding that limit here.

## II. THE PROPOSED REQUESTS FOR ADMISSION WILL STREAMLINE THE TRIAL OF THESE ACTIONS AND ARE NOT EXCESSIVE.

Plaintiffs' Requests for Admission are narrowly tailored to accomplish the mandate of the Federal Rules, as stated in the Advisory Committee's Notes to Rule 36:

> Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

Rule 36, Advisory Committee's Notes.

Here, Plaintiffs organized their Requests around four main areas: (1) general background information concerning Dexia, Dexia's knowledge of L&H, and Artesia Securities' L&H analyst reports [Requests. 1-16]; (2) Dexia's statute of limitations defense [Requests 17-22]; (3) three key loans at the heart of these actions – Dexia's loans to Radial, LIC and Messrs. Lernout, Hauspie and Willaert [Requests. 23-60]; and (4) Artesia Banking Corporation's trading in L&H securities [Requests 61-62].

Within these topics, several Requests hone in on the heart of what Plaintiffs believe are the main disputed issues in these cases. For example:

- Whether Dexia acted with scienter. *See* Request 17;

- Whether there were sufficient facts available prior to August 19, 2001 to support a good faith claim that Dexia acted with the required state of mind to support a valid

4

claim that Dexia violated Section 10(b) and that Plaintiffs could not have discovered such facts prior to August 19, 2001.  *See* Requests 18-21;

- Whether Dexia followed its own procedures in granting the Radial loan.  *See* Request 24;

- Whether Dexia knew the funds provided to Radial, LIC and the Individuals were going to be used to create LDCs, which, in turn, would use the funds to pay fees to L&H (*See* Requests 25, 35 and 57), and that L&H would (and in fact did) improperly recognize revenue on those fees.  *See* Requests 26, 33, 36, 45 and 60;

- Whether Dexia knew at the time it issued the loans in question that L&H could not recognize revenue on the LDC fees paid with the proceeds of the Artesia loans if L&H had a direct or indirect role in structuring the loans.  *See* Requests 30, 32, 41, 44, 58 and 59; and

- Whether Dexia paid any consideration or premiums in connection with the credit default swaps it entered with Messrs. Lernout, Hauspie and Willaert.  *See* Requests 52 and 53.

As to each of these topics, Plaintiffs are entitled to distill those issues that cannot be eliminated from the litigation, and to obtain admissions or denials to facilitate their necessary proof at trial on these same issues.

In addition to these possibly irresoluble issues, several other Requests focus on what are likely undisputed facts, such as:

- That the Audit Committee Report issued by L&H's Audit Committee made no mention of Dexia.  *See* Request 22;

- The dates Dexia provided loans to Radial, LIC and Messrs. Lernout, Hauspie and Willaert.  *See* Requests 23, 34, 54;

- That Dexia's in-house counsel advised that the credit default swaps for the Radial and LIC loans had to be disclosed it the loan agreements for those loans.  *See* Request 47;

- That the ultimate letters of credit (or loan agreements) sent by Artesia to Radial and LIC did not contain any reference to the credit default swaps entered into with Messrs. Lernout, Hauspie and Willaert.  *See* Requests 48-51.

5

- The fact that Dexia acquired and sold L&H securities for its own account at the same time that Artesia Securities issued buy recommendations for L&H stock. *See* Request 61;

- The fact that Dexia acquired and sold L&H securities for its own account at the same time that that it lent money to Radial, LIC and Messrs. Lernout, Hauspie and Willaert. *See* Request 62;

Answers to these discrete, straightforward and, frankly, uncontroversial questions would serve everyone's benefit by eliminating burdensome and unnecessary proof at trial. If denied or left unanswered, however, then Plaintiffs will be forced to expend valuable trial time establishing these essentially undisputed or background facts.[5]

In addition to being appropriate in scope, the Requests are also reasonable in number. The total number of Requests – 62 – is not onerous or excessive, given the scope and complexity of these actions. These four actions involve multifaceted issues of federal securities laws, as well as common law fraud claims. The time period in question stretches over several years and the complaints cover numerous transactions and public statements. Similarly, Dexia wages a vigorous defense focused predominately on statute of limitations grounds. Yet, all four sets of Plaintiffs – collectively – have propounded just 62 Requests focused on the core topics listed above. In similarly complex actions, courts have permitted parties to serve far more than a mere 62 requests.[6] Further, as detailed above, Plaintiffs propounded discrete, straightforward requests on

---

[5] The initial 16 requests follow this similar pattern of either seeking to distill core issues in dispute or eliminating background issues. *See, e.g.*, Requests 1 and 2 (seeking to establish whether Dexia is Artesia's corporate successor); Request 3 (seeking to establish that L&H's common stock traded on the NASDAQ and EASDAQ exchanges); Request 7 (seeking to establish that L&H publicly reported its financial results on a quarterly and annual basis); Requests 9-14 (seeking to establish that L&H's financial results were materially false and misleading).

