# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

GARY B. FILLER and LAWRENCE PERLMAN,
Trustees of the TRA RIGHTS TRUST,

              ORDER

             Plaintiffs,

         01 Civ. 9510 (MGC)

     -against-

HANVIT BANK, SHINHAN BANK, and
CHOHUNG BANK,

          Defendants.

--------------------------------------X

CEDARBAUM, J.

    In view of the fact that plaintiffs have declined to amend their complaint, this action is

dismissed.

    SO ORDERED.

DATED: New York, New York
       November 1, 2004

                       MIRIAM GOLDMAN CEDARBAUM
                       United States District Judge

# Exhibit B

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

JANET BAKER, JAMES BAKER, JKBAKER LLC,
and JMBAKER LLC,
                                                    ORDER
                        Plaintiffs,
                                \                02 Civ. 8251 (MGC)
            -against-


HANVIT BANK, SHINHAN BANK, and
CHOHUNG BANK,

                    Defendants.

-------------------------------------X
```

CEDARBAUM, J.

    In view of the fact that plaintiffs have declined to amend their complaint, this action is

dismissed.

       SO ORDERED.

DATED:  New York, New York
       November 1 , 2004


                                   *Miriam Goldman Cedarbaum*
                                 MIRIAM GOLDMAN CEDARBAUM
                                 United States District Judge

# Exhibit C



**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 2nd day of December, two thousand five.

PRESENT:    HONORABLE JAMES L. OAKES,
            HONORABLE CHESTER J. STRAUB,
            HONORABLE REENA RAGGI,
                            *Circuit Judges.*
------------------------------------------------------
GARY B. FILLER AND LAWRENCE
PERLMAN,
Trustees of the TRA Rights Trust,
                    Appellants,

                    v.                              No. 04-6295-cv

HANVIT BANK, SHINHAN BANK,
AND CHOHUNG BANK,
                    Appellees.
------------------------------------------------------
JANET BAKER, JAMES BAKER,
JKBAKER, LLC, AND JMBAKER, LLC,


                    Appellants,


                    v.                              No. 04-6719-cv

HANVIT BANK, SHINHAN BANK,
AND CHOHUNG BANK,
                    Appellees.
------------------------------------------------------

APPEARING FOR APPELLANTS:      GREGORY P. JOSEPH, New York, New York, *for* Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust.

GEORGE R. COE (David A. Barrett, Steven I. Froot, and Karen C. Dyer, *on the brief*), Boies, Schiller & Flexner LLP, New York, New York and Orlando, Florida, *for* Janet Baker, James Baker, JKBaker, LLC and JMBaker, LLC.

APPEARING FOR APPELLEES:

STEVEN M. BIERMAN (Alan M. Unger, Daniel A. McLaughlin, Catherine B. Winter, and Allen C. Kim, *on the brief*), Sidley Austin Brown & Wood LLP, New York, New York and Los Angeles, California *for* Hanvit Bank, now known as Woori Bank.

THOMAS B. KINZLER (Alison L. MacGregor and Megan Brillault, *on the brief*), Kelley Drye & Warren, LLP, New York, New York, *for* Shinhan Bank.

MARK C. DOSKER (Y. Anna Suh and Pierre H. Bergeron, *on the brief*), Squire, Sanders & Dempsey LLP, San Francisco, California and Cincinnati, Ohio, *for* Chohung Bank.

1    Appeal from the United States District Court for the Southern District of New York (Miriam

2    Goldman Cedarbaum, *Judge*).

3    UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND

4    DECREED that the judgment of the district court, entered on November 3, 2004, is hereby

5    AFFIRMED.

6    Plaintiffs-appellants Gary B. Filler and Lawrence Perlman, trustees of the TRA Trust (the

7    "Filler plaintiffs"), and Janet Baker, James Baker, JKBaker, LLC and JMBaker, LLC (the "Baker

8    plaintiffs") appeal the dismissal of their respective complaints pursuant to Fed. R. Civ. P. 12(b)(6) and

9    Fed. R. Civ. P. 9(b).  We review a judgment of dismissal under Fed. R. Civ. P. 12(b)(6) de novo, see

10    Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004), "taking all well pleaded factual averments in

11    the complaint as true and drawing all reasonable inferences in plaintiff's favor," Wright v. Ernst &

12    Young LLP, 152 F.3d 169, 173 (2d Cir. 1998).  We assume the parties' familiarity with the facts and

2

1   the record of prior proceedings, which we reference only as necessary to explain our decision.

2          These cases arise out of a stock-for-stock merger by which plaintiffs transferred their shares

3   in Dragon Systems, Inc. to Lernout & Hauspie Belgium ("L&H Belgium") in exchange for shares of

4   L&H Belgium. Plaintiffs allege that they were defrauded in connection with these transactions by the

5   three defendant banks, whose sham transactions with L&H Belgium's wholly owned subsidiary,

6   Lernout & Hauspie Korea ("L&H Korea"), enabled L&H Belgium falsely to inflate its earnings and

7   revenues. Specifically, plaintiffs allege that (1) each of the defendant banks conveyed material

8   misinformation about L&H Korea, in the form of false loan confirmations, to KPMG, L&H Belgium's

9   outside auditor; (2) L&H Belgium issued consolidated financial statements that incorporated the

10  financial results for L&H Korea; (3) L&H Belgium's fraudulently inflated financials were based on,

11  and justified by, the information the defendant banks provided to KPMG; and (4) plaintiffs relied on

12  L&H Belgium's financial statements, press releases, and assurances from KPMG when consummating

13  the Dragon merger.

14  1.     Federal Securities Claim

15         The Filler plaintiffs assert that the district court erred in dismissing their federal claims for

16  securities fraud under Section 10(b) of the Securities and Exchange Act of 1934, see 15 U.S.C. §

17  78j(b), and Rule 10b-5, see 17 C.F.R. § 240.10b-5.

18         To state a claim for relief under these provisions of federal law, the plaintiffs were required to

19  plead that each of the Korean banks named as defendants "(1) made misstatements or omissions of

20  material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon

21  which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury."

22  Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005). Pursuant to Fed. R. Civ. P. 9(b)

23  plaintiffs were further required to plead the circumstances constituting fraud with particularity. See

3

1    Rombach v. Chang, 355 F.3d at 170 (stating that under Rule 9(b), a plaintiff must "(1) specify the

2    statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

3    when the statements were made, and (4) explain why the statements were fraudulent" (internal

4    quotation marks omitted)).

5         In light of these requirements, we conclude, as did the district court, that the Filler plaintiffs

6    have failed adequately to plead a violation of federal securities laws by the bank defendants. First, the

7    Filler plaintiffs fail to plead facts indicating reliance on the defendant banks' allegedly false loan

8    confirmations to KPMG. Despite four opportunities to amend their complaint, the Filler plaintiffs still

9    fail to specify a confirmation made by each bank prior to June 7, 2000, the date on which the Dragon

10   merger concluded.

11        Second, plaintiffs' federal claim fails because none of the alleged false statements relied upon

12   by plaintiffs were attributed to any of the defendant banks. As the Supreme Court has made clear,

13   Section 10(b) "does not itself reach those who aid and abet . . . [but] prohibits only the making of a

14   material misstatement (or omission) or the commission of a manipulative act." Central Bank of

15   Denver v. First Interstate Bank of Denver, 511 U.S. 164, 177 (1994). Secondary actors, such as

16   accountants, lawyers, or in this case, banks, may still be held liable as primary violators after Central

17   Bank, but only "if all the requirements for primary liability are met, including a 'material misstatement

18   (or omission) on which a purchaser or seller of securities relies.'" Wright v. Ernst & Young, LLP, 152

19   F.3d at 174 (citing Central Bank, 511 U.S. at 191) (emphasis in original). Following Central Bank,

