# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly situated,

       Plaintiffs,

       v.

DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

       Defendants.

Civil Action No.: 03-11566 (PBS)

---

STONINGTON PARTNERS, INC., a Delaware
Corporation, STONINGTON CAPITAL
APPRECIATION 1994 FUND L.P., a Delaware
Partnership and STONINGTON HOLDINGS,
L.L.C., a Delaware limited liability company,

       Plaintiffs,

       v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

       Defendants.

Civil Action No.: 04-10411 (PBS)

---

GARY B. FILLER and LAWRENCE
PERLMAN, Trustees of the TRA Rights Trust,

       Plaintiffs,

       v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

       Defendants.

Civil Action No.: 04-10477 (PBS)

JANET BAKER and JAMES BAKER,
JKBAKER LLC and JMBAKER LLC,

    Plaintiffs,

    v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

    Defendants.

Civil Action No.:  04-10501 (PBS)

## DECLARATION OF JEFF E. BUTLER

I, Jeff E. Butler, declare and state as follows:

1. I am an attorney associated with Clifford Chance US LLP and admitted *pro hac vice* to practice before this Court. I am fully familiar with the facts set forth herein. I submit this declaration in support of Dexia Bank Belgium's Partial Objection to Magistrate Judge's Order on Plaintiffs' Motion for Protective Order.

2. Attached hereto as Exhibit A is a true and correct copy of Magistrate Judge Collings' order dated December 22, 2005.

3. Attached hereto as Exhibit B is a true and correct copy of the deposition notice for Berman DeValerio Pease Tabacco Burt & Pucillo dated May 2, 2006.

4. Attached hereto as Exhibit C is a true and correct copy of Magistrate Judge Collings' electronic order dated November 6, 2006.

5. Attached hereto as Exhibit D is a true and correct copy of Baker Plaintiffs' Responses and Objections to Dexia Bank Belgium's First Set of Interrogatories dated September 20, 2005.

NYA 812025.1

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
       November 20, 2006

 

_____
           Jeff E. Butler

NYA 812025.1

# Exhibit A

# United States District Court
# District of Massachusetts

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly
situated,

        Plaintiffs,

    v.                          CIVIL ACTION NO. 03-11566-PBS

DEXIA, S.A. and DEXIA BANK
BELGIUM (formerly known as
ARTESIA BANKING CORP., SA),
        Defendants.

## ORDER ON DEXIA
## BANK BELGIUM'S MOTION
## TO COMPEL DOCUMENTS AND
## INTERROGATORY RESPONSES
## FROM CLASS PLAINTIFFS (#80)

COLLINGS, U.S.M.J.

    The Court rules on Dexia's motion to compel as follows:

    *Request #10*: The plaintiff shall produce, **on or before the close of business**

**on Tuesday, January 31, 2006,** all documents in the following categories within

its custody, possession, and/or control  which were dated, created, sent or received before August 19, 2001:

(1)    Documents concerning any investigation by plaintiffs which were directed in any way to the activities of Dexia or Artesia specifically;

(2)    Documents concerning any investigation by plaintiffs which were directed in any way to the activities of a bank, banks, banking corporation(s) or banking institution(s) in connecting with the L & H fraud.

(3)    Documents concerning any investigation by plaintiff which mention Dexia or Artesia or which refer to Dexia or Artesia either by specific name or otherwise.

(4)    Documents upon which plaintiffs intend to rely to demonstrate Plaintiffs' counsel exercised reasonable diligence in investigating potential claims against Dexia or Arestia.

The defendants' request, to the extent that it seeks all documents in connection with the entire L & H investigation, is vastly overbroad.  On the other hand, the plaintiffs' view that because they bear the burden of proof on the issue of whether a reasonably diligent investigation was conducted of Dexia and Arestia somehow acts as a limitation on discovery is incorrect. Subsection (2), *supra,* is designed to strike a balance - plaintiffs do not have to reveal all documents relating to the L & H investigation but must reveal documents relative to their investigation of institutions which were in a similar position to

2

Dexia and Artesia, i.e., banks, banking corporations or banking institutions. In my judgment, the defendants are entitled to documents relating to the plaintiffs' investigations of not only Dexia and Artesia but also to documents relating to their investigations of entities like Dexia and Artesia.

*Privilege Log:* The Court rules that the plaintiffs may not withhold documents which come within the categories specified, *supra,* which otherwise would be protected as non-opinion work product. However, as to any documents within the categories specified, *supra,* which the plaintiffs contend are protected as opinion work product, the plaintiffs shall file and serve, ***on or before the close of business on Tuesday, January 31, 2006,*** a privilege log.

*Loss Causation:* The Court rules that the interrogatories be fully and completely answered on the same date on which plaintiff is required to serve its expert reports.

To the extent indicated, *supra,* it is ORDERED that the motion to compel (#80) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that the motion to compel be, and the same hereby is, otherwise DENIED.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS

December 22, 2005    United States Magistrate Judge

3

Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly situated,

      Plaintiffs,

      v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., S.A.),

      Defendants.

Civil Action No.:  03-11566 (PBS)

## NOTICE OF DEPOSITION OF BERMAN DEVALERIO
## PEASE TABACCO BURT & PUCILLO

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Defendant Dexia Bank Belgium will take the deposition upon oral examination of Berman

DeValerio Pease Tabacco Burt & Pucillo at the offices of Mintz Levin Cohn Ferris Glovsky &

Popeo, located at One Financial Center, Boston, MA 02111, commencing on June 5, 2006 at

9:00 a.m., and continuing thereafter from day to day until completed, or on such dates as may be

agreed by counsel.  Berman DeValerio Pease Tabacco Burt & Pucillo shall produce one or more

officers, directors, managing agents, or other persons most knowledgeable regarding the topics

listed in the attached Schedule A.  The deposition shall be recorded by stenographic and

videographic means before an officer authorized by law to administer oaths.  All parties are

invited to attend and to participate in the manner provided for in the Federal Rules of Civil

Procedure.

NYA 779649.1

Dated:  May 2, 2006

CLIFFORD CHANCE US LLP

By: _____

James B. Weidner
Jeff E. Butler
31 West 52nd Street
New York, NY 10019-6131
Tel:    (212) 878-8000
Fax:    (212) 878-8375

MINTZ LEVIN COHN FERRIS GLOVSKY &
POPEO
        Peter M. Saparoff (BBO#567379)
        Breton Leone-Quick (BBO#391000)
One Financial Center
Boston, MA 02111
Tel:    (617) 542-6000
Fax:    (617) 542-2241

Counsel for Dexia Bank Belgium

## SCHEDULE A

### Definitions & Instructions

1.      "Plaintiffs" means the named plaintiffs in this action and each of their agents, attorneys, accountants, investigators or other representatives.

2.      "Dexia" means Dexia Bank Belgium and its parents, affiliates, divisions, subsidiaries, predecessors or successors in interest, including present or former officers, directors, administrators, employees, agents, attorneys, accountants, investigators, or any other representatives.

