# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>                    Plaintiffs,<br><br>      v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>                Defendants. | Civil Action No.: 04-10477 (PBS) |

## ANSWER TO THE FIRST AMENDED COMPLAINT

Defendant Dexia Bank Belgium ("Dexia"), for its answer to the First Amended Complaint dated September 15, 2006, states as follows:

1.      Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, except admits that this action is related to other actions currently pending in this District, including *Filler et al. v. Lernout, et al.*, 02-CV-10302-PBS (the "Filler Action") and *Baker et al. v. Lernout, et al.*, 02-CV-10304-PBS (the "Baker Action"), and refers to the filings in those actions for their content.

2.      Dexia denies the allegations in paragraph 2, except admits Dexia is the successor to Artesia Banking Corporation ("Artesia" or "Artesia Banking"), admits Artesia Securities, S.A. ("Artesia Securities") was a subsidiary of Artesia; admits that Banque Paribas

Belgium and Bacob Bank C.V. were predecessors to Artesia, and admits that on June 24, 2003 Dexia issued a press release, and refers to that document for its content.

3.     Dexia lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 3, except admits that the First Amended Complaint purports to be an action to recover damages.

4.     Dexia lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 4.

5.     Dexia denies the allegations in paragraph 5, except admits that Artesia provided loans to certain entities doing business with L&H, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

6.     Dexia denies the allegations in paragraph 6, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices; admits that Artesia provided loans to certain entities doing business with L&H; admits that a preliminary report was drafted at the request of the Belgian Examining Magistrate; and refers to the May 28, 2001, preliminary report referenced in this paragraph for its content.

7.     Dexia denies the allegations in paragraph 7, except admits that Artesia sought personal guarantees from Hauspie, Lernout and Willaert for certain loans, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

8.     Dexia denies the allegations in paragraph 8, except admits that Artesia provided loans to certain entities doing business with L&H, admits that Artesia entered into

default swaps in relation to two of these loans, admits that Artesia extended personal loans to Mr. Lernout, Mr. Hauspie, and Mr. Willaert, and states that it lacks knowledge as to the truth of the allegations concerning L&H's conduct and accounting practices.

9.      Dexia denies the allegations in paragraph 9, except refers to the document referenced in this paragraph for its content, and refers to Mr. Probst's deposition transcript for its content.

10.      Dexia denies the allegations in paragraph 10, except admits that Artesia Securities was a wholly-owned subsidiary of Artesia; admits that Artesia Securities prepared analyst reports concerning L&H, and refers to those reports for their content.

11.      Dexia denies the allegations in paragraph 11, except admits that Artesia sold shares of L&H stock in 2000, and refers to the documents referenced in this paragraph for their content.

12.      Dexia denies the allegations in paragraph 12, except admits that Artesia provided loans to certain entities doing business with L&H and certain officers of L&H; and admits that Artesia charged interest and fees in connection with those loans.

13.      Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, except admits that L&H filed for bankruptcy and is going through liquidation; admits that Lernout, Hauspie and Willaert were arrested by criminal authorities in Belgium; admits that Bastiaens was also arrested; and admits that L&H issued restated financial statements for 1998, 1999, and the first two quarters of 2000.

14.      Dexia denies the allegations in paragraph 14, except admits that Dexia issued a press release on June 24, 2003, and refers to that document for its content; and refers to the June 24, 2003 article referenced in this paragraph for its content.

15.     Dexia denies the allegations in paragraph 15, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the activities of the plaintiffs and their counsel.

16.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, except admits that this action purports to arise under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and the rules and regulations promulgated thereunder; that it purports to arise under §20(a) of the Exchange Act; and that it purports to arise under state law.

17.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, except admits that Plaintiffs purport to base jurisdiction on 28 U.S.C. § 1331, 28 U.S.C. § 1332, § 27 of the Exchange Act, and the principles of supplemental jurisdiction.

18.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, except admits that Plaintiffs purport that venue is proper in this District under §27 of the Exchange Act and 28 U.S.C. §1391(b).

19.     Dexia denies the allegations in paragraph 19.

20.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     Dexia denies the allegations in paragraph 22, except admits that it is a subsidiary of Dexia S.A.

23.     Dexia denies the allegations in paragraph 23, except refers to the March 31, 2001 press release of Dexia S.A. for its content, and admits that there was a merger between Artesia and Dexia.

24.     Dexia denies the allegations in paragraph 24, except admits that, prior to its acquisition by Dexia, Artesia had various subsidiaries in the United States, including Artesia Mortgage Capital Corporation, and admits that Artesia Mortgage Capital Corporation continues to conduct business under the same name although it is now owned by Dexia.

25.     Dexia denies the allegations in paragraph 25, except admits that prior to its acquisition by Dexia, Artesia had various subsidiaries in the United States, including Artesia North America.

26.     Dexia denies the allegations in paragraph 26, except admits that Artesia was part of a lending consortium that issued a loan as part of L&H's acquisition of Dictaphone; admits that in 1997 Artesia loaned money to Vasco Data Security International ("Vasco"), an L&H customer located in Illinois; and admits that Artesia acted as a placement agent for a private placement of stock for Vasco.

