# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10501 (PBS) |

**PLAINTIFFS' RESPONSE TO**
**(1) THE COURT'S NOVEMBER 29, 2006 REQUEST, AND**
**(2) DEXIA'S OBJECTION TO MAGISTRATE JUDGE'S NOVEMBER 6, 2006**
<u>**ORDER ON PLAINTIFFS' COUNSEL'S MOTION FOR PROTECTIVE ORDER**</u>

Plaintiffs in each of the above-captioned actions respectfully submit this response to: (1) the Court's November 29, 2006 request that Plaintiffs inform the Court whether they intend to rely on any investigation conducted after August 19, 2001 in responding to Dexia Bank Belgium's ("Dexia's") statute of limitations defense, and (2) Dexia's objection to the portion of Magistrate Judge Collings' order dated November 6, 2006 that limits Dexia's deposition examination of Plaintiffs' counsel to facts concerning investigative efforts undertaken prior to August 19, 2001. For the reasons set forth below, the November 6, 2006 Order is not "clearly erroneous or contrary to law" (Fed. R. Civ. P. 72(a)) and should be affirmed in all respects.

**I.     PLAINTIFFS' RESPONSE TO THE COURT'S NOVEMBER 29, 2006 REQUEST**

The short answer to the question recently posed by the Court is that at this time, Plaintiffs cannot preclude the possibility that they will rely upon their post-August 19, 2001 investigation – including pointing to documents already produced to Dexia and the investigative efforts detailed in Plaintiffs' interrogatory responses – in order to rebut Dexia's statute of limitations defense. The only reason Plaintiffs cannot answer the Court's inquiry unequivocally is that Dexia has repeatedly refused to disclose the purported basis for its limitations defense, including denying Plaintiffs the opportunity to depose a Rule 30(b)(6) witness concerning the facts underlying that defense,[1] and providing incomplete or vague answers to interrogatories.[2]

---

[1] In resisting the production of a Rule 30(b)(6) witness, Dexia has asserted that "the facts that Dexia contends placed Plaintiffs on notice that they had a valid claim [against Dexia] for a violation of Section 10(b)" constitute Dexia's counsel's "arguments and trial strategy" and "attorney mental impressions" that are protected from disclosure by Rule 26(b)(3). *See* accompanying Declaration of Patrick T. Egan ("Egan Decl."), Exhibits A and B.

[2] Plaintiffs have no less than three sets of interrogatories seeking information concerning when and how a reasonably diligent investor should have discovered facts sufficient to state a claim against Dexia for violation of Section 10(b). *See* Egan Decl. Ex. C, D, and E. Dexia has variously: refused to respond to these interrogatories, on the ground that they call for "a legal opinion or an opinion on a mixed question of law and fact" (Egan Decl. Ex. E at 27-29); or declined to respond, on the ground of insufficient information (Egan Ex. C at 7); or provided vague answers based on general, public information about Artesia that contained no information that there was anything illegal, improper or fraudulent about the bank's conduct.

2

The reason for Dexia's cagey conduct is clear. The vast record developed in the course of discovery reveals no basis for Dexia's limitations defense. As a result, Dexia seeks to embark on a fishing expedition into the thought processes and actions of Plaintiffs' counsel during a time period irrelevant to Dexia's purported defense in a vain hope of unearthing some facts that support Dexia's illogical assertion that Plaintiffs should have been aware *before* August 19, 2001 of fraudulent conduct Dexia claims never occurred.[3]

The fact that Dexia has all of the fruits of Plaintiffs' investigatory efforts in its possession further bolsters the conclusion that it is not entitled to the unprecedented relief it seeks. Plaintiffs have produced to Dexia all discoverable information uncovered by Plaintiffs during their investigation, including all documents produced in discovery irrespective of when the document was created or when Plaintiffs discovered it.[4] Thus, to the extent Dexia believes that Plaintiffs should have discovered any of those documents, or any of the facts discoverable from those documents, prior to August 19, 2001, it has all that it needs in its possession already.[5] In light of

---

[3] Dexia does not question that the work product doctrine outlined in Fed. R. Civ. P. 26(b)(3) would normally insulate Plaintiffs' counsel from deposition. Under Rule 26(b)(3), even fact work product may be discovered only if the opposing party demonstrates a "substantial need" for the requested information.