[6] *See, e.g.*, *Duncan v. Santaniello*, No. 94-30224-MAP, 1996 WL 121730, at *2-3 (D. Mass. Mar. 8, 1996) (denying protective order and ordering defendants to respond to 292 requests for admissions, noting "the sheer number of admissions sought is insufficient, at this time, to convince the Court to issue a protective order."); *Shawmut, Inc. v. American Viscose Corp.*, 12 F.R.D. 488, 488-89 (D. Mass. 1952) (in considering defendants' objection to answering 106 request, the Court found that "[t]he number of requests is fairly large . . . but not unreasonable in view of the complexity of this case."); *see also Al-*

6

particularized topics, not far-flung fishing expeditions; as such there is little burden to Dexia and its counsel in responding to an additional 37 Requests.

Thus, because Plaintiffs' Requests are not unduly burdensome in light of the number, and, if answered, may reduce valuable trial time, this Court should order Dexia to provide full and complete answers to Requests 16(e) through 62.[7]

### III.    DEXIA IMPROPERLY TREATED SUBPARTS AS DISCRETE REQUESTS FOR ADMISSION

Even if Plaintiffs are held to a limit of 25 Requests for Admission in all actions, Dexia must – at minimum – answer 25 Requests. Instead, Dexia has treated subparts as distinct Requests, and only answered up to Request No. 16(d), which Dexia deems the 25th Request. Tellingly, Dexia did not voice any written objection to the use of subparts in the Requests. In any event, Dexia position is without merit.

There is no restriction in either Fed. R. Civ. P. 36 or Local Rule 26.1(C) addressing subparts to Requests for Admission. *See also Myers v. U.S. Paint Co.*, 116 F.R.D. 165, 166 (D. Mass. 1987) (Collings, J.) (noting that if judges wanted subparts separately counted, they would have said so explicitly in the Rules). In fact, Local Rule 26.1(C)'s discussion of subparts – which is limited to instructions regarding interrogatories – actually directs that subparts not be counted as

---

*Jundi v. Rockefeller*, 91 F.R.D. 590, 592 (W.D.N.Y. 1981) (denying motion for a protective order against 154 requests for admissions, holding "in view of the complexity of issues in this case and the desirability of eliminating those issues that are not seriously controvertible, I do not find the number inordinate compared to the number of requests that have been permitted in other cases." (citation omitted); *Moscowitz v. Baird*, 10 F.R.D. 233, 234 (S.D.N.Y. 1950) (court ordered defendants to answer 265 requests for admission in a complex bankruptcy case, stressing purpose of Rules was to facilitate the disposition of cases).

[7] It bears noting that in response to Requests No. 16(e) through 62, Dexia only objected on the grounds that the Requests exceeded the 25 limit under L.R. 26.1(C). While Dexia did include boilerplate general objections, they are irrelevant because "[g]eneral objections to requests for admission are prohibited." *See Fisher v. Baltimore Life Ins. Co.*, No. 5:04CV137, 2006 WL 898121, at *13 (N.D. W. Va. Mar. 31, 2006); *see also Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) ("General objections without any reference to a specific request to admit are meritless."). As such, apart from the objection prompting this motion, Dexia has waived all other objections to Requests 16(e) through 62.

separate requests if they are "logical extensions of the basic interrogator[ies] and seek only to obtain specified additional particularized information with respect to the basic interrogatory" L.R. 26.1(C)  Thus to the extent there is any limitation on subparts in Requests for Admission at all, by analogy, subparts for Requests for Admission that are "logical extensions of the basic" requests are not counted as separate Requests.

Here, Plaintiffs only propounded five Requests with subparts: Requests Nos. 7(a-b), 8 (a-c), 15 (a-d), 16 (a-f) and 55 (a-b).[8]  In each Request, the subparts are logical extensions of the core theme.  For example, Request No. 7 concerns the uncontroverted question of: (a) whether L&H's financial statements where publicly reported and; (b) whether Dexia knew that during the Class Period.  These subparts go hand-in-hand and necessarily flow from one and other.  Further, if answered, they would serve to eliminate proof (and valuable trial time) establishing what is obvious:  L&H, formerly a public company, publicly reported its financial statements and Artesia, its primary lender, was aware of those published financial statements.