20   this court adopted a "bright line" test for determining when secondary actors may be held primarily

21   liable. See id. at 175; Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997). Under the "bright line"

22   test, "a defendant must actually make a false or misleading statement in order to be held liable under

23   Section 10(b)." Shapiro v. Cantor, 123 F.3d at 720. Moreover, "the misrepresentation must be

4

1    attributed to [the defendant] at the time of the public dissemination, that is, in advance of the

2    investment decision." Wright v. Ernst & Young, 152 F.3d at 175. "'Anything short of such conduct

3    is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger

4    liability under Section 10(b).'" Id. (quoting Shapiro v. Cantor, 123 F.3d at 720).

5        Plaintiffs assert that they exchanged their stock shares in reliance on L&H Belgium's financial

6    statements, L&H Belgium's earnings releases dated February 9, 2000, and May 9, 2000, and

7    representations made to them by KPMG. None of these statements, however, mention the defendant

8    banks, much less discuss their allegedly false loan confirmations. Accordingly, we must conclude, as

9    the district court did, that plaintiffs failed to allege an actionable misrepresentation sufficient to state

10    a claim for primary liability under Section 10(b).

11        To the extent plaintiffs point us to cases in which courts have attributed statements to

12    defendants that were not made directly by them, we conclude that the cases are factually

13    distinguishable, and thus inapposite. See, e.g., Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000)

14    (attributing misrepresentations in analyst report about company to company and company's inside

15    corporate officers); In re Global Crossing Ltd. Sec. Litig., 322 F. Supp. 2d 319, 333 (S.D.N.Y. 2003)

16    (attributing financial statements to accounting firm that played a critical role in their drafting, and

17    where firm's involvement was well known to investors).

18    2.    Common Law Fraud Claims

19        Both the Filler and Baker plaintiffs appeal the dismissal of their state common law fraud

20    claims.

21        a.    Primary Fraud

22        To prevail on a claim of common law fraud in New York, a plaintiff must show (1) a false

23    representation of material fact, (2) an intent to defraud, and (3) reliance. See Chanayil v. Gulati, 169

5

1    F.3d 168, 171 (2d Cir. 1999).  Furthermore, plaintiffs' common law fraud claims are subject to the

2    particularity requirements of Rule 9(b).  See Eternity Global Master Fund Ltd. v. Morgan Guaranty

3    Trust Co. of New York, 375 F.3d 168, 187 (2d Cir. 2004).

4        The district court dismissed plaintiffs' common law fraud claims, concluding that they suffered

5    the same defect as the Section § 10(b) claim, i.e., plaintiffs failed to identify any alleged

6    misrepresentation occurring prior to June 7, 2000, the relevant date for purposes of reliance.  See Filler

7    v. Hanvit Bank, Nos. 01-9510, 02-8251, 2003 WL 22110773, at * 2 (S.D.N.Y. Sept. 12, 2003).  We

8    agree.  Plaintiffs' complaints fail to allege with particularity any misrepresentations made by any of

9    the defendants prior to the consummation of the Dragon merger.

10        Additionally, while plaintiffs are correct that New York law, unlike federal securities law, does

11    not require public attribution of the alleged false representation, plaintiffs "cannot claim reliance on

12    alleged misrepresentations of which [they were] unaware."  Securities Inv. Protection Corp. v. BDO

13    Seidman LLP, 95 N.Y.2d 702, 710, 723 N.Y.S.2d 750, 755 (2001) (rejecting plaintiff's claim of

14    common law fraud where the omission on which plaintiff claimed reliance did not come from

15    defendant, but rather from the NASD, which had a "significant role in choosing what information it

16    wanted to receive, and in addition, what it deemed worthy of communicating").  Plaintiffs fail to allege

17    that they knew of the loan confirmations that purportedly infected the L&H Belgium representations

18    on which they relied.  Thus, like the district court, we conclude that "[t]he connection between

19    plaintiffs' acquisition of stock in L&H Belgium and the representations by defendants to auditors in

20    Korea is too attenuated to support a claim of common law fraud."  Filler v. Hanvit Bank, 2003 WL

21    22110773, at *2; see Securities Inv. Protection Corp. v. BDO Seidman LLP, 95 N.Y.2d at 711; 723

22    N.Y.S. 2d at 756 ("Where BDO's reports were filtered through the NASD's own process of evaluation,

23    [plaintiff] cannot claim justifiable reliance on the filtered statements . . . as representing either the sum

1    or substance of BDO's representations.").

2          b.    Aiding and Abetting Common Law Fraud

3          To establish a claim of aiding and abetting fraud under New York law, plaintiffs must show

4    (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) proof that the defendant

5    provided substantial assistance to advance the fraud's commission.  See Wight v. BankAmerica

6    Corp., 219 F.3d 79, 91 (2d Cir. 2000) (citing Fidelity Funding of California, Inc., v. Reinhold, 79 F.

7    Supp. 2d 110, 122 (E.D.N.Y. 1997)).  With respect to the knowledge requirement, New York courts

8    require that the alleged aider and abettor have "actual knowledge" of the underlying fraud.  See

9    Lenczycki v. Shearson Lehman Hutton, Inc., 238 A.D.2d 248, 656 N.Y.S.2d 609 (1st Dep't 1997).

10   Further, the particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no

11   less than to direct fraud claims.  Wight v. BankAmerica Corp., 219 F.3d at 91.

12          The fraud purportedly aided and abetted in this case is L&H Belgium's misrepresentations in,

13   inter alia, its audited financial statements and press releases.  See Filler v. Hanvit Bank, 339 F. Supp.

14   2d 553, 557-58 (S.D.N.Y. 2004).  As the district court correctly observed, plaintiffs have failed to

15   plead with particularity defendants' aiding and abetting of that fraud.  "The allegations of the

16   complaint, if true, demonstrate that defendants aided and abetted L&H Korea in the falsification of

17   its revenues and knowingly transmitted false information to KPMG regarding L&H Korea's

18   accounts."  Id. at 557.  It is "impossible to decipher" from the pleadings "the connection between

19   defendants' agreements with L&H Korea, and the issuance of false financial statements by L&H

20   Belgium."  Filler v. Hanvit Bank, 247 F. Supp. 2d 425, 431 (S.D.N.Y. 2003), vacated in part by No.

21   01-9510, 2003 WL 21729978 (S.D.N.Y. July 25, 2003), aff'd 378 F.3d 213 (2d Cir. 2004).  Despite

22   numerous opportunities to amend, this lack of clarity persists, so that one cannot discern from the

23   complaints either the target of the alleged fraud or even defendants' knowledge of the alleged scheme

7

1    to defraud.  See Filler v. Hanvit Bank, 339 F. Supp. 2d at 558.  Accordingly, we affirm the dismissal

2    of plaintiffs' aiding and abetting claims for lack of particularity.

3         c.    Conspiracy to Defraud

4         Finally, plaintiffs allege that defendants conspired with L&H Belgium through L&H Korea

5    to inflate L&H Belgium's revenues and earnings.  **[Filler A 868]**  It is a well-settled "principle of

6    New York law that no cause of action lies for civil conspiracy."  Aetna Cas. & Sur. Co. v. Aniero

7    Concrete Co., Inc., 404 F.3d 566, 591 (2d Cir. 2005).  However, "a conspiracy may be alleged 'for

8    the purpose of showing that a wrong was committed jointly by the conspirators and that because of

9    their common purpose and interest, the acts of one may be imputed to the others.'"  Id. (quoting

10   Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981)); Alexander & Alexander v. Fritzen,

11   68 N.Y.2d 968, 969, 510 N.Y.S.2d 546 (1986) ("Allegations of conspiracy are permitted only to

12   connect the actions of separate defendants with an otherwise actionable tort.").

13        A claim of conspiracy "cannot stand alone" and must be dismissed if the underlying

14   independent tort has not been adequately pleaded.  Romano v. Romano, 2 A.D.2d 430, 432, 767