3.      "Artesia" means Artesia Banking Corporation, S.A. and its parents, affiliates, divisions, subsidiaries, predecessors or successors in interest, including present or former officers, directors, administrators, employees, agents, attorneys, accountants, investigators, or any other representatives.

4.      "L&H" means Lernout and Hauspie Speech Products, N.V.

5.      The scope of these topics includes factual information concerning potentially relevant investigations by Plaintiffs including, without limitation, whether an investigation was done, when the investigation began started, what information prompted the investigation, who was involved in the investigation, what was done in connection with the investigation and identification of documents created in connection with the investigation.

6.      These topics relate to the time period from January 1, 2000 to June 23, 2003.

<u>Topics</u>

1.     Any investigation by Plaintiffs which was directed in any way to the activities of Dexia or Artesia specifically.

2.     Any investigation by Plaintiffs which was directed in any way to the activities of a bank, banks, banking corporations, or banking institutions in connection with the L&H fraud.

3.     Any other investigation upon which Plaintiffs intend to rely on to demonstrate that they exercised reasonable diligence in investigating potential claims against Dexia or Artesia.

NYA 779631.2

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of Dexia Bank Belgium's Notice of Deposition to Berman DeValerio Pease Tabacco Burt & Pucillo were served upon the following parties by facsimile and first class mail on May 2, 2006:

BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO
Glen DeValerio
Jeffrey C. Block
Patrick T. Egan
One Liberty Square
Boston, MA 02109
(617) 542-8300
Fax (617) 542-1194

SHALOV, STONE & BONNER LLP
Lee S. Shalov
James Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 100
New York, NY 10018
(212) 239-4340
Fax (212) 239-4310

CAULEY BOWMAN CARNEY & WILLIAMS, PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
P.O. Box 25438
Little Rock, AR 72212
(501) 312-8500
Fax (501) 312-8505
*Counsel for Class Plaintiffs*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Max W. Berger
Steven B. Singer
Javier Bleichmar
Avi Josefson
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400
Fax (212) 554-1444
*Counsel for Plaintiffs Stonington Partners, Inc.,*
*Stonington Capital Appreciation 1994 Fund L.P.*
*and Stonington Holdings, L.L.C.*

GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph
Susan M. Davies
805 Third Avenue, 31st Floor
New York, NY 10022
(212) 407-1200
Fax (212) 407-1299
*Counsel for Plaintiffs Gary B. Filler and Lawrence Perlman,*
*Trustees for the TRA Rights Trust*

BOIES, SCHILLER & FLEXNER LLP
Karen C. Dyer
George R. Coe
255 South Orange Avenue, Suite 905
Orlando, FL 32801
(407) 425-7118
Fax (407) 425-7047
*Counsel for Plaintiffs Janet Baker, James Baker, JKBaker LLC, and JMBaker LLC*

Dated:  May 2, 2006

Kara Morrow

Exhibit C

## Butler, Jeff E. (Litigation-NY)

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Monday, November 06, 2006 6:54 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:03-cv-11566-PBS Quaak et al v. Dexia, S.A. "Order on Motion for Protective Order" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Collings, Robert entered on 11/6/2006 at 6:54 PM EST and filed on 11/6/2006

**Case Name:**    Quaak et al v. Dexia, S.A.
**Case Number:**    1:03-cv-11566
**Filer:**
**Document Number:**

**Docket Text:**
Judge Robert B. Collings: Electronic ORDER entered granting in part and denying in part [240] Motion for Protective Order. The depositions must be conducted pursuant to Rule 31, Fed. R. Civ. P., and the subject matter shall be limited by the Court's December 22, 2005 Order. The Court shall not limit the examination to one representative.

The following document(s) are associated with this transaction:

**1:03-cv-11566 Notice will be electronically mailed to:**

Eoin P. Beirne    ebeirne@mintz.com

Jeffrey C Block    jblock@bermanesq.com, smelloul@bermanesq.com

James P. Bonner    jbonner@lawssb.com

Jeff E. Butler    jeff.butler@cliffordchance.com, beverly.alcober@cliffordchance.com; damien.morris@cliffordchance.com

Thomas Teige Carroll    thomas.carroll@cliffordchance.com

Glen DeValerio    gdevalerio@bermanesq.com

Patrick T. Egan    pegan@bermanesq.com, vmcallister@bermanesq.com

James W. Halter     james.halter@cliffordchance.com

Allison K. Jones !     ajones@bermanesq.com, bdentremont@bermanesq.com

Maryana A. Kodner     maryana.kodner@cliffordchance.com

Breton T. Leone-Quick     bleone-quick@mintz.com

David M. Lindsey     David.Lindsey@CliffordChance.com

Kara Morrow     kara.morrow@cliffordchance.com, beverly.alcober@cliffordchance.com

Patrick L. Rocco     procco@lawssb.com

Peter M. Saparoff     psaparoff@mintz.com

Nicole Robbins Starr     nstarr@bermanesq.com, smelloul@bermanesq.com

James B. Weidner     Ja! mes.Weidner@CliffordChance.com

**1:03-cv-11566 Notice will not be electronically mailed to:**

Joel M. Cohen
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019-6131

# Exhibit D

255 South Orange Avenue, Suite 905
Orlando, Florida 32801-3456
Telephone: 407.425.7118
Facsimile:  407.425.7047

# Boies Schiller & Flexner

# FACSIMILE TRANSMITTAL SHEET

## PRIVILEGED AND CONFIDENTIAL

| TO: | Jeff E. Butler | FAX: | 212.878.8375 |
|---|---|---|---|
| FROM: | George Coe | | |
| DATE: | September 20, 2005 | | |
| SUBJECT: | *Dexia* | | |

| PAGES: | -35- | (Including Transmittal Sheet) |
|---|---|---|
| | ORIGINAL WILL FOLLOW | |

IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED ABOVE, PLEASE CONTACT US
IMMEDIATELY AT (407)425-7118.