27.     Dexia denies the allegations in paragraph 27, except admits that prior to July 2001 Artesia Securities was a "societe anonyme", that it conducted business primarily in Belgium, that its offices were in Brussels, that it was a wholly-owned subsidiary of Artesia, and that Artesia was the reference shareholder of Artesia Securities.

28.     Dexia denies the allegations in paragraph 28, except admits that there was a merger between Artesia and Dexia, and admits that the name of Artesia Securities was changed to Dexia Securities Belgium S.A.

29.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29, except admits that L&H was based in Belgium and had United States offices in Burlington, Massachusetts; admits that L&H was listed on NASDAQ and EASDAQ; admits that L&H has filed for bankruptcy and is going through liquidation; and admits that L&H developed and licensed speech technologies, including speech recognition software.

30.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except refers to the Merger Agreement for its content.

31.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admits that Lernout was a co-founder of L&H; admits Lernout was arrested by criminal authorities in Belgium; and that Lernout was named as a defendant in the Baker and Filler actions.

32.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29, except admits that Hauspie was a co-founder of L&H; admits Hauspie was arrested by criminal authorities in Belgium; and that Hauspie was named as a defendant in the Baker and Filler actions.

33.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33, except admits that Bastiaens was arrested by U.S. officials, and that Bastiaens was named as a defendant in the Baker and Filler actions.

34.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, except admits that Willaert was arrested by criminal authorities in Belgium, and admits that Willaert was named as a defendant in the Baker and Filler actions.

35.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, except admits that Dammekens was named as a defendant in the Baker and Filler actions.

36.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, except admits that L&H was listed on NASDAQ.

37.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, except refers to the Merger Agreement for its content.

40.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40, except refers to the Merger Agreement for its content.

41.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, except admits that L&H issued a press release dated April 28, 1998, which was attached as an exhibit to its Form 6-K/A filed on or about May 26, 1998 and refers to those documents for their content.

45.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, except admits that L&H issued a press release dated July 28, 1998, which was filed with the SEC as part of a Form 6-K on or about August 5, 1998, and refers to those documents for their content.

46.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, except admits that L&H issued a press release dated October 27, 1998, which was filed with the SEC on a Form 6-K on or about October 28, 1998, and refers to those documents for their content.

47.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, except refers to L&H's 1998 20-F Annual Report filed with the SEC for its content.

49.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49, except refers to L&H's 6-K filed on or about June 1, 1999 for its content.

50.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, except admits that L&H issued a press release dated July 28, 1999, which was filed with the SEC on a Form 6-K on or about August 2, 1999, and refers to those documents for their content.

52.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, except admits that L&H issued a press release dated October 27, 1999, which was filed with the SEC on a form 6-K on or about November 3, 1999, and refers to those documents for their content.

53.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, except admits that L&H issued a press release dated February 9, 2000, which was filed with the SEC on a form 6-K/A on or about February 14, 2000, and refers to those documents for their content.

54.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.    Dexia denies the allegations in paragraph 55, except admits that Artesia made a loan to Dictation; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices, the ownership and creation of Dictation, FLV Fund's relationship to Dictation and L&H, or Dictation's accounting practices.

56.    Dexia denies the allegations in paragraph 56; except admits that Artesia made a loan to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG, or the license agreement between BTG and L&H; and refers to L&H's 1998 Annual Report on Form 20-F referenced in this paragraph for its content.

57.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

58.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, except refers to the April 7, 1999 L&H press release referenced in this paragraph for its content.

60.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, except refers to the 1998 L&H Annual Report on Form 20-F referenced in this paragraph for its content.

61.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except refers to the 1998 L&H Annual Report on Form 20-F and the 1999 10-K referenced in this paragraph for their content.

62.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, except refers to the L&H's 1997, 1998, and 1999 financial statements referenced in this paragraph for their content.

63.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64.     Dexia denies the allegations in paragraph 64; except admits that Artesia made loans to certain entities doing business with L&H and certain officers of L&H.

65.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except refers to the 1998 and 1999 L&H Annual Reports, as well as the 1997, 1998, and 1999 KPMG reports referenced in this paragraph for their content.

66.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, except refers to the American Institute of Certified Public Accountants' Guide for Financial Statement Users referenced in this paragraph for its content.

67.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67, except refers to the April 9, 1999 report by KPMG referenced in this paragraph for its content.

68.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except refers to the 1998 KPMG Audit Report, included in L&H's 1998 Annual Report on Form 20-F and L&H's Form F-3 filed on or about January 7, 2000 referenced in this paragraph for their content.

69.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69, except refers to Merger Agreement referenced in this paragraph for its content.

70.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

74.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

76.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76, except refers to the report issued by KPMG on or about April 27, 2000 referenced in this paragraph for its content.

77.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, except refers to the Merger Agreement referenced in this paragraph for its content.

78.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, except admits that L&H was listed on NASDAQ and EASDAQ.

80.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

82.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83, except admits that L&H filed for bankruptcy; admits that

certain Senior Officers of L&H were arrested on criminal charges; and admits that L&H stock is now worthless.

84.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84, except refers to the Form 10-K and Form 10-Q referenced in this paragraph for their content.

85.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85, except refers to the filings referenced in this paragraph for their content.