[4] Plaintiffs have already provided Dexia with virtually all of the documents concerning the investigation undertaken by Plaintiffs' counsel in that time frame, including substantial interrogatory disclosures concerning counsel's investigation and the production of numerous documents obtained by Plaintiffs from various sources. In particular, Plaintiffs have responded fully to Dexia's requests for discovery concerning Plaintiffs' counsel's investigation of potential claims against Dexia, including by producing documents obtained after August 19, 2001, and by providing detailed responses to Dexia's interrogatories concerning "all actions taken" as part of Plaintiffs' investigation of potential claims against Dexia – including actions taken after August 19, 2001. Plaintiffs have produced to Dexia all documents produced by any party, all deposition transcripts and exhibits and all written discovery requests and responses from *In re Lernout & Hauspie Sec. Litig.*, 00-11589, and related actions. Plaintiffs have only withheld a small number of opinion work product documents pre-August 19, 2001. Dexia did not challenge Magistrate Collings' Order approving Plaintiffs' decision to withhold those documents from Dexia.

[5] Throughout this litigation, Dexia has repeatedly invoked the mantra that, although Plaintiffs obtained over 1.8 million pages of documents related to the L&H fraud by criss-crossing the Atlantic to seek every imaginable source of information regarding that fraud, Plaintiffs' document production reveals that Plaintiffs did not undertake any effort to obtain information relevant to potential claims against Dexia. Notably, Dexia suggests no source Plaintiffs could reasonably have been expected to obtain prior to August 19, 2001 that revealed information sufficient to establish securities fraud claims against Dexia. Dexia also omits from its analysis any discussion of its substantial affirmative efforts to conceal its fraudulent conduct. *See* Class' Fourth Amended Complaint at ¶¶ 102-28; 142-48.

3

those facts, Dexia's rank speculation that Plaintiffs' counsel might have done something after August 19, 2001 that would reveal that they should have done something else prior to that date can hardly be characterized as a showing of substantial need for a deposition of Plaintiffs' counsel regarding these highly protected facts.

Simply, Plaintiffs cannot predict what Dexia will argue at summary judgment or trial to support its affirmative statute of limitations defense. Absent meaningful disclosure concerning the nature of Dexia's statute of limitations defense, Plaintiffs cannot determine at this time whether it will be necessary for them to rely on their investigation conducted after August 19, 2001 in order to respond to that defense.

## II.  DEXIA'S MOTION IS AN UNTIMELY, IMPERMISSIBLE EFFORT TO RELITIGATE ISSUES THAT THE COURT DECIDED IN ITS DECEMBER 2005 ORDER

Pursuant to Fed. R. Civ. P. 72(a), objections to a Magistrate Judge's nondispositive order must be filed within ten days of service of the order. Rule 72(a) expressly provides that "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."

These principles preclude the relief Dexia now seeks because Magistrate Judge Collings has twice previously denied requests for post-August 2001 discovery. First, in September 2005, Dexia filed a motion seeking the disclosure of additional documents concerning Plaintiffs' investigation of their claims related to the massive fraud perpetrated at Lernout & Hauspie Speech Products, N.V. ("L&H"). At that time, Dexia sought – as it now does again – discovery of Plaintiffs' entire work product files (opinion and non-opinion) dated, created, sent or received before or after August 19, 2001. On December 22, 2005, Magistrate Judge Collings issued an order characterizing Dexia's request as "vastly overbroad," and limited discovery to Plaintiffs'

4

*non-opinion* work product prior to August 19, 2001.  Notably, the Court rejected Dexia's request for *any* work product created after August 19, 2001.

Undaunted by that ruling, Dexia filed an identical motion in March 2006, without any explanation for its effort to re-litigate issues the Court had already resolved.  As a result, in a July 13, 2006 Order, Magistrate Judge Collings *again* rejected Dexia's efforts to obtain discovery concerning Plaintiffs' post-August 19, 2001 investigative efforts, stating that: "[t]he Court adheres to the parameters it previously set respecting discovery on this issue."