Similarly, Request No. 8 seeks admission on whether L&H represented that its financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), whether Dexia knew that during the Class Period, and whether Dexia knew of the GAAP requirements during the Class Period.  Again, each of those subparts seek logically related pieces of information related to the first request concerning L&H's GAAP representations. Likewise, Request No. 15 seeks admissions that L&H materially overstated its revenue and net income and that Dexia knew as much during the Class Period.  Again, the subparts are entwined and only seek additional particularized information with respect to the basic Request.  As such, the subparts are entirely permissible and should not be counted as discrete Requests.

---

[8] Even counting subparts, the Requests would only total 74, which is still far below the number of Requests found permissible by other courts cited above.

### IV. DEXIA MUST ANSWER THE SUPPLEMENTAL INTERROGATORIES

Plaintiffs propounded four Supplemental Interrogatories to be answered if Dexia denies Requests for Admission 18 through 21. These Requests and Supplemental Interrogatories go to the crux of Dexia's statute of limitations defenses, which will clearly be Dexia's primary argument at summary judgment and trial. The Requests seek admissions that there were insufficient facts publicly available prior to August 19, 2001 to support a good faith claim that Dexia acted with the required state of mind to support a valid claim that Dexia violated Section 10(b). To the extent Dexia denies the Requests, the Supplemental Interrogatories seek the identification of the basis for those denials and the identification of facts prior to August 19, 2001 that would support a valid claim under Section 10(b).

Dexia, however, refuses to answer the Supplemental Interrogatories on the mistaken belief that Plaintiffs, collectively, are limited to only 25 interrogatories. Dexia is wrong.

Plaintiffs have served only 22 Interrogatories on Dexia. *See* Rocco Decl. ¶ 6. Adding the four Supplemental Interrogatories, Plaintiffs have propounded 26 interrogatories, far below the limits imposed by the Federal Rules. In fact, Fed. R. Civ. P. 33 provides that *any party* may serve up to 25 interrogatories, meaning that, here, the four sets of Plaintiffs were entitled to serve at the very least 100 Interrogatories on Dexia.[9] Thus, Dexia's entire premise for failing to respond to the Supplemental Interrogatories is mistaken and, to then extent Dexia denies Requests 18 – 21, it should be compelled to provide complete responses to the companion Supplemental Interrogatories

---

[9] While the Local Rule 26.1(C) purports to limit parties to only 25 interrogatories per side, this Court's decision in *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003) makes clear that the Rules' limitation is unenforceable because it conflicts with Fed. R. Civ. P. 26(b)(2). *Id*. at 289 ("It follows that the defendants do not need the court's permission for each to serve 25 interrogatories upon the plaintiff."). Here, Dexia's objection is especially curious, given that it has served an aggregate of thirty-nine (39) interrogatories on Plaintiffs in this litigation, not counting subparts.

immediately.

## CONCLUSION

For the foregoing reasons, Plaintiffs in the above-captioned actions request that this Court:

(a)    compel Dexia to answer said Requests For Admission;

(b)    compel Dexia to answer Plaintiffs' four Supplemental Interrogatories; and

(c)    order such other relief this Court deems appropriate.

Alternatively, Plaintiffs in the above-captioned actions hereby move that the Court:

(a)    grant Plaintiffs leave pursuant to Local Rule 26.1(C) to propound an additional thirty-seven (37) Requests for Admission on Dexia; and

(b)    order such other relief this Court deems appropriate.


Dated: July 14, 2006                                 Respectfully submitted,

                                                     **BERMAN DEVALERIO PEASE
                                                     TABACCO BURT & PUCILLO**

                                                          /s/ Patrick T. Egan
                                                     Glen DeValerio, BBO # 122010
                                                     Patrick T. Egan, BBO # 637477
                                                     (pegan@bermanesq.com)
                                                     Allison K. Jones, BBO # 654804
                                                     One Liberty Square
                                                     Boston, MA 02109
                                                     Telephone:  (617) 542-8300

                                                     **SHALOV STONE & BONNER LLP**
                                                     James P. Bonner
                                                     Patrick L. Rocco
                                                     485 Seventh Avenue, Suite 10000
                                                     New York, New York 10018
                                                     Telephone:  (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone:  (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc.,*
*Stonington Capital Appreciation 1994 Fund L.P.*
*and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES LLC**

     /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

11

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone: (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust*

**PARTRIDGE, ANKNER & HORSTMAN LLP**

     /s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.*