15   N.Y.S. 2d 841, 842 (2d Dep't 2003) (holding that a conspiracy to defraud claim was properly

16   dismissed when the underlying fraud claims were dismissed); Sokol v. Addison, 293 A.D.2d 600,

17   601, 742 N.Y.S.2d 311, 312 (2d Dep't 2002) (dismissing conspiracy to defraud claim because the

18   underlying fraud claim was dismissed).  As the plaintiffs' fraud claims were not sufficiently pleaded,

19   the conspiracy to defraud claims must also fail.

20        We have considered all of plaintiffs' remaining arguments, and find them to be without merit.

21   The judgment of the district court, entered on November 3, 2004, dismissing plaintiffs' complaints,

22   is hereby AFFIRMED.

23

1

2

3

4

**FOR THE COURT:**
Roseann B. MacKechnie, Clerk

By:  *Richard Alcantara*

Richard Alcantara, Deputy Clerk

# Exhibit D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>            Plaintiffs,<br><br>      v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>           Defendants. | Civil Action No.:  04-10477-PBS |

**ANSWER**

Defendant Dexia Bank Belgium ("Dexia"), for its answer to the Complaint filed March 8, 2004, states as follows:

1.  Dexia denies the allegations in paragraph 1, except admits that the Complaint purports to be related to the Filler Action; admits that the complaint in the Filler Action identifies various defendants and refers to that document for its contents; and admits that L&H has filed for bankruptcy and is going through liquidation.

2.  Dexia denies the allegations in paragraph 2, except admits that Dexia issued a press release on June 24, 2003, and refers to that document for its contents.

3.  Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, except admits that L&H issued restated financial statements for 1998, 1999, and the first two quarters of 2000 and refers to those documents for their contents.

4.   Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

5.   Dexia denies the allegations in paragraph 5, except admits that Artesia provided loans to certain entities doing business with L&H; admits that Artesia provided loans to certain principals  of L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's business practices.

6.   Dexia denies the allegations in paragraph 6, except admits that a preliminary report was drafted at the request of the Belgian Examining Magistrate, and refers to the May 28, 2001, preliminary report referenced in this paragraph for its contents.

7.   Dexia denies the allegations in paragraph 7, except admits that Artesia sought personal guarantees from Hauspie, Lernout, and Willaert for certain loans; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

8.   Dexia denies the allegations in paragraph 8, except admits that Artesia provided loans to certain entities doing business with L&H, and admits that Artesia entered into credit default swaps in relation to two of these loans.

9.   Dexia denies the allegations in paragraph 9, except refers to the documents referenced in this paragraph for their contents.

10. Dexia denies the allegations in paragraph 10, except admits that Artesia provided loans to certain entities doing business with L&H; and admits that Artesia charged interest and fees in connections with those loans.

11. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, except admits that L&H issued restated financial statements for

1998, 1999, and the first two quarters of 2000; admits that L&H has filed for bankruptcy; admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium; and admits that Bastiaens was arrested by U.S. officials.

12. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, except admits that the Belgian Examining Magistrate seized documents from Artesia in February 2001, and refers to the June 24, 2003, press release and the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for their contents.

13. Dexia denies the allegations in paragraph 13, except admits that Artesia made loans to certain L&H principals and various entities doing business with L&H; and refers to the *De Financieël Economische Tijd* article referenced in this paragraph for its contents.

14. Dexia denies the allegations in paragraph 14, except admits that Plaintiffs purport that this action arises under § 10(b) of the 1934 Act and the rules and regulations promulgated thereunder, and state law.

15. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15, except Plaintiffs purport to base jurisdiction on § 27 of the 1934 Act and 28 U.S.C. §§ 1331, 1367, and 1332.

16. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, except Plaintiffs purport that venue is proper in this District under § 27 of the 1934 Act and 28 U.S.C. § 1391(b).

17. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19. Dexia denies the allegations in paragraph 19, except admits that Dexia S.A. is a financial institution based in Belgium; and admits Dexia S.A. has certain direct and indirect subsidiaries in the United States, including Dexia Credit Local, Financial Security Assurance, Dexia Bank Belgium, Artesia Mortgage Capital Corp., and Dexia Securities U.S.A.

20. Dexia admits the allegations in paragraph 20.

21. Dexia denies the allegations in paragraph 21, except refers to Dexia S.A.'s March 31, 2001, press release for its contents.

22. Dexia denies the allegations in paragraph 22, except admits that, prior to its acquisition by Dexia, Artesia had various subsidiaries in the United States, including Artesia Mortgage Capital Corporation, located at 1180 NW Maple St., Suite 202, Issaqua, Washington 98027; and admits that Artesia Mortgage continues to conduct business under the same name although it is now owned by Dexia.

23. Dexia admits the allegations in paragraph 23.

24. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, except admits that Artesia was part of a lending consortium that loaned $430 million to L&H for the acquisition of Dictaphone.

25. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except admits that L&H was based in Belgium and had United States offices in Burlington, Massachusetts; admits that L&H was listed on NASDAQ and EASDAQ; and admits L&H has filed for bankruptcy and is going through liquidation.

26. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except admits that L&H has filed for bankruptcy and is going through liquidation.

27. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, except admits that Lernout was a co-founder of L&H, was arrested by criminal authorities in Belgium, and was named as a defendant in the Filler Action.

28. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, except admits that Hauspie was a co-founder of L&H, was arrested by criminal authorities in Belgium, and was named as a defendant in the Filler Action.

29. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except admits that Bastiaens was arrested by U.S. officials and was named as a defendant in the Filler Action.

30. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except admits that Willaert was arrested by criminal authorities in Belgium, and was named as a defendant in the Filler Action.

31. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admits that Dammekens was named as a defendant in the Filler Action.

32. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, except admits that FLV Fund was named as a defendant in the Filler Action.

33. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33, except admits that S.A.I.L. Trust was named as a defendant in the Filler Action.

34. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, except admits that Mercator is an insurance company and admits that Mercator was named as a defendant in Filler Action.

35. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, except admits that KPMG Belgium is a Belgian public accounting firm; and that KPMG Belgium was named as a defendant in the Filler Action.

36. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, except admits that KPMG LLP is a public accounting firm based in the United States, and admits that KPMG U.S. was named as a defendant in the Filler Action.

37. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, except admits that L&H issued financial statements from 1997 to 2000 and refers to those documents for their contents.

39. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40, except refers to the Merger Agreement referenced in this paragraph for its contents.

41. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41, except refers to the Merger Agreement referenced in this paragraph for its contents.

42. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, except refers to the April 28, 1998, L&H press release referenced in this paragraph for its contents.

45. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, except refers to the July 28, 1998, L&H press release referenced in this paragraph for its contents.

46. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, except refers to the October 27, 1998, L&H press release referenced in this paragraph for its contents.

47. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, except refers to the April 7, 1999, L&H press release referenced in this paragraph for its contents.

48. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, except refers to L&H's 1998 Annual Report referenced in this paragraph for its contents.

49. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49, except refers to L&H's 1998 Annual Report to Shareholders referenced in this paragraph for its contents.

50. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, except refers to the May 18, 1999, L&H press release referenced in this paragraph for its contents.

51. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, except refers to the July 28, 1999, L&H press release referenced in this paragraph for its contents.

52. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, except refers to the October 27, 1999, L&H press release referenced in this paragraph for its contents.

53. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, except refers to the February 9, 2000, L&H press release referenced in this paragraph for its contents.

54. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56, except refers to L&H's 1998 Annual Report on Form 20-F referenced in this paragraph for its contents.

57. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

58. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, except refers to the April 7, 1999, L&H press release referenced in this paragraph for its contents.

60. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, except refers to L&H's 1998 Annual Report on Form 20-F referenced in this paragraph for its contents.

61. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except refers to L&H's 1998 Annual Report on Form 20-F and L&H's 1999 10-K referenced in this paragraph for their contents.

62. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, except refers to L&H's 1997, 1998, and 1999 financial statements referenced in this paragraph for their contents.

63. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. Dexia denies the allegations in paragraph 64, except admits that Artesia made loans to certain entities doing business with L&H; and admits that Artesia entered into credit default swaps in relation to two of these transactions.

65. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except refers to L&H's 1998 and 1999 Annual Reports on Form 20-F referenced in this paragraph for their contents.

66. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, except refers to the AICPA publication referenced in this paragraph for its contents.

67. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67, except refers to the April 9, 1999, KPMG statement referenced in this paragraph for its contents.

68. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except refers to L&H's June 30, 1999, Form 20-F and L&H's January 7, 2000, Form F-3 referenced in this paragraph for their contents.

69. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

74. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75, except refers to L&H's restated financial statements for 1997 and 1998 referenced in this paragraph for their contents.

76. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, except refers to the KPMG report referenced in this paragraph for its contents.

78. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, except refers to the Merger Agreement referenced in this paragraph for its contents.

79. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80, except admits that L&H stock was listed on NASDAQ and EASDAQ.

81. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81, except refers to the public reports, press releases and other public disclosures referenced in this paragraph for their contents..

82. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83.

84. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84, except admits that L&H has filed for bankruptcy; and admits that Lernout, Hauspie, Willaert, and Bastiaens were arrested by criminal authorities.

85. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85, except refers to L&H's June 30, 2000, Form 10-K, and June 30, 2000, Form 10-Q referenced in this paragraph for their contents.

86. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, except refers to the filings referenced in this paragraph for their contents.

87. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87, except refers to L&H's June 30, 2000, Form 10-Q, and the August 8, 2000, edition of *The Wall Street Journal* referenced in this paragraph for their contents.

88. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88, except refers to the August 15, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

89. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89.

90. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90, except refers to the report prepared for L&H's Audit Committee referenced in this paragraph for its contents.

91. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91, except refers to the September 22, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

92. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92, except refers to the September 22 and 26, 2000, editions of *The Wall Street Journal* referenced in this paragraph for their contents.

93. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, except refers to the September 26, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents and refers to *Bloomberg News* for its contents.

94. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, except refers to the October 18, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

95. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95, except refers to the November 9, 2000, L&H press release and Statement of Auditing Standards No. 53 referenced in this paragraph for their contents.

96. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96.

97. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97, except refers to the November 17, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

98. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98, except refers to the November 21, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

99. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99, except admits that L&H filed for bankruptcy and refers to the November 30, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

100. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100, except refers to the December 14, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

101. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101, except refers to the January 5, 2001, Associated Press report referenced in this paragraph for its contents.

102. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102.

103. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, except admits that Lernout, Hauspie and Willaert were arrested in Belgium on criminal charges and Bastiaens was arrested by U.S. officials.

104. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104, except refers to the report prepared for L&H's Audit Committee referenced in this paragraph for their contents.

105.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105, except refers to the report prepared for L&H's Audit Committee referenced in this paragraph for its contents.

106.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106, except refers to the report prepared for L&H's Audit Committee and news reports referenced in this paragraph for their contents.