MESSAGE:

This facsimile transmission contains confidential and/or legally privileged information from the law offices of
Boies, Schiller & Flexner L.L.P. intended only for use of the individual(s) named on this transmission sheet.  If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this
facsimile transmission is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone so that
we can arrange for the return of the documents to us at no cost to you.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------x
                                    :
JANET BAKER, and JAMES BAKER,       :
JKBAKER LLC and JMBAKER LLC,        :
                                    :
            Plaintiffs,             :
                                    :
v.                                  :       CIVIL ACTION NO.
                                    :       04-CIV-10501 (PBS)
DEXIA, S.A., DEXIA BANK BELGIUM,    :
(formerly known as ARTESIA BANKING  :
CORP., S.A.)                        :
                                    :
            Defendants.             :
-----------------------------------------------x
```

## BAKER PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEXIA BANK BELGIUM'S FIRST SET OF INTERROGATORIES

Plaintiffs James Baker, Janet Baker, JKBaker LLC and JMBaker LLC ("Plaintiffs")
hereby respond and object to Defendant Dexia Bank Belgium's First Interrogatories to the
Bakers Plaintiffs (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

These General Objections are incorporated into each specific response and objection
hereinafter set forth as if fully set forth therein, and will not be repeated in each specific response
or objection. The provision of any response is not, and shall not be construed as, an admission of
the propriety, relevancy or admissibility of any such Interrogatory or Response.

    1.    Plaintiffs object to the Interrogatories to the extent they, individually or
cumulatively, purport to impose duties and/or obligations beyond those required by the Federal
Rules of Civil Procedure or the Local Rules or Orders of this Court.

2.     Plaintiffs object to the Interrogatories to the extent that they are overbroad, harassing, vague or ambiguous, and to the extent that the discovery sought is unreasonably cumulative, duplicative, disproportionate or unduly burdensome.

3.     Plaintiffs object to the Interrogatories to the extent that any Interrogatory is premature inasmuch as it purports to call for opinions, including expert opinions, or contentions relating to fact or to the application of law to fact that Plaintiffs would not be required to disclose until all discovery has been completed or at such later time as the Court may direct.

4.     Plaintiffs object to the Interrogatories to the extent that the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine, Rule 26(b)(3) of the Federal Rules of Civil Procedure relating to trial preparation materials, or is otherwise privileged or immune from discovery. This objection includes, but is not limited to, information requested by defendants that relates to mental impressions, conclusions, opinions, or legal theories of Plaintiffs' attorneys or representatives concerning the litigation or that seeks information regarding communications between Plaintiffs and any attorneys representing Plaintiffs or the communications between Plaintiffs' attorneys and the attorneys representing plaintiffs in any related actions.

5.     Plaintiffs object to the Interrogatories to the extent they seek information or documents that are not relevant to the claims or defenses of any party.

6.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not within the possession, custody or control of Plaintiffs.

7.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent they purport to call for information not maintained by Plaintiffs in the usual course of business.

2

8.  Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions. In providing these responses and objections to the Interrogatories, Plaintiffs do not admit the factual or legal premise of any of the Interrogatories.

9.  Plaintiffs object to the definition of "L&H Litigation" as overbroad to the extent it encompasses actions that are not or were not brought by Plaintiffs. Plaintiffs will define "L&H Litigation" as limited to *Roth et al. v. KPMG LLP et al.*, 02-CV-10304(PBS), *consolidated with Baker et al. v. KPMG LLP et al.* 02-CV-10305(PBS) and *Baker et al. v. Hanvit Bank et al.*, 02-CV-10367(PBS).

10.  Plaintiffs object to the definition of "Artesia" as overly broad, vague and ambiguous to the extent it includes "Bacob" and "Paribas" yet fails to define those entities

11.  In providing Responses to the Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather intend to preserve and are preserving:

(a)  All objections as to competency, relevancy, materiality and admissibility of the Interrogatories and/or the Responses;

(b)  All rights to object on any ground to the use of any of the Responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

(c)  All rights to object on any ground to any further interrogatories or other discovery requests involving or related to the subject matter of the Interrogatories;

(d)  The right to supplement the Responses to the Interrogatories prior to trial; and

(e)  Any and all privileges or rights arising under applicable Federal Rules of

3

Civil Procedure, Local Rules of this Court, other statutes, and/or the common law.

12.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they call for information that relates to matters not raised by the pleadings, or that is not material and necessary to the prosecution or defense of this action, or that is not reasonably calculated to lead to the discovery of admissible evidence.

13.    Plaintiffs object to the Definition of "You" and "Your" as overly broad, vague, ambiguous, exceeding the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs will construe references to "you" or "your" to mean the Plaintiffs in this action.

14.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information in the possession of Plaintiffs that was obtained from a third party under an express agreement of confidentiality.

15.    In addition to the General Objections set forth above, Plaintiffs also state additional specific objections to the Interrogatories where appropriate. By setting forth such specific objections, Plaintiffs do not intend to limit or restrict the General Objections set forth above. To the extent that Plaintiffs respond to the specific Interrogatories, any stated objections are not waived by providing Responses. In addition, the inadvertent disclosure of privileged information shall not constitute a waiver of any applicable privilege.

16.    Subject to and without waiver of the foregoing General Objections, each of which is hereby incorporated into each of Plaintiffs' responses and specific objections to each Interrogatory, Plaintiffs respond as follows:

4

## SPECIFIC OBJECTIONS AND RESPONSES

**Interrogatory No. 1:**

**Identify each act or omission of Artesia that you claim violated Section 10(b) of the Securities Exchange Act of 1934 and, for each such act or omission, describe how such act or omission caused the loss for which you seek to recover damages.**

**Response to Interrogatory No. 1:**

Plaintiffs object to this Interrogatory as premature because their investigation of Dexia Bank Belgium's (hereinafter "Dexia's, which term includes "Artesia") actions and omissions is ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or third parties, completely analyzed such documents, taken deposition testimony from the persons who created the documents and/or were familiar with them and/or the activities they describe, or engaged expert witnesses to the extent required to formulate opinions based upon the factual record developed in this case. Until this process has been concluded, Plaintiffs cannot provide a fully complete response to this Interrogatory. Plaintiffs further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine and as calling for legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1-17 and 28-131 of the Complaint filed in this case. Plaintiffs further state that Dexia substantially participated in a fraudulent, manipulative and/or deceptive scheme to artificially inflate L&H's publicly reported revenues and profits, to show growing revenues and profits, as well as to artificially inflate the value of L&H stock. Dexia's acts, practices, course of business and conduct to structure, implement and further this fraudulent, manipulative and/or deceptive scheme include: (1) Dexia provided loans to shell corporations created by L&H and controlled by L&H and/or its principals, which shell