86.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, except refers to the August 8, 2000 article from *The Wall Street Journal* referenced in this paragraph for its content.

87.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87, except refers to the August 15, 2000 article from *The Wall Street Journal* referenced in this paragraph for its content.

88.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88, except admits that Bastiaens resigned as President and CEO of L&H on or about August 25, 2000; and admits that thereafter John Duerden became the CEO of L&H.

89.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89, except refers to the Audit Committee Report for its content.

90.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90, except refers to the September 22, 2000 article from *The Wall Street Journal* referenced in this paragraph for its content.

91.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91, except refers to the September 22 and 26, 2000 articles from *The Wall Street Journal* article referenced in this paragraph for their content.

92.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92, except refers to reports from the September 26, 2000 edition of *The Wall Street Journal* and *Bloomberg News* referenced in this paragraph for their content.

93.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, except refers to the October 18, 2000 issue of *The Wall Street Journal* referenced in this paragraph for its content.

94.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, except admits that on November 9, 2000, L&H announced that it would restate its financial statements for 1998, 1999, and the first half of 2000; and refers to the Statement of Auditing Standards No. 53 by the American Institute of Certified Public Accountants referenced in this paragraph for its content.

95.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95.

96.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96, except refers to the November 17, 2000 issue of *The Wall Street Journal* referenced in this paragraph for its content.

97.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97, except refers to the November 21, 2000 issue of *The Wall Street Journal* referenced in this paragraph for its content.

98.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98, except admits that L&H filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware on November 29, 2000; and refers to the November 30, 2000 article from *The Wall Street Journal* referenced in this paragraph for its content.

99.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99, except refers to the December 14, 2000 issue of *The Wall Street Journal* referenced in this paragraph for its content.

100.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100, except refers to the January 5, 2001 Associated Press report referenced in this paragraph for its content.

101.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101.

102.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102, except admits that on or about April 27, 2001, Lernout, Hauspie and Willaert were arrested by Belgian officials; and admits that on or about May 26, 2001, Bastiaens was arrested in the United States and later extradited to Belgium.

103.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, except refers to the Audit Committee Report referenced in this paragraph for its content.

104.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104, except refers to the Audit Committee Report referenced in this paragraph for its content.

105.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105, except refers to the Audit Committee Report referenced in this paragraph for its content.

106.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106, except refers to the September 22, November 6, and December 14, 2000 articles from *The Wall Street Journal* referenced in this paragraph for their content.

107.     Dexia denies the allegations in paragraph 107, except admits that Artesia made loans to entities doing business with L&H, and admits that Artesia entered into credit default swaps related to two of these loans.

108.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109.

110.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110.

111.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111, except refers to 17 C.F.R. §210.4-01(a)(1) for its content.

112.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112, except refers to Statement of Financial Accounting Standard (SFAS) No. 68 referenced in this paragraph for its content.

113.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, except refers to SFAS No. 68 and SOP 97-2 referenced in this paragraph for their content.

114.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114, except refers to SOP 97-2 referenced in this paragraph for its content.

115.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115.

116.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116, except refers to SFAS No. 57 referenced in this paragraph for its content.

117.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, except refers to SFAS No. 57, the Audit Committee Report, L&H's 1998 Annual Report on Form 20-F, as well as L&H's financial statements for 1997, 1998, and 1999, all referenced in this paragraph for their content.

118.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, except refers to the December 7, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

119.    Dexia denies the allegations in paragraph 119, except admits that Artesia's predecessors provided financing to Dictation Consortium.

120.    Dexia denies the allegations in paragraph 120, except admits that Artesia's predecessors provided financing to Dictation Consortium, and refers to the internal Artesia Banking documents referenced in this paragraph for their content.

121.    Dexia denies the allegations in paragraph 121, except refers to the document quoted for its content.

122.    Dexia denies the allegations in paragraph 122, except refers to the Artesia Banking loan files referenced in this paragraph for their content; refers to U.S. GAAP for its content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

123.    Dexia denies the allegations in paragraph 123, except admits that Artesia's predecessors provided financing to Dictation Consortium, and refers to the internal Artesia Banking memorandum dated June 19, 1997 for its content.

124.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124.

125.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125, except refers to the internal Artesia Banking document referenced in this paragraph for its content.

126.    Dexia denies the allegations in paragraph 126, except admits that Artesia's predecessor provided financing to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG; and refers to the December 7, 2000 edition of *The Wall Street Journal* for its content.

127.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127.

128.    Dexia denies the allegations in paragraph 128, except admits that Artesia's predecessor provided financing to BTG, and refers to the Artesia Banking credit proposal referenced in this paragraph for its content.

129.    Dexia denies the allegations in paragraph 129, except admits that Artesia's predecessor provided financing to BTG, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

130.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130.

131.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131.

132.    Dexia denies the allegations in paragraph 132, except refers to *The Wall Street Journal* article quoted in this paragraph for its content.

133.    Dexia denies the allegations in paragraph 134, except admits that Artesia loaned approximately $6 million to Radial on September 29, 1998; admits that Radial transferred the funds to the Slavic Development Company N.V., the Farsi Development Company N.V., and the Bahassa Development Company N.V.; and states that it lacks knowledge or information sufficient to form a belief  as to the truth of the allegations concerning the use of the funds by the Slavic, Farsi, and Bahassa LDCs or L&H's accounting practices.