Critically, Dexia never filed a motion seeking reconsideration of either of these Orders.  Nor did Dexia seek to obtain Your Honor's review of those Orders.  Thus, Rule 72(a) unequivocally requires the denial of Dexia's motion, which represents yet another attempt to extend the scope of discovery permitted by Magistrate Judge Collings.  *E.g.*, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3-4 (1st Cir. 1999) (failure of a party to file objections to a Magistrate Judge's ruling within the ten days allowed by Rule 72(a) results in the forfeiture of the right to seek the reversal of that ruling, even on appeal); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964-65 (1st Cir. 1997) (same).[6]

### III. THE COURT CORRECTLY DECIDED THAT DEXIA IS NOT ENTITLED TO EXAMINE PLAINTIFFS' COUNSEL CONCERNING THEIR POST-AUGUST 19, 2001 ACTIVITIES

#### A. The Controlling Standards That Govern Dexia's Purported Statute Of Limitations Defense

The blackletter principles applicable to Dexia's purported statute of limitations defense dictate that Magistrate Judge Collings was correct in denying Dexia discovery of facts related to investigative efforts undertaken by Plaintiffs' counsel after August 19, 2001.  The Court has

---

[6] Parenthetically, it is worth noting that the supposed statute of limitations "defense" will never see the light of day at trial.  Dexia would be hard pressed indeed to explain to a jury the entirely inconsistent arguments that (1) Plaintiffs should have been aware of a massive fraud perpetrated by Dexia, but (2) Dexia actually engaged in no fraudulent conduct whatsoever.

already determined that the Sarbanes-Oxley Act of 2002 ("SOX") provides the limitations period applicable to Plaintiffs' claims for violation of § 10(b) of the Securities and Exchange Act of 1934. *Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 336 (D. Mass. 2005) (ruling that the "longer statute of limitations period provided by Sarbanes-Oxley applies"). Thus, Plaintiffs' claims are timely as long as they were commenced within the earlier of: "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b).

Dexia's current argument implicates the shorter of these periods – SOX's two years statute of limitations, which runs from "the discovery of the facts constituting the violation." The First Circuit's decision in *Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002), which concerned the similarly worded, but shorter, limitations periods applicable to § 10(b) claims prior to the enactment of SOX, provides the controlling standards regarding when SOX's two-year limitations period commences. *Id.* Under *Young*, the limitations period "does not begin to run 'until the time when the plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains.'" *Id.* at 8 (quoting *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 129 F.3d 222, 224 (1st Cir. 1997)).

The First Circuit has established a two-step process for determining when plaintiffs should discover the fraud alleged in a complaint. In the first step of that process, the jury (or the court in the rare circumstances where this factual determination is so obvious that it can be made as a matter of law) must determine whether the defendant has satisfied its burden of demonstrating that there were sufficient "storm warnings" of fraud to cause a reasonable investor to investigate the possibility of fraudulent conduct.[7] If the defendant satisfies that burden, the

---

[7] *Young*, 305 F.3d at 8 ("Because sufficient storm warnings would lead a reasonable investor to check carefully into the possibility of fraud, this step necessarily entails a determination as to whether a harbinger, or series of harbingers, should have alerted a similarly situated investor that fraud was in the wind."); *see also id.* at 9 ("If, however, a defendant seeks to truncate the limitations period by claiming that the plaintiff had advance notice of the

6

fact finder must determine in the second step of the analysis "whether, once sufficient storm warnings were apparent, the investor probed the matter in a reasonably diligent manner."[8]

Importantly, SOX's two-year limitations period does not begin to run when "sufficient storm warnings first appear." *Id.* at 9.[9] Rather, the First Circuit held that, "following the receipt of sufficient storm warnings, a plaintiff's cause of action is deemed to accrue on the date when, exercising reasonable diligence, she would have unearthed the fraud." *Id.* at 10; *accord, e.g., Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir. 1987) ("[S]torm warnings of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner . . .

---

fraud through the incidence of storm warnings, then the defendant bears the initial burden of establishing the existence of such warnings."); *id.* ("In the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.").

[8] *Id.* at 8; *see also id.* at 9 ("Only if the defendant succeeds in this endeavor must the plaintiff counter with a showing that she fulfilled her corresponding duty of making a reasonably diligent inquiry into the possibility of fraudulent activity."); *id.* ("whether a particular plaintiff exercised reasonable diligence in the face of such [storm] warnings" is normally a jury question).