107.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107, except refers to the September 22, 2000, November 6, 2000, and December 14, 2000, editions of *The Wall Street Journal* referenced in this paragraph for their contents.

108.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109.

110.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110.

111.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111.

112.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112, except refers to the Code of Federal Regulations provision referenced in this paragraph for its contents.

113.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, except refers to SFAS No. 68 referenced in this paragraph for its contents.

114.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114, except refers to SFAS No. 68 and SOP 97-2 referenced in this paragraph for their contents.

115.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115, except refers to SOP 97-2 referenced in this paragraph for its contents.

116.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116, except refers to the document referenced in this paragraph for its contents.

117.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, except refers to SFAS No. 57 referenced in this paragraph for its contents.

118.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, except refers to L&H's 1997, 1998, and 1999 financial statements; SFAS No. 57; the report prepared for L&H's Audit Committee; and L&H's 1998 Annual Report on Form 20-F referenced in this paragraph for their contents.

119.    Dexia denies the allegations in paragraph 119, except refers to its June 24, 2003, press release and the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for their contents.

120.    Dexia denies the allegations in paragraph 120, except admits that the Belgian Examining Magistrate seized documents from Artesia in February, 2001; admits that it made loans to certain entities doing business with and certain individuals associated with L&H; and refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

121.    Dexia denies the allegations in paragraph 121, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

122.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122.

123.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123, except admits that Artesia organized and managed a private placement of Vasco stock which raised $11.5 million; admits that Artesia wired $11.5 million to Vasco's account in the US; admits that LHIC invested $5 million in Vasco through this private placement; and admits that Mercator invested approximately $1 million in Vasco through this private placement.

124.    Dexia denies the allegations in paragraph 124, except admits that Artesia made a loan to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG; and refers to the December 7, 2000, edition of *The Wall Street Journal* for its contents.

125.    Dexia denies the allegations in paragraph 125, except refers to the edition of *The Wall Street Journal* referenced in this paragraph for its contents.

126.    Dexia denies the allegations in paragraph 126, except admits that Artesia loaned approximately $6 million to Radial on September 29, 1998; admits that Radial transferred the

funds to the Slavic Development Company N.V., the Farsi Development Company N.V.,  and

the Bahassa Development Company N.V.; and states that it lacks knowledge or information

sufficient to form a belief as to the truth of the allegations concerning use of the funds by the

LDCs or L&H's accounting practices.

127.    Dexia denies the allegations in paragraph 127, except refers to the internal Artesia

documents referenced in this paragraph for their contents.

128.    Dexia denies the allegations in paragraph 128, except refers to the September 21,

1999, e-mail referenced in this paragraph for its contents.

129.    Dexia denies the allegations in paragraph 129, except refers to the preliminary

report referenced in this paragraph for its contents.

130.    Dexia denies the allegations in paragraph 130, except refers to the September 21,

1999, e-mail referenced in this paragraph for its contents.

131.    Dexia denies the allegations in paragraph 131, except refers to internal Artesia

memoranda referenced in this paragraph for their contents.

132.    Dexia denies the allegations in paragraph 132, except refers to the June 15, 1999,

e-mail, and the preliminary report referenced in this paragraph for their contents.

133.    Dexia denies the allegations in paragraph 133, except refers to the September 21,

1999, e-mail and the preliminary report referenced in this paragraph for their contents.

134.    Dexia denies the allegations in paragraph 134, except refers to the June 25, 2003,

edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

135.    Dexia denies the allegations in paragraph 135, except admits that on December

22, 1998, Artesia made a loan to LIC for approximately $6 million; admits that LIC transferred

the funds to development companies for the Greek, Hungarian, Polish, and Czech languages;

admits that these development companies transferred the funds to L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

136.     Dexia denies the allegations in paragraph 136, except refers to the preliminary report referenced in this paragraph for its contents.

137.     Dexia denies the allegations in paragraph 137, except admits Artesia entered into credit default swaps relating to its loan to LIC and refers to the internal memorandum referenced in this paragraph for its contents.

138.     Dexia denies the allegations in paragraph 138, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

139.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139, except refers to L&H's financial statements referenced in this paragraph for their contents.

140.     Dexia denies the allegations in paragraph 140, except refers to the March 1999 fax referenced in this paragraph for its contents.

141.     Dexia denies the allegations in paragraph 141, except refers to the June 21, 1999, e-mail and the preliminary report referenced in this paragraph for their contents.

142.     Dexia denies the allegations in paragraph 142 except admits that Artesia granted a $20 million personal line of credit to Lernout, Hauspie and Willaert; admits that 650,000 shares of L&H were to be pledged as collateral; and refers to the preliminary report referenced in this paragraph for its contents.

143.     Dexia denies the allegations in paragraph 143, except admits that the loans Artesia made to Radial and LIC were due on June 30, 1999; admits that the personal loans

Artesia made to Lernout, Hauspie, and Willaert were due in October 1999; admits that Artesia extended the due date of these loans to December 15, 1999; and refers to the September 7, 1999, e-mail referenced in this paragraph for its contents.

144.    Dexia denies the allegations in paragraph 144, except refers to the December 27, 1999, e-mail referenced in this paragraph for its contents.

145.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 145, except admits that Artesia's loans to LIC, Lernout, Hauspie and Willaert were repaid from a Singapore bank account of Velstra

146.    Dexia denies the allegations in paragraph 146, except refers to the preliminary report referenced in this paragraph for its contents.

147.    Dexia denies the allegations in paragraph 147, except refers to the preliminary report referenced in this paragraph for its contents.

148.    Dexia denies the allegations in paragraph 148, except refers to the report prepared for L&H's Audit Committee and *The Wall Street Journal* articles referenced in this paragraph for their contents.

149.    Dexia denies the allegations in paragraph 149, except refers to the June 24, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

150.    Dexia denies the allegations in paragraph 150, except incorporates the responses set forth above.

151.    Dexia denies the allegations in paragraph 151, except admits that Plaintiff purports to bring this action for violations § 10(b) of the 1934 Act, and Rule 10b-5.

152.    Dexia denies the allegations in paragraph 152.