corporations, in turn, funded (with the monies loaned by Dexia) Language Development Corporations ("LDCs") that had no legitimate business operations. Dexia knew that the funds it loaned were being paid to L&H by the LDCs in the form of "licensing fees" and that L&H improperly recognized these amounts as revenue. These transactions include, but are not necessarily limited to: (a) Dexia's loan of approximately $6 million dollars to Radial Belgium N.V. ("Radial") with knowledge that Radial would, in turn, fund three LDCs, that these LDCs would transmit the $6 million to L&H as fraudulent "licensing fees" (and "royalties"); Dexia agreed to this loan because it was guaranteed by credit default swap transactions whereby L&H's senior officers guaranteed the funds Dexia loaned to Radial; the guarantees were structured to keep the role of L&H and its senior officers in the loan secret from the SEC and/or the investing public; (b) Dexia's loan of approximately $6 million to Language Investment Co. ("LIC"), which established and funded a separate group of LDCs to pay "licensing fees" to L&H, and the "fees" from those LDCs were also fraudulently reported as revenue; Dexia's loan to LIC was also guaranteed by credit default swaps that were structured to keep the role of L&H and its senior officers in the loan secret from the SEC or the investing public; and (c) Dexia's personal line of credit to L&H Senior Officers for Language Development Fund ("LDF") to establish and fund six LDCs (different from the LDCs established and funded by either Radial or LIC), with knowledge that these LDCs funded by LDF were used to funnel the funds provided by Dexia back to L&H through sham license agreements and to permit L&H to improperly and fraudulently record the funds it received from the LDCs as revenue but conceal the fact that the funds were guaranteed by L&H's senior officers.

(2) as addressed above, Dexia further participated in the scheme to permit the fraudulent revenue recognition by L&H by structuring the security for its loans to Radial and LIC as credit

default swaps with L&H's Senior Officers and by structuring its loan for LDF as a personal line of credit to L&H Senior Officers with the intention that such L&H and its senior officers role in the loans would not be disclosed to the SEC and investors;

(3) Dexia's funded BTG, lending BTG a total of $22.9 million, including its initial funding, with the intent that L&H would find external investors to repay the loan and in a manner that permitted L&H to hide the identity of the investors in BTG; Dexia knew that L&H entered into license and research and development agreements with BTG and L&H reported revenue from those agreements that which should have been disclosed as research and development expenses; when L&H subsequently purchased BTG at far more than the fair value of its assets, L&H was able to capitalize the purchase price, once again turning what should have been reported as an expense into an asset; and

(4) Dexia also participated in the above referenced scheme by participating in L&H's agreements with Vasco Data Security International ("Vasco").  L&H entered into a license agreement with Vasco although the "license fee" was no more than a fee for a $3 million loan from L&H.  L&H subsequently entered into a second, backdated license agreement with Vasco for a second "license fee" under threat that it would it would call the loan if Vasco did not agree to backdate the license agreement; L&H fraudulently recognized the revenue from the alleged license fees in 1998.  Dexia managed and organized the private placement of Vasco stock, the proceeds of which Vasco used, in part, to repay L&H and which permitted L&H, through its related and affiliated parties, to obtain an ownership interest in Vasco and place Pol Hauspie on Vasco's Board of Directors.

(5)  Dexia also concealed its participation in the scheme from the investigators retained by the Audit Committee as set forth in paragraph 87 of the Complaint.

As a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to materially and falsely inflate L&H's revenues, profits and stock prices, L&H improperly and fraudulently booked and publicly reported millions of dollars of revenue and profits and publicly reported a pattern of growing revenues and profits. Further, as a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme, L&H publicly issued a series of announcements and/or press releases touting the validity of the LDC concept and its effect on L&H's growth of revenue and profits, including organic growth of revenue. Dexia's participation in these schemes was directly responsible for the artificial inflation of the value of L&H's stock, causing Plaintiffs damages when the fraudulent, manipulative and/or deceptive scheme and the consequences thereof became public. Once L&H's true condition became public knowledge, L&H's stock became worthless. Dexia's actions are also, in part, responsible for the civil and criminal investigations of L&H, L&H's Senior Officers, L&H's related companies and Dexia itself in either the United States, Belgium or both. Public disclosure of those investigations also reduced the value of L&H stock.

**Interrogatory No. 2:**

**State each date on which alleged conduct by Artesia caused the price of L&H common stock to decline and, for each such date, identify any Disclosure which led to that decline.**

**Response to Interrogatory No. 2:**

Plaintiffs object to this Interrogatory as vague, ambiguous and unintelligible insofar as it is unclear whether this interrogatory seeks the dates of "alleged conduct by Artesia" or the date of the decline in "the price of L&H common stock." Plaintiffs further object to this interrogatory to the extent that it assumes a "Disclosure(s)" is required for Plaintiffs' common law claims or federal securities law claim alleging a scheme or artifice to defraud. Plaintiffs further object to this interrogatory as premature because it calls for expert testimony prior to the time when such

8

testimony must be provided pursuant to the Court's June 2, 2005 Scheduling Order and also

because Plaintiffs' investigation of Dexia's actions and omissions is ongoing, and Plaintiffs have

not received all relevant documents in the control of Dexia and/or third parties, completely

analyzed such documents, taken deposition testimony from the persons who created the

documents and/or were familiar with them and the activities they describe, or engaged expert

witnesses, to formulate opinions based upon the factual record developed in this case. Until this

process has been concluded and Plaintiffs' experts have formulated opinions, Plaintiffs cannot

provide a response to this Interrogatory. Plaintiffs further object to this Interrogatory to the

extent it seeks information protected by the attorney-client privilege or attorney work-product

doctrine. Subject to and without waiving these objections, Plaintiffs will provide any expert

information responsive to this Interrogatory at the time required by Fed. R. Civ. P. 26(a)(2) and

the Court's Scheduling Order. Moreover, the issue as to whether this Interrogatory is proper at

this time is currently *sub judice* on Dexia Bank Belgiums's Motion to Compel Documents and

Interrogatory Responses From Class Plaintiffs and, if necessary and appropriate, Plaintiffs will

amend this response in a timely manner.

## Interrogatory No. 3:

**For each relevant quarter, state separately the amount of publicly reported L&H revenue
that was attributable to each of (a) the Radial Loan; (b) the LIC Loan, (c) the Personal
Loan, and (d) the Vasco Private Placement.**

## Response to Interrogatory No. 3:

Plaintiffs object to this Interrogatory as vague and ambiguous. Plaintiffs further object to this

Interrogatory to the extent it assumes the fraudulently inflated revenues, profits and stock price

of L&H and the publicly reported growth of L&H's revenues and profits resulting from the

fraudulent, manipulative and/or deceptive scheme described in the Complaint and in which