134.    Dexia denies the allegations in paragraph 134, except admits that there is a September 21, 1999 e-mail referenced in this paragraph and refers to that document for its content; and refers to the preliminary report referenced in this paragraph for its content.

135.    Dexia denies the allegations in paragraph 135, except refers to the September 21, 1999 e-mail referenced in this paragraph for its content, and refers to the preliminary report referenced in this paragraph for its content.

136.    Dexia denies the allegations in paragraph 136, except admits that there is a September 21, 1999 e-mail referenced in this paragraph and refers to that document for its content.

137.    Dexia denies the allegations in paragraph 137, except refers to the internal Artesia Banking memorandum dated January 31, 2000 referenced in this paragraph for its content.

138.    Dexia denies the allegations in paragraph, except admits that Artesia entered into credit default swaps with L&H officers relating to the LIC and Radial loans, and refers to the April 21, 1999 memorandum and the other documents referenced in this paragraph for their content.

139.    Dexia denies the allegations in paragraph 139, except refers to the February 10, 2000 interoffice memorandum and the February 14, 2000 interoffice memorandum referenced in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

140.    Dexia denies the allegations in paragraph 140, except refers to the loan agreement cited for its content.

141.    Dexia denies the allegations in paragraph 141, except admits that on or about December 22, 1998, Artesia made a loan to LIC for approximately $6 million; admits that LIC transferred the funds to development companies for the Greek, Hungarian, Polish and Czech

languages; admits that these LDCs used the funds to purchase licenses from L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

142.    Dexia denies the allegations in paragraph 142, except refers to the internal Artesia Banking credit proposal for the LIC loan referenced in this paragraph for its content.

143.    Dexia denies the allegations in paragraph 143, except refers to the preliminary report and the internal Artesia Banking documents referenced in this paragraph for their contents.

144.    Dexia denies the allegations in paragraph 144, except admits that on or about January 4, 1999 Artesia entered into credit default swaps relating to the LIC loan; refers to the minutes of Artesia Banking's credit committee referenced in this paragraph for their content; and refers to the December 29, 1998 e-mail from Jan Van der Ven referenced in this paragraph for its content.

145.    Dexia denies the allegation in paragraph 145, except refers to the initial loan agreement for its content.

146.    Dexia denies the allegations in paragraph 146, except admits that on or about June 17, 1999 Artesia Banking and LIC amended the December 22, 1998 agreement with LIC; refers to the June 17, 1999 amendment referenced in this paragraph for its content; and refers to the June 15, 1999 e-mail by P. Rabaey referenced in this paragraph for its content.

147.    Dexia denies the allegations in paragraph 147, except refers to the January 30, 2000 audit report referenced in this paragraph for its content.

148.    Dexia denies the allegations in paragraph 148, except admits that it entered into credit default swaps that were related to the Radial and LIC loans.

149.    Dexia denies the allegations in paragraph 149, except admits that Artesia Banking made a loan to Radial on or about September 29, 1998; admits that the loan was due June 30, 1999; admits that Artesia extended the loans to December 15, 1999; and admits that Artesia entered into credit default swaps in relation to the Radial loan.

150.    Dexia denies the allegations in paragraph 150, except admits that Artesia Banking made a loan to LIC on or about December 22, 1998; admits that the loan was due June 30, 1999; admits that the loan was extended to December 15, 1999; and admits that Artesia entered into credit default swaps in relation to the LIC loan.

151.    Dexia denies the allegations in paragraph 151, except admits that Artesia Banking extended the Radial and LIC loans until December 15, 1999, and refers to the document quoted for its content.

152.    Dexia denies the allegations in paragraph 152, except refers to the January 20, 2000 audit report referenced in this paragraph for its contents.

153.    Dexia denies the allegations in paragraph 153, except refers to the January 31, 2000 memorandum referenced in this paragraph for its content.

154.    Dexia denies the allegations in paragraph 154, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of the LDF or the funding from Mercator, or L&H's accounting practices.

155.    Dexia denies the allegations in paragraph 155, except refers to the March, 1999 fax referenced in this paragraph for its content.

156.    Dexia denies the allegations in paragraph 156, except admits that Artesia was requested to grant a $20 million loan to LDF; and refers to the June 21, 1999 e-mail and the preliminary report referenced in this paragraph for their content.

157.    Dexia denies the allegations in paragraph 157, except refers to Alain Probst's deposition transcript and the credit committee's minutes referenced in this paragraph for their content; admits that a credit proposal for a $20 million loan to LDF was submitted to Artesia Banking's Credit Committee; admits that on June 25, 1999 Artesia granted a personal $20 million line of credit to Lernout, Hauspie and Willaert; and admits that 650,000 shares of L&H were pledged as collateral.

158.    Dexia denies the allegations in paragraph 158, except refers to Artesia Banking's internal documents and the June 25, 1999 loan agreement between Artesia and the Principal Officers referenced in this paragraph for its content.

159.    Dexia denies the allegations in paragraph 159, except admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices; and refers to L&H's June 30, 1999, Form 10-Q and December 31, 1999, Form 10-K referenced in this paragraph for their content.