[9] Lest silence be taken as assent, Plaintiffs note that Dexia's assertion that Plaintiffs were somehow obligated to undertake an investigation that focuses narrowly upon Dexia's misconduct by late 2000/early 2001 is incorrect. Plaintiffs' obligation is only to undertake a reasonable investigation of the L&H fraud. Contrary to Dexia's assertions, whether a reasonable investor faced with particularly facts would focus particular attention upon a specific defendant, and the nature of the investigation a reasonable investor would undertake, are questions of fact that must be answered on the basis of a complete record. *E.g.*, *Rothman v. Gregor*, 200 F.3d 81, 98 (2d Cir. 2000) (whether it was reasonable for the plaintiffs to take more than a year to obtain a publicly available report relevant to claims against an issuer's auditor, even after they filed suit against the issuer, presented factual questions that could not be resolved as a matter of law). In fact, this Court itself stressed that "Whether a plaintiff is on inquiry notice and whether she exercised reasonable diligence are often factual questions." *Id.*

Dexia's interpretation of this Court's February 9, 2005 decision to require otherwise is misplaced. First, the Court had no record before it of evidence concerning Artesia and merely acknowledged its previous finding that there were storm warnings pertaining to a fraud at L&H. This does not support Dexia's assertion that Plaintiffs were somehow obligated to undertake a specific investigation narrowly focused upon Artesia's misconduct in late 2000 or early 2001, particularly where, as here, Dexia took affirmative steps to conceal its role in the fraud at L&H at least until the June 2003 public announcement that Dexia was under criminal investigation, if not beyond. Thus, at summary judgment and trial these factors, and other evidence of concealment, must be analyzed in connection with Dexia's statute of limitations defense. Moreover, as this Court recognized in its February 9, 2005 Order, determining when Plaintiffs' claims against Dexia accrued "presents a particularly complex problem because [Dexia] is alleged to have participated in a scheme orchestrated by others." *Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330, 340 (D. Mass. 2005).

7

and his cause of action is deemed to accrue on the date when he *should have discovered* the alleged fraud.") (emphasis in original).[10]

Thus, to defeat Dexia's statute of limitations defense, Plaintiffs must convince a jury only that: (a) Dexia has failed to meet its burden of establishing that sufficient storm warnings of Dexia's fraudulent conduct existed more than two years before Plaintiffs commenced this action; (b) Plaintiffs conducted a reasonable investigation of their claims up until the date two years prior to the commencement of this action; *or* (c) a reasonable investor would not have discovered facts sufficient to establish a § 10(b) claim against Dexia less than two years prior to the commencement of this action. *See Young*, 305 F.3d at 10 ("Distilled to bare essence, Deloitte can prevail at this procedural stage only if the trial court properly concluded that the management letters amounted to storm warnings for a shareholder who (like Cape Ann) held a seat on the company's board of directors and audit committee; that Cape Ann failed to exercise reasonable diligence in the face of those portents; and that, had Cape Ann investigated, it would have discovered the fraud prior to August 1, 1999.").[11]

---

[10] Notably, the *Young* court recognized that, "[d]epending on the individual circumstances, a reasonably diligent investigation following the receipt of storm warnings may consume as little as a few days or as much as a few years to get to the bottom of the matter." *Young*, 305 F.3d at 9.

[11] Dexia disregards the last of those relevant inquiries in arguing that, in the absence of a diligent investigation, the limitations period [runs] from the time of storm warnings." Dexia Obj. at 4-5 (emphasis added). *Young* is unequivocal on this point, and Dexia's contrary contention is entirely frivolous. Dexia's assertion that *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir. 1978), which long preceded [and was cited in] *Young*, does not incorporate this third prong is also erroneous. *Id.* at 695-696 and n.22 ("a federal cause of action will accrue at the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains"; limitations period began to run after defendant began "experiencing severe losses," stock price steadily declined, stockholder's meeting demonstrated that "everyone was 'apprehensive' about [the defendant's] future," and the plaintiffs inexplicably delayed filing suit for 20 months after they first decided to do so). Thus, the First Circuit will not punish a plaintiff who could not have discovered a fraud for failing to undertake efforts that, objectively, would have been fruitless. As a result, Dexia can only establish its statute of limitations defense by making the schizophrenic showing that Plaintiffs should have discovered a fraud Dexia denies ever occurred. That Dexia must resort to misrepresenting *Young's* central holding to "justify" the relief it seeks speaks volumes concerning the merits of Dexia's contentions. *See* Dexia Obj. at 5 n.2 (falsely claiming that *Young* "did not address the question of when the limitations period begins to run in the event the plaintiff fails to conduct a diligent investigation").