153.    Dexia denies the allegations in paragraph 153.

154.     Dexia denies the allegations in paragraph 154.

155.     Dexia denies the allegations in paragraph 155.

156.     Dexia denies the allegations in paragraph 156.

157.     Dexia denies the allegations in paragraph 157.

158.     Dexia denies the allegations in paragraph 158.

159.     Dexia denies the allegations in paragraph 159, except incorporates the responses set forth above.

160.     Dexia denies the allegations in paragraph 160.

161.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161.

162.     Dexia denies the allegations in paragraph 162.

163.     Dexia denies the allegations in paragraph 163, except admits that on September 29, 1998, Artesia loaned $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie and Willaert in relation to the Radial loan; admits that on December 22, 1998, Artesia loaned $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices.

164.     Dexia denies the allegations in paragraph 164.

165.     Dexia denies the allegations in paragraph 165.

166.    Dexia denies the allegations in paragraph 166, except incorporates the responses set forth above.

167.    Dexia denies the allegations in paragraph 167.

168.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 168.

169.    Dexia denies the allegations in paragraph 169, except admits that on September 29, 1998, Artesia loaned $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that on December 22, 1998, Artesia loaned $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices.

170.    Dexia denies the allegations in paragraph 170.

171.    Dexia denies the allegations in paragraph 171.

## ADDITIONAL DEFENSES

1.  Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

2.  Plaintiffs lack standing to maintain some or all of their claims.

3.  Plaintiffs' claims are barred in whole or in part for lack of personal jurisdiction over Dexia.

4.   Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

5.   Plaintiffs' claims are barred in whole or in part because the decline in the market price of the L&H securities purchased by Plaintiffs resulted in whole or in part from factors other than the alleged conduct of Dexia.

6.   Plaintiffs' claims are barred in whole or in part because the alleged damages were not proximately caused by Dexia.

7.   Plaintiffs' claims are barred in whole or in part because the liability of all defendants and other responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

8.   Any recovery for damages allegedly incurred by Plaintiffs is subject to offset in the amount of any tax benefits or other benefits actually received through their investments.

9.   Plaintiffs' claims are barred in whole or in part because Plaintiffs were expressly advised about the material facts and risks concerning their investments through meaningful cautionary statements contained in public filings of L&H.


Dated:  March 24, 2005

                                    Respectfully submitted,

                                    MINTZ LEVIN COHN FERRIS GLOVSKY &
                                    POPEO

                                    By:    /s/  Breton Leone-Quick
                                          Peter M. Saparoff (BBO#441740)
                                          Breton Leone-Quick (BBO#655571)

                                    One Financial Center
                                    Boston, MA 02111
                                    Tel:    (617) 542-6000
                                    Fax:    (617) 542-2241

CLIFFORD CHANCE US LLP
    James B. Weidner
31 West 52nd Street
New York, NY 10019-6131
Tel:    (212) 878-8000
Fax:    (212) 878-8375

*Counsel for Dexia Bank Belgium, S.A.*

LIT 1511969v1

# Exhibit E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No.: 04-10501 (PBS) |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.) | ) ) ) ) | |
| Defendants. | ) ) ) | |

**ANSWER**

Defendant Dexia Bank Belgium ("Dexia"), for its answer to the Complaint dated March 11, 2004, states as follows:

1.      Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, except admits that the Complaint purports to be an action to recover damages, and refers to the Merger Agreement referenced in this paragraph for its contents.

2.      Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, except refers to the Merger Agreement referenced in this paragraph for its contents.

3.      Dexia denies the allegations in paragraph 3, except admits that Artesia provided loans to certain entities doing business with L&H; admits that Artesia provided loans to

certain principals of L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

      4.     Dexia denies the allegations in paragraph 4, except admits that Artesia provided loans to certain entities doing business with L&H; admits it entered into credit default swaps in relation to two of these loans; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's business practices.

      5.     Dexia denies the allegations in paragraph 5.

      6.     Dexia denies the allegations in paragraph 6, except admits that Artesia provided loans to certain entities doing business with L&H; admits that Artesia earned interests and fees from loans it made; admits that a preliminary report was drafted at the request of the Belgian Examining Magistrate; and refers to the May 28, 2001, preliminary report referenced in this paragraph for its contents.

      7.     Dexia denies the allegations in paragraph 7, except admits that Artesia sought personal guarantees from Hauspie, Lernout and Willaert for certain loans, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

      8.     Dexia denies the allegations in paragraph 8, except admits that Artesia provided loans to certain entities doing business with L&H, and admits that Artesia entered into default swaps in relation to two of these loans.

      9.     Dexia denies the allegations in paragraph 9, except refers to the document referenced in this paragraph for its contents.

10.    Dexia denies the allegations in paragraph 10, except admits that Artesia provided loans to certain entities doing business with L&H and certain individuals associated with L&H, and admits that Artesia charged interest and fees in connection with those loans.

11.    Dexia denies the allegations in paragraph 11, except admits that Artesia provided loans to certain entities doing business with L&H, and admits that some of those loans were repaid.

12.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, except admits that L&H has issued restated financial statements for 1998, 1999, and the first two quarters of 2000, and refers to the report prepared for L&H's Audit Committee referenced in this paragraph for its contents.

14.    Dexia denies the allegations in paragraph 14, except admits that L&H has filed for bankruptcy; admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium; admits that Bastiaens was arrested by U.S. officials; and admits that Dexia has been placed under criminal investigation.

15.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.    Dexia denies the allegations in paragraph 17, except refers to the June 24, 2003, article in the Belgian press referenced in this paragraph for its contents.

18.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, except admits that Plaintiffs purport to base jurisdiction on 28 U.S.C. §§ 1331 and § 27 of the Exchange Act.

19.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.    Dexia admits the allegations in paragraph 22.

23.    Dexia denies the allegations in paragraph 23, except admits that Dexia S.A. has certain direct and indirect subsidiaries in the United States, including Dexia Credit Local, Financial Security Assurance, Artesia Mortgage Capital Corp., and Dexia Securities U.S.A.

24.    Dexia admits the allegations in paragraph 24.

25.    Dexia denies the allegations in paragraph 25, except admits that Artesia was part of a lending consortium that loaned $430 million as part of L&H's acquisition of Dictaphone, and admits that Artesia loaned money to Vasco Data Security International, located in Illinois.

26.    Dexia denies the allegations in paragraph 26.