Dexia substantially participated are somehow limited to "revenue that was attributable" to a particular loan or transaction. Plaintiffs further object to this Interrogatory as premature because it calls for expert testimony prior to the time when such testimony must be completed pursuant to the Court's May 18, 2005 Scheduling Order and because their investigation of Dexia's actions and omissions is ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or third parties, completely analyzed such documents, taken deposition testimony from the persons who created the documents and/or were familiar with them and the activities they describe, or engaged expert witnesses, to the extent required to formulate opinions based upon the factual record developed in this case. Until this process has been concluded, Plaintiffs cannot provide a fully complete response to this interrogatory. Plaintiffs further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. Subject to and without waiving these objections, Plaintiffs state all of the revenue L&H fraudulently recognized and publicly reported from the LDCs owned or controlled by Radial, LIC, and LDF and all of the revenue L&H recognized from Vasco, like other L&H fraudulently recognized and publicly reported revenues, is "attributable" to Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to vastly and fraudulently inflate L&H's revenues, profits and stock price and refer to and incorporate the information from the Complaint, in particular paragraphs 61-65, 67, 76, 79-82. Moreover, the issue as to whether this Interrogatory is proper at this time is currently *sub judice* on Dexia Bank Belgiums's Motion to Compel Documents and Interrogatory Responses From Class Plaintiffs and, if necessary and appropriate, Plaintiffs will amend this response in a timely manner.

**Interrogatory No. 4:**

**State whether you conducted a reasonably diligent investigation of potential claims against Artesia and, if so, state the time period of that investigation, describe all actions taken as**

10

part of that investigation and identify any print or electronic media and any computer databases that you reviewed in connection with that investigation.

**Response to Interrogatory No. 4:**

Plaintiffs specifically object to Interrogatory No. 4 on the grounds that it seeks a legal conclusion and that the information sought is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 4 does not constitute a waiver of attorney-client privilege or attorney work-product protection (which agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as follows:

1. Plaintiffs and their legal counsel conducted a reasonably diligent investigation of all Plaintiffs' potential claims relating to the fraudulent scheme, acts, practices course of business, statements and omissions of material facts to artificially inflate the revenue and stock price of L&H.

2. Counsel for the Plaintiffs was retained by Plaintiffs on or about November 2000, to investigate possible claims arising out of the sale of Dragon to Lernout & Hauspie.

3. Plaintiffs researched and reviewed newspapers and magazine articles in English speaking newspapers in late 2000 and spoke with other investors and with Dan Hart, John Duerden and perhaps others who were still at L&H

4. After November, 2000, Plaintiffs primarily relied upon their legal counsel to investigate all of the Bakers' potential claims arising out of the sale of Dragon to L&H.

11

5.        Commencing on or about November 2000, Plaintiffs' legal counsel conducted a reasonably diligent factual investigation of Plaintiffs' potential claims relating to the fraudulent scheme, acts, practices, course of business, statements and omissions of material facts to artificially inflate the revenue and stock price of L&H in coordination with the investigations undertaken by counsel for the class plaintiffs, Stonington plaintiffs, Filler Plaintiffs and Bamberg Plaintiffs:

a.        On an on-going basis, counsel for Plaintiffs researched, reviewed and analyzed publicly available information concerning L&H, including its subsidiaries (which includes but is not limited to L&H Korea and L&H Singapore, collectively referred to as the "L&H Entities"), the officers, directors, auditors, and legal advisors of L&H Entities, entities owned by officers and directors of L&H Entities, Brussels Translation Group, Velstra Pte Ltd., Radial NV, the Language Development Companies and Cross-Language Development Companies, and Mercator & Noordstar, N.V. Plaintiffs state hat they did not keep a log of all of the print and electronic media reviewed but to the best of plaintiff's knowledge and belief the following print media, electronic media and computer databases were reviewed during plaintiff's investigation:

        Lexis/Nexis
        Westlaw
        Wall Street Journal
        New York Times
        Boston Globe
        De Financiale-Economische Tijd
        De Standaard
        PR Newswire
        Business Wire
        Reuters
        The websites of any defendant in *Roth et al. v. KPMG LLP et al.*, 02-CV-10304(PBS),
        *consolidated with Baker et al. v. KPMG LLP et al.* 02-CV-10305(PBS) and *Baker et al. v.*
        *Hanvit Bank et al.*, 02-CV-10367(PBS)
        Pacer or other court-related or court-maintained websites
        google.com
        edgaronline.com

freeedgar.com
sec.gov
10Kwizard.com
forbes.com
Yahoo Finance
Business Week
CNBC.com
fool.com
ft.com
thestreet.com
anywho.com
Infobel Belgium Telephone directory and other online Belgian directories including
Golden Pages
Standford Law School Securities Class Action Center
Massachusetts Secretary of State Corporations Division
Boston Business Journal
News from AFX
The Times (London)
Financial Times (London)
Telephone directories for various cities in Belgium
Tijdnet.be
L&H/Dictaphone Bankruptcy News
Uk.yahoo.com
De.yahoo.com
Hoovers.com
Associated Press website, thewire.com
Dowjones.com
Delaware Division of Corporations
State of New York Banking Department
Websites of South Korean governmental or court bodies
Pinksheets.com
Online English language newspapers from South Korea
Dun & Bradstreet

b.    Prior to the time Plaintiffs were permitted to serve merits discovery in the L&H

Litigation, the diligent investigation of potential claims by counsel for Plaintiffs

included that counsel reviewed the publicly available information regarding L&H

from the sources listed above and also:

i.    in or about February 2001, consulted with an accounting and finance

expert to analyze the publicly-available information about L&H;

ii.    in or about May 2001, obtained an English translation of the *Report of KPMG Auditors as Ordered by the Court of Commerce of Ieper by Judgment on January 5, 2001* dated April 12, 2001;

iii.    in or about July 2001, obtained an English translation of the *Report of the Statutory Auditor on the Statutory Accounts Submitted to the General Shareholders' Meeting of L&H* dated June 14, 2001;

iv.    commencing in or about October 2001, obtained, reviewed and analyzed 32 boxes of documents produced to the SEC by L&H, which were not publicly available;

v.    obtained, reviewed and analyzed the redacted *Report of Findings and Recommendations to the Audit Committee of L&H* by Bryan Cave LLP and Loeff Claeys Verbeke dated November 20, 2000, and subsequently obtained, reviewed and analyzed the unredacted version of that report as a result of service of a subpoena by a similarly-situated plaintiff in an ancillary action in Delaware;

vi.    commenced an action in the United States District Court for the District of Massachusetts against three Korean Banks involved in the Korean fraud perpetrated by L&H and subsequently dismissed the action against those defendants and refiled in the United States District Court for the Southern District of New York;

vii.    appeared in December 2000 or January 2001 in the bankruptcy cases (both in Belgium and in the U.S.) filed claims in and monitored the available information in the US and Belgian bankruptcy proceedings of L&H;

viii.    commencing in or about March 2002, obtained, reviewed (jointly with other law firms representing plaintiffs in the L&H Litigation) and analyzed 23 CDs of documents produced to the SEC by L&H, which were not publicly available and which Plaintiffs were not entitled to obtain in discovery in the Massachusetts actions due to a stay of discovery pending resolution of various parties motions to dismiss, *inter alia*, the 10(b)(5) claims;