160.    Dexia denies the allegations in paragraph 160, except admits that the personal loan to Lernout, Hauspie and Willaert was due October 10, 1999; refers to the internal memorandum by B. Ferrand dated September 7, 1999 quoted in this paragraph (although not cited) for its content; admits that repayment of Artesia's loans to Radial, LIC, Lernout, Hauspie and Willaert was received in January, 2000; and admits that the loans were booked as having been repaid in December 2000.

161.    Dexia denies the allegations in paragraph 161, except refers to Artesia Banking's written response to L&H's auditors, KPMG, dated on or about March 17, 2000, which was referenced in this paragraph, for its content.

162.    Dexia denies the allegations in paragraph 162, except admits that Artesia made a $20 million personal loan to Lernout, Hauspie, and Willaert; admits that Artesia entered into credit default swaps with Lernout and Hauspie for two loans to entities doing business with L&H; admits that repayment of Artesia's loans to Radial, LIC, Lernout, Hauspie and Willaert was received in January, 2000; admits that the loans to Radial, LIC, Lernout, Hauspie, and Willaert were booked as having been repaid in December, 2000; refers to internal audit reports referenced in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

163.    Dexia denies the allegations in paragraph 163, except refers to the internal Artesia documents and the document containing the interim conclusions of the experts retained by the Belgian Prosecutors referenced in this paragraph for their content.

164.    Dexia denies the allegations in paragraph 164, except refers to the March 8, 1999 memorandum referenced in this paragraph for its content; and admits that Bernard Mommens was an officer and in-house legal counsel of Artesia.

165.    Dexia denies the allegations in paragraph 165.

166.    Dexia denies the allegations in paragraph 166, except admits that Artesia provided financing to LHIC; admits that LHIC was an investment fund and that it was founded by Hauspie and Lernout in 1998; and states that it lacks knowledge or information sufficient to

form a belief as to the truth of the allegations concerning additional details regarding the formation of LHIC, LHIC's use of loan funds, or the management structure of LHIC.

167.    Dexia denies the allegations in paragraph 167, except admits that Artesia participated in the extension of a $160 million line of credit to LHIC in or about December, 1998, of which $55 million would be provided by Artesia; admits that Artesia amended its credit facility with LHIC in April 2000 to increase the funds available to LHIC by $25 million, and refers to the Artesia Banking documents referenced in this paragraph for their content.

168.    Dexia denies the allegations in paragraph 168, except admits that the funds made available to LHIC were secured by pledges of L&H stock, and refers to the June 2000 Report referenced in this paragraph for its content.

169.    Dexia denies the allegations in paragraph 169, except admits that Nico Willaert approached Artesia in 2000 to obtain a $25 million loan to Gaston Bastiaens; admits that Artesia extended the $25 million loan to Gaston Bastiaens; admits that Gaston Bastiaens used the loan to purchase L&H stock; and refers to the discovery documents referenced in this paragraph for their content.

170.    Dexia denies the allegations in paragraph 170.

171.    Dexia denies the allegations in paragraph 171, except admits that Artesia Securities was a subsidiary of Artesia Banking.

172.    Dexia denies the allegations in paragraph 172, except admits that analyst reports issued by Artesia Securities are not publicly available on the databases that typically contain such reports.

173.    Dexia denies the allegations in paragraph 173, except admits that Pierre-Paul Verelst was an analyst for Artesia Securities; admits that Verelst issued a report concerning L&H on May 19, 1999, and refers to that report for its content.

174.    Dexia denies the allegations in paragraph 174.

175.    Dexia denies the allegations in paragraph 175, except admits that Verelst issued a report concerning L&H on July 13, 1999, and refers to that report for its content.

176.    Dexia denies the allegations in paragraph 176, except admits that Artesia extended a $20 million loan to Lernout, Hauspie, and Willaert in June 1999.

177.    Dexia denies the allegations in paragraph 177, except admits that Verelst issued a report concerning L&H on July 29, 1999, and refers to that report for its content.

178.    Dexia denies the allegations in paragraph 178, except refers to the July 13, 1999 report for its content.

179.    Dexia denies the allegations in paragraph 179, except refers to the July 13, 1999 report for its content.

180.    Dexia denies the allegations in paragraph 180, except refers to the July 13, 1999 report for its content.

181.    Dexia denies the allegations in paragraph 181, except admits that Verelst issued a report concerning L&H on September 15, 1999, and refers to that report for its content.

182.    Dexia denies the allegations in paragraph 182, except refers to the September 15, 1999 report for its content.

183.    Dexia denies the allegations in paragraph 183, except refers to the September 15, 1999 report for its content.

184.    Dexia denies the allegations in paragraph 184.

185.    Dexia denies the allegations in paragraph 185, except admits that Verelst issued a report concerning L&H on October 8, 1999, and refers to that report for its content.

186.    Dexia denies the allegations in paragraph 186, except refers to the October 8, 1999 report for its content.

187.    Dexia denies the allegations in paragraph 187.

188.    Dexia denies the allegations in paragraph 188, except admits that Verelst issued a report concerning L&H on October 28, 1999, and refers to that report for its content.