B.   **The Standards Outlined In *Young* Compel The Conclusion That The Court Properly Determined That Dexia Is Not Entitled To Disclosure Of The Post-August 2001 Investigation**

In light of the *Young* court's holding, discovery related to investigatory efforts undertaken less than two years prior to the commencement of this action are not relevant to the statute of limitations issues presented by this litigation. As amended by SOX's extended limitations period, *Young* dictates that Dexia's limitations defense can succeed only if, among other things, Plaintiffs failed to employ a reasonably diligent investigation *and* Plaintiffs would have discovered facts sufficient to establish § 10(b) claims against Dexia more than two years prior to the commencement of this action (*i.e.*, before August 19, 2001) had they employed reasonable diligence before that date. *Id.*

Dexia offers no satisfactory explanation of how a question directed at Plaintiffs' counsel regarding what they knew *after* August 19, 2001 could contradict counsel's answer regarding the questions Dexia will be permitted to ask counsel regarding what they knew *before* that date. The testimony Dexia seeks is therefore irrelevant to the subjective prong of the *Young* standard, *i.e.*, whether Plaintiffs "knew" prior to August 19, 2001 facts sufficient to establish a claim against Dexia.

Nor does Dexia explain how testimony concerning Plaintiffs' counsel's post-August 19, 2001 investigation is relevant to the objective question of whether, had Plaintiffs investigated reasonably, they would have discovered Artesia's fraudulent conduct. The steps Plaintiffs took after August 19, 2001 simply have no bearing on whether their investigation prior to that date was objectively reasonable or whether an objectively reasonable investigation would have yielded sufficient information to provide the basis for Plaintiffs' claims. Accordingly, as Magistrate Judge Collings held in his December 22, 2005 and July 13, 2006 Orders, discovery of

Plaintiffs' post-August 19, 2001 investigative efforts is irrelevant to Dexia's statute of limitations defense.[12]

Notably, Dexia has cited no case where a court ordered the disclosure of work product related to an investigation undertaken by a plaintiff's counsel, unless that investigation was undertaken before the relevant anniversary of the limitations period applicable to the plaintiff's claims. Here, that relevant anniversary date is August 19, 2001. As decided in the December 22, 2005 Order, the July 13, 2006 Order, and cases such as *Aloe Vera* and *Urban Health*, therefore, Dexia is not entitled to post-August 2001 discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reject Dexia's objections to the Magistrate Judge's November 6, 2006 Order.

Dated: December 5, 2006                    Respectfully submitted,

**BERMAN DEVALERIO PEASE**
**TABACCO BURT & PUCILLO**

_/s/ Patrick T. Egan_
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Allison K. Jones, BBO # 654804
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

---

[12] *Accord, e.g., Aloe Vera of America, Inc. v. United States*, No. CV99-1794, 2003 WL 22429082, at *3 (D. Ariz. Sep. 23, 2003) (where defendant asserted statute of limitations defense with respect to a claim that the plaintiff could assert "at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure," only evidence concerning the investigation undertaken more than two years prior to the commencement of the plaintiffs' action was relevant and, therefore, discoverable); *United States v. Urban Health Network, Inc.*, No. Civ. 91-5976, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19, 1993) (recognizing that only documents created by the government prior to the three-year limitations period applicable to its claims could be relevant to the defendants' purported statute of limitations defense).

SHALOV STONE & BONNER LLP
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*


**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc.,*
*Stonington Capital Appreciation 1994 Fund L.P.*
*and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES LLC**

　　　/s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust*

**PARTRIDGE, ANKNER & HORSTMAN LLP**

　　　/s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone:  (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida  32801
Telephone:  (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
Steven T. Voigt
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 10103
Telephone:  (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.*