27.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, except admits that Plaintiffs purport that venue is proper in this District under § 27 of the 1934 Act and 28 U.S.C. § 1391(b).

28.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.    Dexia denies the allegations in paragraph 30, except refers to the March 31, 2001, press release of Dexia S.A. for its contents.

31.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admits that L&H is a Belgian corporation; admits that L&H's stock was listed on NASDAQ and EASDAQ; and admits that L&H has filed for bankruptcy and is going through liquidation.

32.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, except admits that Lernout was a co-founder of L&H and admits Lernout was arrested by criminal authorities in Belgium.

35.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, except admits that Hauspie was a co-founder of L&H and admits Hauspie was arrested by criminal authorities in Belgium.

36.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, except admits that Bastiaens was arrested by U.S. officials.

37.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, except admits that Willaert was arrested by criminal authorities in Belgium.

38.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, except admits that Mercator is an insurance company.

45.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, except admits that KPMG Belgium is a Belgian public accounting firm.

46.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, except admits that KPMG LLP is a public accounting firm based in the United States.

47.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, except admits that L&H was listed on NASDAQ.

52.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, except refers to L&H's 1997 Form 20-F referenced in this paragraph for its contents.

53.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, except admits that L&H was known as an international success story.

54.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     Dexia denies the allegations in paragraph 56.

57.    Dexia denies the allegations in paragraph 57, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

58.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.    Dexia denies the allegations in paragraph 61, except admits that Artesia made a loan to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG; and refers to the December 7, 2000, edition of *The Wall Street Journal* for its contents.

62.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except admits that Artesia organized and managed a private placement of Vasco stock which raised $11.5 million; admits that Artesia wired $11.5 million to Vasco's account in the US; admits that LHIC invested $5 million in Vasco through

this private placement; and admits that Mercator invested approximately $1 million in Vasco through this private placement.

66.     Dexia denies the allegations in paragraph 66, except refers to the edition of *The Wall Street Journal* referenced in this paragraph for its contents.

67.     Dexia denies the allegations in paragraph 67, except admits that Artesia loaned approximately $6 million to Radial on September 29, 1998; admits that Radial transferred the funds to the Slavic Development Company N.V., the Farsi Development Company N.V., and the Bahassa Development Company N.V.; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning use of the funds by the LDCs or L&H's accounting practices.

68.     Dexia denies the allegations in paragraph 68, except refers to the internal Artesia documents referenced in this paragraph for their contents.

69.     Dexia denies the allegations in paragraph 69, except refers to the September 21, 1999, e-mail referenced in this paragraph for its contents.

70.     Dexia denies the allegations in paragraph 70, except refers to the preliminary report referenced in this paragraph for its contents.

71.     Dexia denies the allegations in paragraph 71, except refers to the September 21, 1999, e-mail referenced in this paragraph for its contents.

72.     Dexia denies the allegations in paragraph 72, except refers to the internal Artesia memoranda referenced in this paragraph for their contents.

73.     Dexia denies the allegations in paragraph 73, except it refers to the June 15, 1999, e-mail and the preliminary report referenced in this paragraph for its contents.

74.    Dexia denies the allegations in paragraph 74, except refers to the September 21, 1999, e-mail referenced in this paragraph for its contents.

75.    Dexia denies the allegations in paragraph 75, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

76.    Dexia denies the allegations in paragraph 76, except admits that on December 22, 1998, Artesia made a loan to LIC for approximately $6 million; admits that LIC transferred the funds to development companies for the Greek, Hungarian, Polish, and Czech languages; admits that these development companies transferred the funds to L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

77.    Dexia denies the allegations in paragraph 77, except admits Artesia entered into credit default swaps in relation to its loan to LIC; and refers to the internal memorandum referenced in this paragraph for its content.

78.    Dexia denies the allegations in paragraph 78, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

79.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80.    Dexia denies the allegations in paragraph 80, except refers to the March 1999 fax referenced in this paragraph for its contents.

81.    Dexia denies the allegations in paragraph 81, except refers to the June 21, 1999, e-mail referenced in this paragraph for its contents.

82.    Dexia denies the allegations in paragraph 82, except admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; admits that

650,000 shares of L&H were to be pledged as collateral for the loan; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices; and refers to L&H's June 30, 1999, Form 10-Q and December 31, 1999, Form 10-K referenced in this paragraph for their contents.

83.    Dexia denies the allegations in paragraph 83, except admits that Artesia's loans to Radial and LIC were due June 30, 1999; admits that Artesia's loans to Lernout, Hauspie and Willaert were due in October 1999; admits that Artesia extended the loans to December 15, 1999; and refers to the September 7, 1999, memorandum referenced in this paragraph for its contents.

84.    Dexia denies the allegations in paragraph 71, except refers to the December 27, 1999, e-mail referenced in this paragraph for its contents.

85.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85, except admits that Artesia's loans to LIC, Lernout, Hauspie and Willaert were repaid from a Singapore bank account of Velstra.

86.    Dexia denies the allegations in paragraph 86, except refers to the internal Artesia documents referenced in this paragraph for their contents.

87.    Dexia denies the allegations in paragraph 87, except refers to the report prepared for L&H's Audit Committee referenced in this paragraph for its contents.

88.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88.

89.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89.

90.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90.

91.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

92.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92.

93.     Dexia admits that L&H issued a press release on April 28, 1998, and refers to that document for its contents.

94.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, except refers to the April 28, 1998, L&H press release and the May 1, 1998, Form 6-K referenced in this paragraph for their contents.

95.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95, except refers to the April 28, 1998, L&H press release and the May 1, 1998, Form 6-K referenced in this paragraph for their contents.

96.     Dexia admits that L&H issued a press release on July 28, 1998, and refers to that document for its contents.

97.     Dexia admits that L&H filed a Form 6-K with the SEC on or about August 7, 1998, and refers to that document for its contents.

98.     Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98, except refers to the July 28, 1998, press release and the August 7, 1998, Form 6-K for their contents.