c.    The diligent investigation of potential claims by counsel for Plaintiffs also included that counsel:

i.    through discovery in the L&H Litigation, commencing in or about September 2002, obtained, reviewed, and analyzed documents and deposition testimony, including documents of L&H, and documents of legal advisors, financial advisors, and customers of the L&H Entities. The discovery materials obtained in the L&H Litigation are identified with specificity in Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) dated April 15, 2005, and copies thereof have been made available to Dexia Bank Belgium in discovery. The ability of counsel for Plaintiffs to obtain discovery in the L&H Litigation was delayed by, among other things: (A) the automatic stay under the Private Securities Litigation Reform Act; (B) the bankruptcy of L&H, which among other things necessitated that counsel travel to Belgium to review L&H documents, after obtaining relief from the automatic stay in the United States Bankruptcy Court for the District of Delaware; and (C) the fact that

15

Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG Belgium")

strenuously resisted providing discovery, based on its assertion of an

auditor-client privilege, with the result that Plaintiffs first obtained

KPMG-Belgium's workpapers of L&H audits beginning only in or about

June 2004, more than a year after Filler Plaintiffs filed suit against Dexia.

ii.    commencing in or about April 2001, Kramer, Love & Cutler LLP,

accountants, reviewed and analyzed L&H financial statements and

accounting papers, including audit workpapers of KPMG LLP; and

iii.   in or around July 2003, obtained, reviewed, and analyzed an English

translation of the report dated May 28, 2001 titled "Onderzoek Naar de

Omzet Generealiseerd op de Language Development Companies Revenue

Recognition Consolidatie – en Related Party Problematiek, Deel II" (the

"LDC Report") prepared for the Belgian Investigating Magistrate, which

was not publicly available or previously available to plaintiffs or their

counsel.

**Interrogatory No. 5:**

**Identify each person who conducted any investigation leading to the allegations in the Complaint, and state, for each such person, the time period of his or her involvement in that investigation.**

**Response to Interrogatory No. 5:**

Plaintiffs object to Interrogatory No. 5 on the grounds that the information sought is not

relevant to any claim or defense of any party, and is protected by the attorney client privilege, the

attorney work product doctrine, and other applicable privileges and doctrines.  Plaintiffs further

specifically object to Interrogatory No. 5 to the extent that it seeks information that is not

16

available to Plaintiffs in so far as certain allegations in the Complaint are based upon investigations conducted by persons who were not employees or agents of Plaintiffs or their legal counsel, including but not limited to the authors of the *Report of Findings and Recommendations to the Audit Committee of L&H* by Bryan Cave LLP and Loeff Claeys Verbeke dated November 20, 2000, the *L&H Korea Report* prepared by PricewaterhouseCoopers LLP, the LDC Report and numerous press reports. Plaintiffs further specifically object to Interrogatory No. 5 on the grounds that it is overly broad and unduly burdensome in light of the fact that counsel for Plaintiffs commenced investigating Plaintiffs' potential claims arising out of the sale of Dragon to L&H in or about November 2000, and that investigation involved numerous persons whose functions were primarily administrative or who acted primarily as translators. Plaintiffs also object to the extent this Interrogatory to the extent it seeks the identity of consulting experts. Plaintiffs also object to the request that Plaintiffs provide the "time period" of the involvement of each individual person in the investigation on the grounds that it is vague, ambiguous, burdensome and neither relevant nor calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 5 does not constitute a waiver of attorney-client privilege or attorney work-product protection (which agreement is reflected in the August 25, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond that the following employees or agents of Plaintiffs or their counsel were primarily responsible during the time periods indicated for conducting the factual investigations leading to the allegations in the Complaint:

17

a.       Karen C. Dyer, Boies, Schiller & Flexner LLP, 255 South Orange Ave. Suite 905, Orlando, Florida 32801 -- approximately November 2000 through June 23, 2003;

b.       George R. Coe, Boies, Schiller & Flexner LLP, 255 South Orange Ave. Suite 905, Orlando, Florida 32801 -- approximately November 2000 through June 23, 2003;

c.       Pieter Herman, c/o Boies, Schiller & Flexner LLP, 255 South Orange Ave. Suite 905, Orlando, Florida 32801 -- approximately June 2003 through June 23, 2003;

d.       Alan Cotler, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street Philadelphia, PA 19103– approximately June 2001 through June 23, 2003;

e.       Joan Yue, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street Philadelphia, PA 19103– approximately June 2001 through June 23, 2003;

f.       Sean Halpin, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street Philadelphia, PA 19103– approximately June 2001 through June 23, 2003,

h.       Tracy Frisch, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street Philadelphia, PA 19103 – approximately June 2001 through June 23, 2003;

i.       Steve Voigt, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street Philadelphia, PA 19103 – approximately June 2001 through June 23, 2003;

j.       Accountants at Kramer, Love & Cutler, LLP, 675 Third Avenue, New York, NY 10017 –approximately April 2001 through June 23, 2003;

k.       Cedric Guyot, c/o Boies, Schiller & Flexner LLP, 255 South Orange Ave. Suite 905, Orlando, Florida 32801– approximately February 2001 to February 2002;

l.       Jan Van Petegham, c/o Boies, Schiller & Flexner LLP, 255 South Orange Ave. Suite 905, Orlando, Florida 32801– approximately February 2001 through February 2002;

18

**Interrogatory No. 6 (a):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 6(a):**

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first discovered information showing" and further object to the extent it assumes that the date of discovery specifically of improper revenue recognition from the transactions with Dictation and/or Brussels Translation Group is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can be limited to or defined solely by specific transactions. Plaintiffs also object that information called for by this Interrogatory is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(a) does not constitute a waiver of attorney-client privilege or attorney work-product protection (which agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential claims arising out of the sale of Dragon to L&H; and (2) Plaintiffs and their legal counsel did not keep track of and do not know the date on which counsel "first discover[ed]" information tending to show that the scheme to defraud L&H investors included transactions with Dictation

19

Consortium and Brussels Translation Group; and (3) Plaintiffs or their legal counsel, first

obtained, in or about December 2000, of information that tended to show that the fraudulent

scheme, acts, practices course of business, statements and omissions of material facts to

artificially inflate the revenue and stock price of L&H included transactions specific to Dictation

Consortium and Brussels Translation Group.

**Interrogatory No. 6 (b):**

**State the date on which you first discovered information showing that L& H and its Senior
Officers were engaged in a scheme to defraud L&H investors that involved improper
revenue recognition from transactions with Language Development Companies.**

**Response to Interrogatory No. 6(b):**

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first

discovered information showing" and further object to the extent it assumes that the date of

discovery specifically of improper revenue recognition from the transactions with Language

Development Companies is relevant or dispositive either to the causes of Plaintiffs' losses or the

date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to