189.    Dexia denies the allegations in paragraph 189, except refers to the October 28, 1999 report for its content.

190.    Dexia denies the allegations in paragraph 190.

191.    Dexia denies the allegations in paragraph 191, except admits that Verelst issued a report concerning L&H on November 18, 1999, and refers to that report for its content.

192.    Dexia denies the allegations in paragraph 192, except refers to the November 18, 1999 report for its content.

193.    Dexia denies the allegations in paragraph 193.

194.    Dexia denies the allegations in paragraph 194, except admits that Verelst issued reports concerning L&H on December 28, 1999, and January 10, 2000, and refers to those reports for their content.

195.    Dexia denies the allegations in paragraph 195, except admits that Artesia owned 100% of the shares of Artesia Securities throughout the time period that Verelst is alleged to have issued analyst reports; and admits that Artesia was the reference shareholder of Artesia Securities.

196.    Dexia denies the allegations in paragraph 196, except refers to the internal Artesia Banking documents referenced in this paragraph for their content.

197.    Dexia denies the allegations in paragraph 197, except admits that Rene Avonts, a member of Artesia's Management Committee, was the ultimate head of Artesia Securities.

198.    Dexia denies the allegations in paragraph 198, except admits that Artesia provided the initial funding for Artesia Securities; and admits that Artesia Securities was located in a building also used by Artesia.

199.    Dexia denies the allegations in paragraph 199, except admits that Verelst's e-mail was pierre-paul_verelst@artesia.com; and admits that Artesia Securities employees shared a common e-mail domain name with employees of Artesia.

200.    Dexia denies the allegations in paragraph 200, except refers to the May 7, 1999 memorandum referenced in this paragraph for its content.

201.    Dexia denies the allegations in paragraph 201.

202.    Dexia denies the allegations in paragraph 202.

203.    Dexia denies the allegations in paragraph 203, except refers to the document quoted in this paragraph for its content.

204.    Dexia denies the allegations in paragraph 204, except admits that Artesia granted a bank guarantee to the shareholders of Heitmann International in connection with L&H's acquisition of Heitmann International.

205.    Dexia denies the allegations in paragraph 205.

206.    Dexia denies the allegations in paragraph 206, except admits that Artesia conditioned its participation in the credit facility upon the repayment of the Radial loan, the LIC

loan, and the $20 million line of credit to Lernout, Hauspie, and Willaert; refers to the document quoted in this paragraph for its content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's planned financing for the Dragon acquisition.

207.    Dexia denies the allegations in paragraph 207.

208.    Dexia denies the allegations in paragraph 208, except admits that repayment of Artesia's loans to Radial, LIC, Lernout, Hauspie and Willaert was received in January, 2000; and admits that the Radial, LIC, Lernout, Hauspie and Willaert loans were booked as having been repaid in December, 2000.

209.    Dexia denies the allegations in paragraph 209, except admits that Artesia Banking was one of a number of European banks that provided financing to L&H to refinance the existing debt of Dictaphone; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning additional details of L&H's acquisition of Dragon and Dictaphone Corporation; and refers to the internal Artesia Banking documents referenced in this paragraph for their content.

210.    Dexia denies the allegations in paragraph 210, except admits that in or around April, 2000, the members of the bank syndicate gave final approval to an agreement to provide L&H with a $430 million credit facility; admits that Artesia Banking committed to provide $50 million under the credit facility; and refers to Artesia Banking's documents, including the credit proposal for the Club Deal, referenced in this paragraph for their content.

211.    Dexia denies the allegations in paragraph 211, except refers to the Club Deal loan agreement referenced in this paragraph for its content.

212.    Dexia denies the allegations in paragraph 212, except refers to the Club Deal credit proposal, the May 19, 2000 report, the December, 2000 memorandum, and the August 29, 2003 memorandum referenced in this paragraph for their content.

213.    Dexia denies the allegations in paragraph 213, except states that it lacks the knowledge or information sufficient to form a belief as to the truth of the allegations concerning the costs involved in the Dragon acquisition or the Plaintiffs' ability to determine the source of the cash used by L&H to pay costs associated with the Dragon transaction.

214.    Dexia denies the allegations in paragraph 214.

215.    Dexia denies the allegations in paragraph 215, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged misrepresentations by L&H and "other participants".

216.    Dexia denies the allegations in paragraph 216, except admits that Artesia Banking made loans to entities doing business with L&H; admits that Artesia entered into credit default swaps with officers of L&H in relation to two of the loans made to entities doing business with L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

217.    Dexia denies the allegations in paragraph 217, except admits that on June 7, 2000, L&H stock closed at $43.125 per share; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the consideration accepted by the Dragon Parties in exchange for their combined interests in Dragon; and refers to the Merger Agreement for its content.

218.    Dexia denies the allegations in paragraph 218, except admits that L&H stock dropped from $36.99 to $29.81 on August 8, 2000, and that L&H stock closed at $26.75 on

August 9, 2000; and refers to the August 8, 2000 article in *The Wall Street Journal* referenced in this paragraph for its content.

219.    Dexia denies the allegations in paragraph 219, except admits that Bastiaens resigned as CEO of L&H on or about August 25, 2000; admits that L&H stock closed at $30.06 on August 25, 2000; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting, or investors' confidence in L&H's reporting.