99.     Dexia admits that L&H issued a press release on October 27, 1998, and refers to that document for its contents.

100.    Dexia admits that L&H filed a Form 6-K with the SEC on or about October 29, 1998, and refers to that document for its contents.

101.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101, except refers to the October 27, 1998, press release and the October 29, 1998, Form 6-K for their contents.

102.    Dexia admits that L&H issued a press release on April 7, 1999, and refers to that document for its contents.

103.    Dexia admits that L&H filed a Form 6-K with the SEC on or about April 19, 1999, and refers to that document for its contents.

104.    Dexia admits that L&H filed a Form 20-F with the SEC on or about June 30, 1999, and refers to that document for its contents.

105.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105, except refers to the April 7, 1999, press release; the April 19, 1999, Form 6-K; and the June 30, 1999, Form 20-F for their contents.

106.    Dexia admits that L&H issued a press release on May 18, 1999, and refers to that document for its contents.

107.    Dexia admits that L&H filed a Form 6-K with the SEC on or about June 1, 1999, and refers to that document for its contents.

108.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108, except refers to the May 18, 1999, press release and the June 1, 1999, Form 6-K for their contents.

109.    Dexia admits that L&H issued a press release on July 28, 1999, and refers to that document for its contents.

110.    Dexia admits that L&H filed a Form 6-K with the SEC on or about August 6, 1999, and refers to that document for its contents.

111.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111, except refers to the July 28, 1999, press release and the August 6, 1999, Form 6-K for their contents.

112.    Dexia admits that L&H issued a press release on October 27, 1999, and refers to that document for its contents.

113.    Dexia admits that L&H filed a Form 6-K with the SEC on or about November 4, 1999, and refers to that document for its contents.

114.    Dexia admits that L&H filed a Form 10-Q with the SEC on or about June 30, 2000, and refers to that document for its contents.

115.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115, except refers to the October 27, 1999, press release, the November 4, 1999, Form 6-K, and the June 30, 2000, Form 10-Q for their contents.

116.    Dexia admits that L&H issued a press release on February 9, 2000, and refers to that document for its contents.

117.    Dexia admits that L&H filed a Form 10-K with the SEC on or about June 30, 2000, and refers to that document for its contents.

118.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, except refers to the February 9, 2000, press release and the June 30, 2000, Form 10-K for their contents.

119.    Dexia admits that L&H issued a press release on May 9, 2000, and refers to that document for its contents.

120.    Dexia admits that L&H filed a Form 6-K with the SEC on or about May 12, 2000, and refers to that document for its contents.

121.    Dexia admits that L&H filed a Form 10-Q with the SEC on or about June 30, 2000, and refers to that document for its contents.

122.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122, except refers to the May 9, 2000, press release, the May 12, 2000, Form 6-K, and the June 30, 2000, Form 10-Q for their contents.

123.    Dexia admits that L&H issued a press release on August 8, 2000, and refers to that document for its contents.

124.    Dexia admits that L&H filed a Form 10-Q with the SEC on or about August 14, 2000, and refers to that document for its contents.

125.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125, except refers to the August 8, 2000, press release and the August 14, 2000, Form 10-Q for their contents.

126.    Dexia denies the allegations in paragraph 126, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

127.    Dexia denies the allegations in paragraph 127, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices, and refers to the Merger Agreement referenced in this paragraph for its contents.

128.    Dexia denies the allegations in paragraph 128, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

129.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129.

130.    Dexia denies the allegations in paragraph 130, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

131.    Dexia denies the allegations in paragraph 131.

132.    Dexia denies the allegations in paragraph 132, except incorporates the responses set forth above.

133.    Dexia denies the allegations in paragraph 133.

134.    Dexia denies the allegations in paragraph 134, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

135.    Dexia denies the allegations in paragraph 135.

136.    Dexia denies the allegations in paragraph 136, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

137.    Dexia denies the allegations in paragraph 137.

138.    Dexia denies the allegations in paragraph 138.

139.    Dexia denies the allegations in paragraph 139.

140.    Dexia denies the allegations in paragraph 140.

141.    Dexia denies the allegations in paragraph 141.

142.    Dexia denies the allegations in paragraph 142.

143.    Dexia denies the allegations in paragraph 143, except incorporates the responses set forth above.

144.    Dexia denies the allegations in paragraph 144, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

145.    Dexia denies the allegations in paragraph 145, except admits Artesia knew that L&H traded on NASDAQ and EASDAQ.

146.    Dexia denies the allegations in paragraph 146.

147.    Dexia denies the allegations in paragraph 147.

148.    Dexia denies the allegations in paragraph 148, except incorporates the responses set forth above.

149.    Dexia denies the allegations in paragraph 149.

150.    Dexia denies the allegations in paragraph 150.

151.    Dexia denies the allegations in paragraph 151.

152.    Dexia denies the allegations in paragraph 152.

153.    Dexia denies the allegations in paragraph 153.

154.    Dexia denies the allegations in paragraph 154, except incorporates the responses set forth above.

155.    Dexia denies the allegations in paragraph 155.

156.    Dexia denies the allegations in paragraph 156.

157.    Dexia denies the allegations in paragraph 157.

158.    Dexia denies the allegations in paragraph 158.

159.    Dexia denies the allegations in paragraph 159.

160.    Dexia denies the allegations in paragraph 160.

161.    Dexia denies the allegations in paragraph 161.

**ADDITIONAL DEFENSES**

1.    Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

2.    Plaintiffs lack standing to maintain some or all of their claims.

3.    Plaintiffs' claims are barred in whole or in part for lack of personal jurisdiction over Dexia.

4.    Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

5.    Plaintiffs' claims are barred in whole or in part because the decline in the market price of the L&H securities purchased by Plaintiffs resulted in whole or in part from factors other than the alleged conduct of Dexia.

6.    Plaintiffs' claims are barred in whole or in part because the alleged damages were not proximately caused by Dexia.

7.    Plaintiffs' claims are barred in whole or in part because the liability of all defendants and other responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

8.    Any recovery for damages allegedly incurred by Plaintiffs is subject to offset in the amount of any tax benefits or other benefits actually received through their investments.

- 18 -

9.    Plaintiffs' claims are barred in whole or in part because Plaintiffs were expressly advised about the material facts and risks concerning their investments through meaningful cautionary statements contained in public filings of L&H.

Dated:  March 24, 2005

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

By:  __ /s/ Breton Leone-Quick _____
        Peter M. Saparoff (BBO#441740)
        Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel:    (617) 542-6000
Fax:    (617) 542-2241

CLIFFORD CHANCE US LLP
    James B. Weidner
31 West 52nd Street
New York, NY 10019-6131
Tel:    (212) 878-8000
Fax:    (212) 878-8375

*Counsel for Dexia Bank Belgium, S.A.*

- 19 -