the extent it assumes that the scheme in which Dexia substantially participated can be limited to

or defined solely by specific transactions.  Plaintiffs also object that information called for by

this Interrogatory is protected by the attorney client privilege, the attorney work product

doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(b) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as

follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential

claims arising out of the sale of Dragon to L&H; and (2) Plaintiffs and their legal counsel did not

keep track of and do not know the date on which counsel "first discover[ed]" information

tending to show that the scheme to defraud L&H investors included transactions with the

Language Development Companies; and (3)  Plaintiffs, or their legal counsel, first obtained

information, as early as the summer of 2000, that tended to show that the fraudulent scheme,

acts, practices, course of business, statements and omissions of material facts to artificially

inflate the revenue and stock prices of L&H included transactions specific to the Language

Development Companies.

**Interrogatory No. 6 (c):**

**State the date on which you first discovered information showing that L&H and its Senior
Officers were engaged in a scheme to defraud L&H investors that involved improper
revenue recognition from transactions with Vasco.**

**Response to Interrogatory No. 6(c):**

    Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first

discovered information showing" and further object to the extent it assumes that the date of

discovery specifically of improper revenue recognition from the transactions with Vasco is

relevant or dispositive either to the causes of Plaintiffs' losses or  the date the statute of

limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it

assumes that the scheme in which Dexia substantially participated can be limited to or defined

solely by specific transactions.  Plaintiffs also object that information called for by this

Interrogatory is protected by the attorney client privilege, the attorney work product doctrine,

and other applicable privileges and doctrines.

    Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(c) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as

follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential

claims arising out of the sale of Dragon to L&H; and (2) Plaintiffs and their legal counsel did not

keep track of and do not know the date on which counsel "first discover[ed]" information

tending to show that the scheme to defraud L&H investors included transactions with Vasco; and

(3)  Plaintiffs, or their legal counsel, may have first learned, in or about October 2001, of

information that tended to show that the fraudulent scheme, acts, practices, course of business,

statements and omissions of material facts to artificially inflate the revenue and stock price of

L&H included transactions specific to Vasco.

## Interrogatory No. 6 (d):

**State the date on which you first discovered information showing that Artesia loaned
money to Dictation Consortium and/or Brussels Translation Group.**

## Response to Interrogatory No. 6(d):

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first

discovered information showing" and further object to Interrogatory No. 6(d) to the extent it

assumes that the date of discovery of fact that Dexia loaned money to Dictation Consortium

and/or Brussels Translation Group is relevant or dispositive either to the causes of Plaintiffs'

losses or the date the statute of limitations began to with regard to Plaintiffs' claims against

Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can

be limited to or defined solely by specific transactions.  Plaintiffs also object that information

called for by this Interrogatory is protected by the attorney client privilege, the attorney work

product doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(d) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as

follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential

claims arising out of the sale of Dragon to L&H; (2) Plaintiffs and their legal counsel did not

keep track of and do not know the date on which counsel "first discover[ed]" information

tending to show that Dexia loaned money to Dictation Consortium and/or Brussels Translation

Group; (3) Plaintiffs, or their legal counsel, first obtained information tending to show that Dexia

may have loaned money to Brussels Translation Group in or about late June or July 2003; and

(4) Plaintiffs, or their legal counsel, first obtained information tending to show that Dexia may

have loaned money to Dictation Consortium in or about October 2001.

**Interrogatory No. 6 (e):**

**State the date on which you first discovered information showing that Artesia loaned
money to one or more Language Development Companies doing business with L&H.**

**Response to Interrogatory No. 6(e):**

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrases "first

discovered information showing" and "loaned" and further object to Interrogatory No. 6(e) to

the extent it assumes that the date of discovery specifically that Dexia loaned money to one or

more Language Development Company is relevant or dispositive either to the causes of

Plaintiffs' losses or the date the statute of limitations began to run with regard to Plaintiffs'

claims against Dexia and to the extent it assumes that the scheme in which Dexia substantially

participated can be limited  to or defined solely by specific transactions.  Plaintiffs also object

that information called for by this Interrogatory is protected by the attorney client privilege, the

attorney work product doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(e) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as

follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential

claims arising out of the sale of Dragon to L&H; and (2) Plaintiffs are unable to respond with

respect to loans to the Language Development Companies because, *inter alia*, Plaintiffs have not

alleged and are not aware that Dexia loaned money to Language Development Companies.

**Interrogatory No. 6 (f):**

**State the date on which you first discovered information showing that Artesia loaned money to one or more L&H Senior Officers.**

**Response to Interrogatory No. 6(f):**

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first

discovered information showing" and further object to Interrogatory No. 6(f) to the extent it

assumes that the date of discovery that Dexia loaned money to one or more L&H Senior Officers

is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of

limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it

24

assumes that the scheme in which Dexia substantially participated can be limited to or defined solely by specific transactions. Plaintiffs also object that information called for by this Interrogatory is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(f) does not constitute a waiver of attorney-client privilege or attorney work-product protection (which agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential claims arising out of the sale of Dragon to L&H; (2) Plaintiff and their legal counsel did not keep track of and do not know the date on which counsel "first discover[ed]" information tending to show that Dexia loaned money to one or more L&H Senior Officers; and (3) Plaintiffs, or their legal counsel, first obtained information tending to show that Dexia may have loaned money to one or more L&H Senior Officers in or about late August 2000.

**Interrogatory No. 6 (g):**

**State the date on which you first discovered information showing that Artesia managed a $11.5 million private placement of common stock for Vasco.**

**Response to Interrogatory No. 6(g):**

Plaintiffs object to this Interrogatory as vague and ambiguous in using the phrase "first discovered information showing" and further object to Interrogatory No. 6(g) to the extent it assumes that the date of discovery of the fact that Dexia managed a $11.5 million private placement of common stock for Vasco is relevant or dispositive either to the causes of Plaintiffs'