220.    Dexia denies the allegations in paragraph 220, except admits that the SEC announced that it would investigate L&H's financial statements on or about September 20, 2000; admits that the value of L&H stock declined on September 20, 2000 and September 21, 2000 to close at $15.13; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning variations in L&H's share price, L&H's accounting, or investors' confidence in L&H's reporting.

221.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 221, except denies that Artesia engineered fraudulent LDC transactions.

222.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 222, except denies that Artesia engineered fraudulent LDC transactions or played an integral role in those transactions.

223.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 223, except refers to the October 26, 2000 issue of *The Wall Street Journal* for its content; and denies that Artesia engineered fraudulent LDC transactions.

224.     Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 224, except admits that L&H announced it would have to restate its financial results for 1998, 1999, and the first half of 2000 on November 9, 2000; and denies that Artesia engineered the fraudulent LDC transactions.

225.     Dexia denies the allegations in paragraph 225.

226.     Dexia denies the allegations in paragraph 226.

227.     Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 227, except denies that Artesia or Artesia Securities knowingly participated in a fraudulent scheme, and denies that Artesia or Artesia Securities made any materially false or misleading representations.

228.     Dexia denies the allegations in paragraph 228.

229.     Dexia denies the allegations in paragraph 229, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Dragon Parties ability to terminate the Merger Agreement.

230.     Dexia denies the allegations in paragraph 230, except admits that L&H securities are now worthless.

231.     Dexia denies the allegations in paragraph 231.

232.     Dexia denies the allegations in paragraph 232, except refers to the November 24, 2000 letter, the Audit Committee Report, and *The Wall Street Journal* articles referenced in this paragraph for their content.

233.     Dexia denies the allegations in paragraph 233, except admits that in or around November 2000, CBF sought information from Artesia Banking concerning its relationship with L&H; and refers to the Artesia Banking documents obtained in discovery, Artesia Banking's

responses to the CBF, and the January 2000 findings of the Internal Audit Department referenced in this paragraph for their content.

234.    Dexia denies the allegations in paragraph 234, except refers to the March 16, 2001 article in *L'Echo* referenced in this paragraph for its content.

235.    Dexia denies the allegations in paragraph 235, except admits that it actively pursued claims in the L&H bankruptcy proceeding in both the U.S. and in Belgium.

236.    Dexia denies the allegations in paragraph 236, except refers to the June 24, 2003 article in *The Belgian Financial Times* referenced in this paragraph for its content.

237.    Dexia denies the allegations in paragraph 237, except incorporates the responses set forth above.

238.    Dexia denies the allegations in paragraph 238, except admits that Plaintiffs purport to bring this action for violations of § 10(b) of the 1934 Act, and Rule 10b-5.

239.    Dexia denies the allegations in paragraph 239.

240.    Dexia denies the allegations in paragraph 240.

241.    Dexia denies the allegations in paragraph 241.

242.    Dexia denies the allegations in paragraph 242.

243.    Dexia denies the allegations in paragraph 243.

244.    Dexia denies the allegations in paragraph 244.

245.    Dexia denies the allegations in paragraph 245.

246.    Dexia denies the allegations in paragraph 246, except incorporates the responses set forth above.

247.    Dexia denies the allegations in paragraph 247.

248.    Dexia denies the allegations in paragraph 248.

249.    Dexia denies the allegations in paragraph 249.

250.    Dexia denies the allegations in paragraph 250.

251.    Dexia denies the allegations in paragraph 251.

252.    Dexia denies the allegations in paragraph 252.

253.    Dexia denies the allegations in paragraph 253, except incorporates the responses set forth above.

254.    Dexia denies the allegations in paragraph 254.

255.    Dexia denies the allegations in paragraph 255.

256.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 256; except admits that L&H announced its intention to restate its financial results for 1998, 1999 and the first two quarters of 2000.

257.    Dexia denies the allegations in paragraph 257, except admits that Artesia Banking extended loans to entities doing business with L&H; admits that Artesia Banking entered into credit default swaps with officers of L&H in relation to two loans to entities doing business with L&H; and admits that Artesia Banking made a personal loan for $20 million to Lernout, Hauspie and Willaert.

258.    Dexia denies the allegations in paragraph 258, except admits that Artesia Banking agreed to loan approximately $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that Artesia Banking agreed to loan approximately $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that Artesia Banking entered into an addendum to the LIC loan agreement, and refers to that document for its content; admits that Artesia Banking extended a $20 million personal loan to

Lernout, Hauspie and Willaert; admits that repayment of Artesia's loans to Radial, LIC, Lernout, Hauspie and Willaert was received in January, 2000; admits that the Radial, LIC, Lernout, Hauspie and Willaert loans were booked as having been repaid in December, 2000; refers to the documents cited in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie, or Willaert, and as to L&H's accounting practices.

259.    Dexia denies the allegations in paragraph 259, except refers to the Artesia Banking internal documents referenced in this paragraph for their content.

260.    Dexia denies the allegations in paragraph 260.

261.    Dexia denies the allegations in paragraph 261.

262.    Dexia denies the allegations in paragraph 262, except admits that Artesia extended a loan to Bastiaens.

263.    Dexia denies the allegations in paragraph 263, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding the information that the Dragon Parties relied upon when entering the Merger with L&H.