losses or the date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can be limited to or defined solely by specific transactions. Plaintiffs also object that information called for by this Interrogatory is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(g) does not constitute a waiver of attorney-client privilege or attorney work-product protection (which agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Plaintiffs' potential claims arising out of the sale of Dragon to L&H; (2) Plaintiffs and their legal counsel did not keep track of the date on which counsel "first discover[ed]" information tending to show that Dexia managed a $11.5 million private placement of Vasco common stock; and (3) Plaintiffs, or their legal counsel, first obtained information that tended to show that Dexia may have managed a private placement of Vasco common stock in or about June 2003.

26

Dated:     September 20, 2005

AS TO ANSWERS:

_____

Janet Baker

_____

Janet Baker for the JMBaker LLC

_____

James Baker

_____

James Baker for the JKBaker LLC

AS TO OBJECTIONS:

BOIES, SCHILLER & FLEXNER LLP

Karen C. Dyer
George R. Coe
390 North Orange Avenue, Suite 1890
Orlando, Florida 32801-3456
Telephone: (407) 425-7118

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
Tracy Z. Frisch
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

PARTRIDGE ANKNER & HORSTMANN LLP
Terence K. Ankner, BBO #552469
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
Telephone: (617) 859-9999

## Certificate of Service

I hereby certify that a true copy of the foregoing Baker Plaintiffs' Responses and Objections to Dexia Bank Belgium's First Set of Interrogatories was served upon the attorney of record for each party listed on the following service list by first class mail on September 20, 2005

28

## Service List

**Attorneys for Plaintiffs Bakers – 04-CV-10501**

Terence K. Ankner
Partridge, Ankner & Horsimann, LLP
200 Berkeley Street
16th Floor
Boston, MA 02116
Tel: (617) 859-9999
Fax: (617) 859-9998
tka@anknerlaw.com

Alan Cotler
Joan Yue
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-4301
Tel: (215) 851-8100
Fax: (215) 851-1420
acotler@reedsmith.com
jyue@reedsmith.com

**Attorneys for the Class Plaintiffs – 03-CV-11566**

Jeffery C. Block
Patrick T. Egan
BERMAN, DEVALERIO, PEASE, TABACCO, BURT & PUCILLO
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194
jblock@bermanesq.com
pegan@bermanesq.com

Curtis L. Bowman
Allen Carney
CAULEY, BOWMAN CARNEY & WILLIAMS, PLLC
P.O. Box 25438
Little Rock, AR 72221
Tel: (501) 312-8500
Fax: (501) 312-8505
cbowman@cauleybowman.com
acarney@cauleybowman.com

Patrick L. Rocco
SHALOV, STONE & BONNER
485 7th Avenue
Suite 1000
New York, NY 10018
Tel: (212) 239-4340
Fax: (212) 239-4310
procco@lawssb.com

**Attorneys for Filler Plaintiffs – 04CV-10477**

Gregory P. Joseph
Susan M. Davies
GREGORY P. JOSEPH LAW OFFICES, LLC
805 Third Avenue, 31st Floor
New York, NY 10022
Tel: (212) 207-1210
Fax: (212) 407-1274

gjoseph@josephnyc.com
sdavies@josephnyc.com


Nicholas Kelley
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114-2925
Tel:  (617) 227-7031
Fax:  (617) 367-2988
kcst@kcslegal.com


**Attorneys for Stonington Plaintiffs – 04-CV-10411**

Steve Singer
Javier Bleichmar
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN, LLP
1285 Avenue of the Americas
New York NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444
steven@blbglaw.com
javier@blbglaw.com


Charles P. Kindregan
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
Tel: (617) 951-2800
Fax: (617) 951-2819
ckindregan@lglllp.com

**Attorneys for Defendant Dexia Bank Belgium**

Peter M. Saparoff
Breton T. Leone-Quick
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
psaparoff@mintz.com
bleone-quick@mintz.com

James B. Weidner
Jeff Butler
Amber C. Wessels
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel: 212-878-8000
Fax: 212-878-8375
James.Weidner@cliffordchance.com
Jeff.Butler@cliffordchance.com
Amber.Wessels@cliffordchance.com

# EXHIBIT A

# C L I F F O R D

# C H A N C E

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019 6131

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

**Jeff E. Butler**

DIRECT TEL  212-878-8205
DIRECT FAX  212-878-8375
Jeff.butler@cliffordchance.com

August 19, 2005

VIA FACSIMILE

To:     Counsel on attached list

Re:     *Quaak v. Dexia Bank Belgium*
        *Stonington v. Dexia Bank Belgium*
        *Filler v. Dexia Bank Belgium*
        *Baker v. Dexia Bank Belgium*

Dear Counsel:

        This letter confirms my telephone conversation yesterday with Susan Davies and George Coe.

        *First*, as Plaintiffs have requested, Dexia and its counsel hereby agree that responses to Dexia Bank Belgium's Second Set of Interrogatories to Class Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the Stonington Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the TRA Rights Trust and Dexia Bank Belgium's First Set of Interrogatories to the Baker Plaintiffs shall not constitute a waiver of any privilege or other immunity from disclosure, including, but not limited to, the attorney-client privilege and the attorney work-product protection, that may apply to such responses. Dexia and its counsel further agree that they will not argue before any Court that the aforementioned responses constitute a waiver of any privilege or other immunity from disclosure.

        *Second*, as Plaintiffs have requested, Dexia agrees that the deadline for serving responses to the interrogatories referenced above shall be extended to September 20, 2005.

        *Third*, we have previously informed you that Dexia was working to complete its document production (with the exception of documents from backup tapes) by the beginning of September. It is now clear that we will not be able to meet that target. We now expect our document production (with the possible exception of documents from backup tapes) to be substantially complete in late September or early October.

Sincerely,

Jeff E. Butler

NYB 1508617.1

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

Page 2

August 19, 2005

To:     Patrick T. Egan, Esq.
        Berman Devalerio Pease Tabacco Burt & Pucillo
        One Liberty Square
        Boston, MA 02109

        Patrick Rocco, Esq.
        Shalov Stone & Bonner
        485 Seventh Avenue, Suite 1000
        New York, NY 10018

        Javier Bleichmar, Esq.
        Bernstein Litowitz Berger & Grossman LLP
        1285 Avenue of the Americas
        New York, NY 10019

        Susan Davies, Esq.
        Gregory P. Joseph Law Offices LLC
        805 Third Avenue, 31st Floor
        New York, NY 10022

        Karen Dyer, Esq.
        Boies, Schiller & Flexner LLP
        255 South Orange Avenue, Suite 905
        Orlando, FL 32801

        Alan Cotler, Esq.
        Reed Smith
        2500 One Liberty Place
        1650 Market Street
        Philadelphia, PA 19103

        Peter M. Saparoff, Esq.
        Mintz Levin Cohn Ferris Glovsky & Popeo
        One Financial Center
        Boston, MA 02111

NYB 1508617.1

# C L I F F O R D
# C H A N C E

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

| | | | |
|---|---|---|---|
| TO | Patrick T. Egan | COMPANY | Berman DeValerio Pease Tabacco Burt & Pucillo |
| FAX NO | 617 542 1194 | PHONE NO | 617 542 8300 |
| TO | Patrick L. Rocco | COMPANY | Shalov, Stone & Bonner LLP |
| FAX NO | 212 239 4310 | PHONE NO | 212 239 4340 |
| TO | Susan Davies | COMPANY | Gregory P. Joseph Law Offices LLC |
| FAX NO | 212 407 1274 | PHONE NO | 212 407 1200 |
| TO | Javier Bleichmar | COMPANY | Bernstein Litowitz Berger & Grossmann LLP |
| FAX NO | 212 554 1444 | PHONE NO | 212 554 1400 |
| TO | Karen C. Dyer | COMPANY | Boies, Schiller & Flexner LLP |
| FAX NO | 407 425 7047 | PHONE NO | 407 425 7118 |
| TO | Alan K. Cotler | COMPANY | Reed Smith LLP |
| FAX NO | 215 851 1420 | PHONE NO | 215 851 8100 |
| TO | Peter M. Saparoff | COMPANY | Mintz, Levin, Cohn, Ferris, Glovsky And Popeo P.C. |
| FAX NO | 617 542 2241 | PHONE NO | 617 542 6000 |
| FROM | Jeff E. Butler | DATE | August 19, 2005 |
| SENDER PHONE | +1 212 878 8205 | PAGES (INCL COVER) | 3 |

Please see the attached.

FOR FAX TRANSMISSION PROBLEMS, CALL +1 212 878 8374 THIS FACSIMILE TRANSMISSION IS INTENDED SOLELY FOR THE USE OF THE PERSON OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ANY REVIEW, DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF, OR THE TAKING OF ANY ACTION IN RELIANCE UPON, THIS TRANSMISSION OR ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, OR ARE UNCERTAIN ABOUT ITS PROPER HANDLING, PLEASE CALL US IMMEDIATELY (COLLECT AT +1 212 878 8374) AND RETURN THE ORIGINAL TRANSMISSION TO US BY MAIL.

NYB 1499406.1