264.    Dexia denies the allegations in paragraph 264, except incorporates the responses set forth above.

265.    Dexia denies the allegations in paragraph 265.

266.    Dexia denies the allegations in paragraph 266.

267.    Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 267; except admits that L&H announced its intention to restate its financial results for 1998, 1999 and the first two quarters of 2000.

268.    Dexia denies the allegations in paragraph 268, except admits that Artesia

Banking extended loans to entities doing business with L&H; admits that Artesia Banking

entered into credit default swaps with officers of L&H in relation to two loans to entities doing

business with L&H; and admits that Artesia Banking made a personal loan for $20 million to

Lernout, Hauspie and Willaert.

269.    Dexia denies the allegations in paragraph 269, except admits that Artesia

Banking agreed to loan approximately $6 million to Radial; admits that Artesia entered into

credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits

that Artesia Banking agreed to loan approximately $6 million to LIC; admits that Artesia entered

into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that

Artesia Banking entered into an addendum to the LIC loan agreement, and refers to that

document for its content; admits that Artesia Banking extended a $20 million personal loan to

Lernout, Hauspie and Willaert; admits that repayment of Artesia's loans to Radial, LIC, Lernout,

Hauspie and Willaert was received in January, 2000; admits that the Radial, LIC, Lernout,

Hauspie and Willaert loans were booked as having been repaid in December, 2000; refers to the

documents cited in this paragraph for their content; and states that it lacks knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the use of

funds by L&H, Lernout, Hauspie, or Willaert, and as to L&H's accounting practices.

270.    Dexia denies the allegations in paragraph 270, except refers to the Artesia

Banking internal documents referenced in this paragraph for their content.

271.    Dexia denies the allegations in paragraph 271.

272.    Dexia denies the allegations in paragraph 272.

273.    Dexia denies the allegations in paragraph 273, except admits that Artesia extended a loan to Bastiaens.

274.    Dexia denies the allegations in paragraph 274, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding the information that the Dragon Parties relied upon when entering the Merger with L&H.

## ADDITIONAL DEFENSES

1.    Plaintiffs' claims are barred wholly or in part by the applicable statute of limitations.

2.    Plaintiffs lack standing to maintain some or all of their claims.

3.    Plaintiffs' claims are barred wholly or in part for lack of personal jurisdiction over Dexia.

4.    Plaintiffs' claims are barred wholly or in part because Plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

5.    Plaintiffs' claims are barred wholly or in part because the decline in the market price of the L&H securities purchased by Plaintiffs resulted wholly or in part from factors other than the alleged conduct of Dexia.

6.    Plaintiffs' claims are barred wholly or in part because the alleged damages were not proximately caused by Dexia.

7.    Plaintiffs' claims are barred wholly or in part because the liability of all defendants and other responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

8.    Any recovery for damages allegedly incurred by Plaintiffs is subject to offset in the amount of any tax benefits or other benefits actually received through their investments.

9.      Plaintiffs' claims are barred wholly or in part because Plaintiffs were expressly advised about the material facts and risks concerning their investments through meaningful cautionary statements contained in public filings of L&H.

10.     Plaintiffs' claims are barred wholly or in part because of lack of subject matter jurisdiction.

11.     Plaintiffs' claims are barred wholly or in part on the basis of the doctrines of laches, res judicata, and collateral estoppel.

12.     Plaintiffs claims are barred wholly or in part because the Complaint fails to state a claim upon which relief can be granted.

13.     Plaintiffs' claims are barred wholly or in part because the Complaint fails to allege fraud with particularity.

14.     Plaintiffs' claims are barred wholly or in part because Artesia acted at all times in good faith.

15.     Plaintiffs' claims are barred wholly or in part because Artesia did not directly or indirectly induce Artesia Securities or Pierre-Paul Verelst to issue the allegedly false and misleading analyst reports.

16.     Plaintiffs' claims are barred wholly or in part because Pierre-Paul Verelst reasonably believed the opinions expressed in his analyst reports at the time they were issued.

17.     Plaintiffs' claims are barred wholly or in part because Artesia Securities analyst reports were not disseminated to the public.

18.     Plaintiffs' claims are barred wholly or in part because the fraud-on-the-market presumption does not apply.

19.     Plaintiffs' claims are barred wholly or in part because Artesia did not have a fiduciary duty to L&H or its shareholders.

20.     Plaintiffs' claims are barred wholly or in part because statements in Artesia Securities analyst reports are non-actionable statements of opinion or puffery.

Dated:  December 1, 2006

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

By:   /s/  Breton Leone-Quick
          Peter M. Saparoff (BBO#441740)
          Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel:     (617) 542-6000
Fax:     (617) 542-2241

CLIFFORD CHANCE US LLP
     James B. Weidner
     Thomas Teige Carroll
31 West 52nd Street
New York, NY 10019-6131
Tel:     (212) 878-8000
Fax:     (212) 878-8375

*Counsel for Dexia Bank Belgium*

**Certificate of Service**

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 1, 2006.

    /s/  Breton Leone-Quick                              Dated:  December 1, 2006